Under Rule 15c2-11, the information that is collected pursuant to the Rule must be submitted to the NASD at least three business days before any quotation is published.[FN78] Finally, the proposed amendments would require broker-dealers to provide the information specified to any member of the public that requests it.

### B. Proposed Use of Information

Broker-dealers must collect and review the information required under the proposed amendments before publishing a quotation. Moreover, the Rule requires that broker-dealers have a reasonable basis for believing that the information about the issuer and related persons is current, accurate, and from reliable sources. This information collection protects investors by deterring fraudulent or manipulative quotations for thinly-traded securities whose issuers are relatively unknown. Because information about these issuers is not widely disseminated and often is not current, fraudulent and manipulative schemes are easier to perpetrate. Moreover, this collection of information helps broker-dealers guard against becoming unwitting participants in fraudulent or manipulative schemes. The Rule 15c2-11 information gathering requirements also serve an important surveillance function for both the Commission and the NASD. Recently, the Commission has used the Rule 15c2-11 information to suspend trading in the issuers' securities pursuant to Section 12(k) of the Exchange Act where publicly available information about the issuer raised questions about the accuracy and adequacy of the issuers' disclosures.

### C. Respondents

The proposed amendments would apply to those broker-dealers that initiate or resume publishing quotations for a covered OTC security in a quotation medium and that are publishing priced quotations as of the annual update requirement. The proposed amendments also indirectly affect issuers that are asked by broker-dealers to provide this information. Most of the Rule 15c2-11 information that would be required for issuers that publicly file periodic reports with the Commission ("reporting issuers") is available electronically on EDGAR or through the Internet. Thus, the proposals are likely to have a greater paperwork burden when broker-dealers publish quotations for the securities of issuers that do not participate in the Commission's public reporting program ("non-reporting issuers").

### D. Total Annual Reporting and Recordkeeping Burden

The proposed amendments would require broker-dealers to collect, review, retain, and record certain issuer and supplemental information when they initiate or resume publishing quotations of the issuer's securities or continue to publish priced quotations as of the annual anniversary date. The proposed amendments contain an initial information gathering and review requirement for broker-dealers and, in the case of priced quotations, a subsequent annual updating requirement. The discussion below estimates the collection of information burden one year after the anticipated date of effectiveness of the proposed amendments when broker-dealers that publish quotes for covered OTC securities qualifying for the proposed transition provision must fully comply with the Rule's information requirements. The discussion below also provides estimates for the same period for issuers that may be contacted to provide the information. In particular, the following analysis measures the cost to broker-dealers of: (1) collecting, reviewing, recording, and retaining the required issuer information and supplying it to the NASD; (2) responding to requests for issuer information from the public; and (3) starting-up or maintaining systems for the collection and retention of issuer information. The analysis below also addresses the indirect cost to issuers who must furnish information to requesting broker-dealers.

### 1. Burden-Hours for Broker-Dealers

In 1997, the NASD reports receiving 1,576 applications from broker-dealers to initiate or resume publication of quotations for covered equity securities in the OTCBB and/or the Pink Sheets, and 1,107 of these applications were cleared for publication of quotations. Although there are other OTC quotation mediums, the NASD reports that it generally does not receive any submissions from broker-dealers publishing quotations in these other systems. Data about quotations for covered OTC securities in these other systems is unavailable.

Also, taking into account newly-published quotations in the Yellow Sheets, the Commission estimates that approximately 1,200 new covered OTC securities would be eligible for quotations in the year following the Rule's effective date. Based on information provided by the NASD and NQB, the Commission estimates that as of December 31, 1997, there were approximately 6,200 covered OTC securities quoted in the OTCBB; 3,000 quoted in the Pink Sheets; and 2,000 quoted in the

APP. 000590

Yellow Sheets for a total of 11,200 covered OTC securities quoted in all three mediums.

According to NASD and NQB estimates, the Commission believes that, on average, there are approximately 4.3 broker-dealers publishing quotations for each of these covered OTC securities, and that at any given time there are no more than 400 broker-dealers that submit quotations for covered OTC securities. Further, according to these estimates, priced quotations are published for approximately 89 percent of the 6,200 (5,518) OTCBB securities, 10 percent of the 3,000 (300) Pink Sheets securities, and 1 percent of the **9676 2,000 (20) Yellow Sheets for a total of 5,838 issues with priced quotations. Because the proposed amendments would not require broker-dealers to collect issuer information for priced quotations until the annual update requirement is triggered in the year after the date of the amendments' effectiveness, the Commission estimates that, as of the annual update, approximately 30,263 ((5,838+1,200)x4.3) quotations would be subject to the Rule 15c2-11 proposed amendments.

For purposes of developing a burden estimate, the Commission assumes that each of the 5,838 priced quotations and the 1,200 new applications represent a different issuer. The Commission, therefore, estimates, at most, 7,038 issuers of covered OTC securities will be affected by the proposals in the year following the effective date of the amendments.[FN79]

Based on information from the NASD and NQB, the Commission estimates that of the 7,038 affected issuers of covered OTC securities, 42 percent (2,956) are reporting issuers, and 58 percent (4,082) are non-reporting issuers. The Commission estimates that it will take a broker-dealer about three hours to collect, review, record, retain, and supply to the NASD the information pertaining to a reporting issuer, and five hours to collect, review, record, retain, and supply to the NASD the information pertaining to a non-reporting issuer. The Commission estimates that broker-dealers will annually require 38,132 (2,956x3x4.3) hours or 95.33 (38,132/400) hours per broker-dealer to collect, review, record, retain, and supply to the NASD the information for the 2,956 affected reporting issuers. The Commission estimates that broker-dealers will annually require 87,763 (4,082x5x4.3) hours or 219.41 (87,763/400) hours per broker-dealer to collect, review, record, retain, and supply to the NASD the information from the 4,082 affected non-reporting issuers. Additionally, the broker-dealers, upon request from the public, must provide the issuer information. Based on information from the NQB, the Commission estimates that broker-dealers will receive 1,000 requests from the public annually, which would take a broker-dealer approximately one-half hour per request to provide for an annual burden of 500 hours. Therefore, the Commission estimates the total annual burden hours to broker-dealers to be 126,395 (38,132+87,763+500), or an average of 316 (126,395/400) burden hours per broker-dealer.

**2. Burden-Hours for Issuers**
Regarding the burden on issuers to provide broker-dealers with the required information, the Commission estimates that the 2,956 affected reporting issuers of covered OTC securities will not bear any additional hourly burdens under the proposed amendments because such issuers already report the required information to the Commission through periodic filings made pursuant to the federal securities laws. Further, reporting issuer information is widely available to broker-dealers through a variety of media. However, non-reporting issuer information is not widely available, and consequently, these issuers must provide the information required by the proposed amendments to requesting broker-dealers before quotations in their securities can be published. The Commission estimates that the 4,082 affected non-reporting issuers of covered OTC securities will spend an average of nine hours each to collect, prepare, and supply the information required by the proposals to the first broker-dealer that requests this information. Thereafter, the Commission estimates that it will take an average of one hour for an issuer to provide the same information to the remaining 3.3 broker-dealers that request the information. Accordingly, the Commission estimates the 4,082 non-reporting issuers annually will incur 36,738 (4,082x9x1) hours to comply with the first broker-dealer's request for information, and 13,471 (4,082x1x3.3) hours to comply with the subsequent 3.3 broker-dealer requests for an annual total of 50,209 (36,738+13,471) burden hours. On average, therefore, each non-reporting issuer would spend approximately 12 (50,209/4,082) burden hours per year to comply with these requests.

**3. Total Burden-Hour Costs to Broker-Dealers and Issuers**
For both broker-dealers and issuers combined and in the aggregate, the Commission estimates the collection of information will require approximately 176,604 burden hours annually (126,395+50,209).

**4. Capital Cost to Broker-Dealers and Issuers**

The Commission believes that broker-dealers that now collect, review, and retain the information required by the current Rule will not incur any significant start-up costs to expand systems already in place. Further, broker-dealers that are collecting the information required by the proposals for other purposes also will not incur significant start-up costs. However, the Commission believes some broker-dealers may not have adequate systems in place to retain issuer information and will incur start-up costs in order to comply with the requirements of the proposed amendments. The Commission assumes that of the 4.3 broker-dealers that provide quotations for each covered OTC security, on average one broker-dealer will incur additional start-up costs, while the remaining 3.3 broker-dealers will only incur incremental costs. Because the information for reporting issuers will be generally available on EDGAR and such availability satisfies the recordkeeping requirements of the proposals, the Commission is assuming that the start-up costs associated with retaining information on reporting issuers will be $6.00 per quotation, whereas the same costs will be $24.00 per quotation for non-reporting issuer information. The Commission estimates that broker-dealers in the aggregate will incur start-up costs of $17,736 (2,956x$6x1) associated with reporting issuer information, and $97,968 (4,082x$24x1) associated with non-reporting issuer information. The total start-up, operating and maintenance cost burden for broker-dealers is estimated to be $115,704 ($17,736+$97,968) or an average of $289 ($115,704/400) per broker-dealer.

The Commission assumes that non-reporting issuers, because they maintain their financial information in compliance with prevailing accounting standards, will not incur any start-up costs to prepare the required information in response to broker-dealers' requests. The Commission also believes that reporting issuers of covered OTC securities will not incur start-up costs as a result of the proposed amendments since such issuers already provide the required information to the Commission under the federal securities laws.

Therefore, the Commission believes issuers will not incur start-up costs as a consequence of the adoption of the Rule amendments, as proposed.

### E. General Information About the Collection of Information

The collection of information under the proposed amendments is mandatory and would be required before broker-dealers could initiate or resume publication of quotations in securities that are traded in a quotation medium other than an exchange or Nasdaq and before broker-dealers could continue to **\*9677** publish priced quotations when the annual review date occurs. Broker-dealers would be required to retain the information they collect for a period of not less than three years. Information collected under the Rule would not be kept confidential. Any agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid control number.

### F. Request for Comments

Pursuant to 44 U.S.C. 3506(c)(2)(B), the Commission solicits comments to:

(i) Evaluate whether the proposed collection of information is necessary for the proposed performance of the functions of the agency, including whether the information will have practical utility;

(ii) Evaluate the accuracy of the Commission's estimate of the burden of the proposed collection of information;

(iii) Enhance the quality, utility, and clarity of the information to be collected; and

(iv) Minimize the burden of collection of information on those who are to respond, including through the use of automated collection techniques or other forms of information technology. The Commission seeks data about quotations for covered OTC securities in OTC quotation mediums other than the OTC Bulletin Board, Pink Sheets and Yellow Sheets. The Commission asks for comments on its estimate of the number of issuers affected by the proposed Rule. The Commission also seeks comments on the time estimates made for broker-dealers and issuers to comply with the proposals' information collection requirements.

Persons desiring to submit comments on the collection of information requirements should direct them to the Office of Management and Budget, Attention: Desk Officer for the Securities and Exchange Commission, Office of Information and Regulatory Affairs, Room 3208, New Executive Office Building, Washington, D.C. 20503, and should also send a copy of their comments to Jonathan G. Katz, Secretary, Securities and Exchange Commission, 450 Fifth Street, N.W., Washington,

APP. 000592

D.C. 20549, and refer to File No. S7-3-98. OMB is required to make a decision concerning the collections of information between 30 and 60 days after publication of this release in the Federal Register, so a comment to OMB is best assured of having its full effect if OMB receives it within 30 days of this publication.

### VIII. Statutory Basis and Text of Proposed Amendments and Rule
The rule amendments are being proposed pursuant to Sections 3, 10(b), 15(c), 15(g), 17(a), and 23(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78c, 78j(b), 78o(c), 78o(g), 78q(a), and 78w(a).

### List of Subjects in 17 CFR Part 240
Broker-dealers, Fraud, Reporting and recordkeeping requirements, Securities.

### Text of Proposed Rule
In accordance with the foregoing, Title 17, chapter II, part 240 of the Code of Federal Regulations is proposed to be amended as follows:

### PART 240—GENERAL RULES AND REGULATIONS, SECURITIES EXCHANGE ACT OF 1934
1. The authority citation for part 240 continues to read, in part, as follows:

Authority: 15 U.S.C. 77c, 77d, 77g, 77j, 77s, 77z-2, 77eee, 77ggg, 77nnn, 77sss, 77ttt, 78c, 78d, 78f, 78i, 78j, 78k, 78k-1, 78l, 78m, 78n, 78o, 78p, 78q, 78s, 78u-5, 78w, 78x, 78ll(d), 78mm, 79q, 79t, 80a-20, 80a-23, 80a-29, 80a-37, 80b-3, 80b-4, and 80b-11, unless otherwise noted.
* * * * *17 CFR § 240.15c2-11
2. Section 240.15c2-11 and the section heading are revised to read as follows:
17 CFR § 240.15c2-11

### §240.15c2-11. Publication or submission of quotations without current information.
(a) Unlawful activity. As a means reasonably designed to prevent fraudulent, deceptive, or manipulative acts or practices, it shall be unlawful for a broker or dealer, directly or indirectly, to publish or to submit for publication any quotation for a security in any quotation medium unless the broker or dealer complies with the provisions of this section.

(b) Covered brokers or dealers. A broker or dealer shall satisfy the requirements of this section prior to publishing or submitting for publication any one of the following kinds of quotations for a security in a quotation medium:

(1) An initial quotation;

(2) An initial or resumed quotation following:

(i) The lapse of five or more consecutive business days during which period the broker or dealer did not publish or submit for publication any quotations for the security in a quotation medium; or

(ii) The termination of a Commission trading suspension ordered pursuant to section 12(k) of the Act (15 U.S.C. 78l(k)) in any securities of the issuer; or

(3) A quotation at a specified price following:

(i) The anniversary date of the initial quotation by the broker or dealer; or

(ii) The date that is four months following the end of the issuer's fiscal year; or

(iii) In the case of a foreign private issuer, the date that is seven months following the end of the issuer's fiscal year.

APP. 000593

(c) Requirements. A broker or dealer subject to paragraph (b) of this section shall:

(1) Review the information described in paragraphs (d) and (e) of this section;

(2) Determine that it has a reasonable basis under the circumstances for believing that the issuer information described in paragraph (d) of this section, when considered in conjunction with the supplemental information in paragraph (e) of this section, is accurate and current in all material respects, and that it is obtained from reliable sources; and

(3) Make a record of:

(i) The information required by paragraph (f) of this section;

(ii) The sources from which it obtained the information described in paragraphs (d) and (e) of this section;

(iii) The date that the broker or dealer reviewed the information required by this section; and

(iv) The person responsible for the broker or dealer's compliance with the requirements of this section.

(d) Issuer information. (1) Issuers with a recent public offering. For an issuer that has filed a registration statement under the Securities Act, other than a registration statement on Form F-6 (17 CFR 239.36), which became effective less than 90 calendar days prior to the day on which such broker or dealer publishes or submits the quotation to the quotation medium, the prospectus specified by section 10(a) of the Securities Act of 1933 (15 U.S.C. 77j(a)): Provided, That such registration statement has not thereafter been the subject of a stop order that is still in effect when the quotation is published or submitted.

(2) Issuers with a recent Regulation A offering. For an issuer that has filed a notification under Regulation A and was authorized to commence the offering less than 40 calendar days prior to the day on which such broker or dealer publishes or submits the quotation to the quotation medium, the offering circular provided for under Regulation A under the Securities Act (§§230.251 through 230.263): Provided, That the offering circular provided for under Regulation A has not thereafter become the subject of a suspension order which **9678 is still in effect when the quotation is published or submitted.

(3) Certain reporting issuers or exempted insurance companies. For an issuer required to file reports pursuant to section 13 or 15(d) of the Act (15 U.S.C. 78m or 78$o$(d)) and that is current in filing such reports, or for an issuer of a security covered by section 12(g)(2) (B) or (G) of the Act (15 U.S.C. 78f(g)(2)(B) or (G)), the issuer's most recent annual report filed pursuant to section 13 or 15(d) of the Act or a copy of the annual statement referred to in section 12(g)(2)(G)(i) of the Act, together with any subsequent quarterly and current reports filed under the provisions of the Act by the issuer: Provided, That until such issuer has filed its first annual report pursuant to section 13 or 15(d) of the Act or annual statement referred to in section 12(g)(2)(G)(i) of the Act, the broker or dealer obtains and reviews a copy of the prospectus specified by section 10(a) of the Securities Act (15 U.S.C. 77j(a)) included in a registration statement filed by the issuer under the Securities Act that became effective within the prior 16 months, or a copy of any registration statement filed by the issuer under section 12 of the Act that became effective within the prior 16 months (other than a registration statement on Form F-6 (17 CFR 239.36)), together with any quarterly and current reports filed thereafter under section 13 or 15(d) of the Act.

(4) Certain financial institutions. For an issuer that is not required to file reports pursuant to section 13 or 15(d) of the Act (15 U.S.C. 78m or 78$o$(d)) and that is a bank or savings association, as those terms are defined in 12 U.S.C. 1813, a copy of the issuer's most recent annual report and any subsequent reports filed with its "appropriate Federal banking agency" or "State bank supervisor," as those terms are defined in 12 U.S.C. 1813.

(5) Certain foreign issuers. For an issuer exempt from section 12(g) of the Act (15 U.S.C. 78$l$(g)) by reason of compliance with the provisions of § 240.12g3-2(b), the information furnished by the issuer to the Commission pursuant to §240.12g3-2(b) since the beginning of the issuer's last fiscal year.

(6) Other issuers. For an issuer that is not covered by paragraphs (d)(1) through (d)(5) of this section: Provided, That this paragraph (d)(6) shall not be available in the case of an issuer that is required to file reports pursuant to section 13 or 15(d) of the Act (15 U.S.C. 78m or 78$o$(d)), the following information:

(i) The exact name of the issuer and any predecessor;

(ii) The address and telephone number of the issuer's principal executive offices;

(iii) The state of incorporation of the issuer, if it is a corporation;

(iv) The date on which the issuer's fiscal year ends;

(v) A description of each class of the issuer's securities outstanding, including its exact title; the par or stated value of the security; the number of securities or total principal amount outstanding; the class and the number of securities issuable upon exercise, exchange or conversion of a class of the issuer's securities; and the total number of securityholders of record for each class of the issuer's securities as of the end of the issuer's most recent fiscal year or a more recent date;

(vi) The exact title and class of the security that will be quoted;

(vii) The name, address and telephone number of the transfer agent;

(viii) A description of the issuer's business and facilities;

(ix) A description of products or services offered by the issuer;

(x) The full names and business addresses of the executive officers, directors, general partners, promoters, and control persons of the issuer, and the number of securities of each class of the issuer's securities that are beneficially owned by each such person as of the end of the issuer's last fiscal year or a more recent date;

(xi) One of the following alternatives:

(A) A description of any of the following events that occurred during the preceding five years involving any executive officer, director, general partner, promoter, or control person of the issuer:

(1) Conviction in a criminal proceeding or being named as a defendant in a pending criminal proceeding (excluding traffic violations and other minor offenses);

(2) Entry of an order, judgment, or decree, not subsequently reversed, suspended or vacated, by a court of competent jurisdiction, permanently or temporarily enjoining, barring, suspending or otherwise limiting involvement in any type of business, securities, commodities, or banking activities;

(3) Being found by a court of competent jurisdiction (in a civil action), the Commission, the Commodity Futures Trading Commission, or a state securities regulator to have violated federal or state securities or commodities law, and the judgment or finding has not been reversed, suspended, or vacated; and

(4) Entry of an order by a self-regulatory organization permanently or temporarily barring, suspending or otherwise limiting involvement in any type of business or securities activities;

(B) A statement from the issuer that none of these has occurred, if none has occurred; or

(C) A statement by the broker or dealer of the steps taken by it to obtain the information contained in paragraph (d)(6)(xi)(A) or (B) of this section from the issuer and that the issuer failed or refused to provide this information;

(xii) The following financial information:

(A) In the case of an issuer other than a foreign private issuer, the issuer's most recent balance sheet, statement of cash flows, statement of comprehensive income, and statement of operations (income), prepared in accordance with U.S. generally

APP. 000595

accepted accounting principles; or

(B) In the case of a foreign private issuer, the issuer's most recent balance sheet and statement of operations (income), and to the extent prepared by the issuer, statement of cash flows, statement of comprehensive income, and statement of changes in shareholders' equity, prepared in accordance with a comprehensive body of accounting principles.

(xiii) The same financial information required by paragraph (d)(6)(xii)(A) of this section for such part of the two preceding fiscal years as the issuer or any predecessor has been in existence, prepared in accordance with U.S. generally accepted accounting principles (except in the case of a foreign private issuer), Provided That in the case of an issuer that has emerged from reorganization pursuant to Chapter 11 of the Bankruptcy Code, the court-approved disclosure statement filed pursuant to 11 U.S.C. 1125 and the information required by this paragraph (d)(6)(xiii) from the date of the entry of the bankruptcy court order confirming the issuer's reorganization plan pursuant to 11 U.S.C. 1129, if the reorganization plan has been effective less than two years; and

(xiv) One of the following alternatives:

(A) A description of any of the following events involving the issuer or its predecessor, or any of its majority-owned subsidiaries, that have occurred in the two years preceding the publication or submission for publication of the quotation:

(1) A change in control of the issuer;

(2) Increase in equity securities involving 10% or more of the same class of securities outstanding at the time of the offering;

(3) Any merger, acquisition, or business combination; **\*9679**

(4) Acquisition or disposition of significant assets;

(5) Bankruptcy proceedings;

(6) Delisting by any securities exchange or the Nasdaq Stock Market; or

(B) A statement from the issuer that none of these events has occurred, if none has occurred; or

(C) A statement by the broker or dealer of the steps taken by it to obtain the information contained in paragraph (d)(6)(xi)(A) or (B) of this section from the issuer and that the issuer failed or refused to provide this information.

(e) Supplemental information. (1) A copy of any trading suspension order issued by the Commission pursuant to section 12(k) of the Act (15 U.S.C. 78*l*(k)) for any securities of the issuer or its predecessor (if any) during the 12 months preceding the date of the publication or submission of the quotation, or a copy of the public release issued by the Commission announcing such trading suspension order.

(2) A copy or a written record of any other material information (including adverse information) regarding the issuer which comes to the broker's or dealer's knowledge or possession before the publication or submission of a quotation.

(f) Significant relationship information. (1) A statement describing any direct or indirect affiliation between the issuer and the broker or dealer publishing or submitting the quotation for publication, or any of its associated persons.

(2) A statement whether the quotation is being published or submitted on behalf of any other broker or dealer, or any of its associated persons, and, if so, the name of such broker or dealer, or the associated person, and the terms of the arrangement.

(3) A statement whether the broker or dealer has received or has any arrangement to receive any monetary or other consideration from any person in connection with publishing the quotation and, if so, a description of the consideration and the name of the person providing the consideration.

APP. 000596

(4) A statement whether the quotation directly or indirectly is being published or submitted for publication on behalf of the issuer, or any executive officer, director, general partner, promoter, control person, or any person, directly or indirectly the beneficial owner of more than 10 percent of the outstanding units or shares of any equity security of the issuer, and, if so, the name of such person, and the basis for any exemption under the federal securities laws for any sales of such securities on behalf of such person.

(g) Exceptions. The provisions of this section shall not apply to the publication or submission for publication of a quotation for:

(1) A security admitted to trading on a national securities exchange and which is traded on such an exchange on the same day as, or on the business day next preceding, the day the quotation is published;

(2) A security that is listed in the Nasdaq Stock Market, and such authorization is not suspended, terminated, or prohibited;

(3) An exempted security, as defined in section 3(a)(12) of the Act (15 U.S.C. 78c(a)(12)), or a municipal security as defined in section 3(a)(29) of the Act (15 U.S.C. 78c(a)(29)); or

(4) A security, solely on behalf of a customer (other than a person acting as or for a dealer), that represents the customer's order or indication of interest and does not involve the solicitation of the customer's order or interest.

(h) Preservation of documents and information. The broker or dealer shall preserve the information specified in paragraphs (d), (e), and (f) of this section in accordance with the provisions of §240.17a-4(b)(11): Provided, however, That if the broker or dealer satisfied the requirements of paragraph (d) of this section by obtaining and reviewing such information on the EDGAR system, the broker or dealer shall be deemed to have preserved the information described in paragraph (d) of this section if the broker or dealer has the means to access such information electronically for the period described by § 240.17a-4(b)(11).

(i) Information submitted to the NASD. (1) At least three business days before the quotation is published, the broker or dealer shall submit to the NASD, in accordance with NASD rules, the information required in paragraphs (d), (e), and (f) of this section.

(2) For any security of an issuer included in paragraph (d)(3) of this section:

(i) A broker or dealer shall be in compliance with the requirement to obtain current reports filed by the issuer if the broker or dealer obtains all current reports filed with the Commission by the issuer as of a date up to three business days in advance of the earlier of the date of submission of the quotations to the quotation medium and the date of submission of information to the NASD pursuant to NASD rules; and

(ii) A broker or dealer shall be in compliance with the requirement to obtain the annual, quarterly, and current reports filed by the issuer, if the broker or dealer has made arrangements to receive all such reports when filed by the issuer and it has regularly received reports from the issuer on a timely basis.

(j) Information available upon request. A broker or dealer that publishes any quotation for a security pursuant to this section shall make the information specified in paragraphs (d), (e), and (f) of this section promptly available upon request to any person. Providing such information to others pursuant to this paragraph (j) shall not constitute a representation by such broker or dealer that the information is accurate, but it shall constitute a representation by such broker or dealer that the information is current in relation to the date recorded pursuant to paragraph (c)(3)(iii) of this section, that the broker or dealer has a reasonable basis under the circumstances for believing the information is accurate in all material respects, and that the information was obtained from sources which the broker or dealer has a reasonable basis for believing are reliable.

(k) Definitions. For purposes of this section:

(1) Initial quotation means the first quotation for a security published or submitted for publication in a quotation medium by the broker or dealer.

(2) Issuer, in the case of quotations for American Depositary Receipts, means the issuer of the deposited shares represented by such American Depositary Receipts.

(3) NASD means the National Association of Securities Dealers, Inc., including its wholly owned subsidiaries (including, but not limited to, NASD Regulation, Inc. and The Nasdaq Stock Market, Inc.).

(4) Nasdaq Stock Market means the Nasdaq National Market and the Nasdaq SmallCap Market, both operated by the Nasdaq Stock Market, Inc.

(5) Promoter has the same meaning contained in §230.405 of this chapter.

(6) Quotation means any bid or offer at a specified price with respect to a security, or any indication of interest by a broker or dealer in receiving bids or offers from others for a security, or any indication by a broker or dealer that advertises its general interest in buying or selling a particular security.

(7) Quotation medium means any:

(i) System of general circulation to brokers or dealers that regularly disseminates quotations of identified brokers or dealers; or

(ii) Publication or electronic communications network, or other device that is used by brokers or dealers to make known to others their interest in transactions in any security, **\*9680** including offers to buy or sell at a stated price or otherwise, or invitations of offers to buy or sell.

(8) Securities Act means the Securities Act of 1933 (15 U.S.C. 77a, et seq.).

(l) Unless the broker or dealer knows or has reason to know that more current information is available, the information specified in paragraph (d)(6) of this section will be presumed to be current, if:

(1) The balance sheet is as of a date less than 16 months before the publication or submission of the quotation, the statement of cash flows, statement of comprehensive income, and statement of operations (income) (and in the case of foreign issuers, the statement of changes in shareholders' equity) are for the 12 months preceding the date of such balance sheet; and if such balance sheet is not as of a date less than 6 months before the publication or submission of the quotation, it shall be accompanied by an additional statement of cash flows, statement of comprehensive income, and statement of operations (and in the case of foreign issuers, statement of changes in shareholders' equity) for the period from the date of such balance sheet to a date less than 6 months before the publication or submission of the quotation.

(2) Other information regarding the issuer specified in paragraph (d)(6) of this section is as of a date within 12 months prior to the publication or submission of the quotation.

(m) Transition provision. A broker or dealer that was publishing a quotation for a security on the business day immediately prior to [effective date of amendments in the final rule] may continue to publish quotations for such security without complying with paragraph (c) of this section until the occurrence of any of the events set forth in paragraphs (b)(2) or (b)(3) of this section.

(n) This section shall not prohibit any publication or submission of any quotation if the Commission, upon written request or upon its own motion, exempts such quotation either unconditionally or on specified terms and conditions, as not constituting a fraudulent, manipulative or deceptive practice comprehended within the purpose of this section.
  17 CFR § 240.17a-4
3. Section 240.17a-4 is amended by adding paragraph (b)(11) to read as follows:
  17 CFR § 240.17a-4

**§240.17a-4. Records to be preserved by certain exchange members, brokers and dealers.**
\* \* \* \* \*

Publication or Submission of Quotations Without Specified Information, 63 FR 9661-01

(b) * * *

(11) The records required to be obtained pursuant to § 240.15c2-11.
 * * * * *

Dated: February 17, 1998.

By the Commission.

Margaret H. McFarland,

Deputy Secretary.

[FR Doc. 98-4460 Filed 2-24-98; 8:45 am]

BILLING CODE 8010-01-P

Footnotes

1    17 CFR 240.15c2-11.
     FN2 17 CFR 240.17a-4.
     FN3 15 U.S.C. 78a et seq.

4    See, e.g., M. Rimson & Co., Inc., 1997 WL 93628 (February 25, 1997) (Initial Decision); (Securities Exchange Act Release No.
     38489 (April 9, 1997) (Finality Order)); See also, SEC v. Jeffrey Szur, No. 97 Civ. 9305 (S.D.N.Y. December 18, 1997); SEC v.
     George Badger, No. 97 CV 963K (D. Utah December 18, 1997); SEC v. Andrew Scudiero, No. 97 Civ. 9304 (S.D.N.Y. December
     18, 1997); SEC v. Leonard Alexander Ruge, No. 97 Civ. 9306 (S.D.N.Y. December 18, 1997); SEC v. Joseph Pignatiello, No. 97
     Civ. 9303 (S.D.N.Y. December 18, 1997). For a summary of the SEC's allegations in these cases, see Litigation Release No.
     15595 (December 18, 1997), 1997 SEC LEXIS 2602.
     FN5 See United States Senate Committee on Governmental Affairs Permanent Subcommittee on Investigations, Hearing on Fraud
     in the Micro Capital Market (September 22, 1997) (testimony of Arthur Levitt, Chairman of the U.S. Securities and Exchange
     Commission) ("Senate Testimony on Microcap Fraud").
     FN6 N.Y. Attorney General, REPORT ON MICRO-CAP FRAUD (December 1997).
     FN7 See, e.g., Weiss, "Investors Beware—Chop Stocks Are on the Rise," Business Week, December 15, 1997, at 112-128; Lohse
     and Emshwiller, "Bulletin Board Likely to Remain Wild West of Wall Street," The Wall Street Journal, December 15, 1997, at C1;
     Schroeder, "Despite Reforms, Penny-Stock Fraud is Roaring Back," The Wall Street Journal, September 4, 1997, at A12; Byrne,
     "The Real OTC Market: The Spectacular Success of Pink Sheet and Bulletin Board Trading: Why the NASD is Toughening
     Standards," Traders, September 1997, at 36-39; Lohse, "Fraud by Small-Stock Operators Flourishes in Long Bull Market," The
     Wall Street Journal, July 31, 1997, at C1.

8    The term "microcap securities" is not defined under the federal securities laws or regulations. The use of the term "microcap
     securities" in this release, however, should be distinguished from its use in the mutual fund context. For example, Lipper
     Analytical Services, a mutual fund rating organization, generally categorizes microcap companies as companies with market
     capitalization of less than $300 million. Lipper-Directors' Analytical Data, Investment Objective Key, 2d ed. 1997.
     FN9 Microcap securities can also be listed on securities exchanges or Nasdaq.

10   See e.g., SEC v. Global Financial Traders, Ltd., Litigation Release Nos. 15291 (March 14, 1997) and 15338 (April 17, 1997); see
     also infra note 73.

11   In addition, the NASD recently published for comment several proposed rules aimed at microcap stock abuses. These proposals
     would limit quotations on the OTC Bulletin Board to the securities of issuers that file reports with the Commission or other
     regulatory authority, and would require NASD members to review current issuer financial statements prior to recommending a
     transaction to a customer in an OTC equity security (other than securities listed on Nasdaq or an exchange) and to deliver a
     disclosure statement to a customer prior to an initial purchase of an OTC equity security. NASD Notices to Members 98-14 and
     98-15 (January 1998).

12   Securities Exchange Act Release No. 9310 (September 13, 1971), 36 FR 18641.
     FN13 See Securities Exchange Act Release No. 29094 (April 17, 1991), 56 FR 19148 ("1991 Adopting Release"); Securities

Exchange Act Release No. 29095 (April 17, 1991), 56 FR 19158 ("1991 Proposing Release").
FN14 See 17 CFR 240.15c2-11(e)(1) (defining quotation medium as any interdealer quotation system or any publication or electronic communications network or other device that is used by brokers or dealers to make known to others their interest in transactions in any security, including offers to buy or sell at a stated price or otherwise, or invitations of offers to buy or sell).

15    15 U.S.C. 77a et seq.

16    An interdealer quotation system is a quotation medium of general circulation to brokers or dealers which regularly disseminates quotations of identified brokers or dealers. 17 CFR 240.15c2-11(e)(2).
FN17 17 CFR 240.15c2-11(f)(3). The security must have been the subject of quotations on at least 12 business days during the previous 30 calendar days, with no more than 4 consecutive business days elapsing without a quotation. Once this quotation frequency is established, a broker-dealer may publish a quotation for a covered security without having the required information if the 12 and 4 day tests are satisfied.

18    1991 Proposing Release, 56 FR at 19161.

19    See 1991 Proposing Release. Self-piggybacking refers to the ability of a broker-dealer to continue publishing quotations without reviewing the Rule's required information, as long as that broker-dealer satisfies the quotation frequency tests of the piggyback provision.

20    See Securities Exchange Act Release No. 30608 (April 20, 1992), 57 FR 18004 (adopting the Commission's Penny Stock Disclosure Rules (17 CFR 240.3a51-1, 240.15g-1 through 240.15g-6, 240.15g-8, and 240.15g-100)); see also Securities Exchange Act Release No. 32576 (July 2, 1993), 58 FR 37413 (redesignating Rule 15c2-6 under the Exchange Act as Rule 15g-9 under the Exchange Act (17 CFR 240.15g-9)).
FN21 In light of the present proposals, the Commission is withdrawing the 1991 proposals.

22    Rule 15c2-11 generally applies to the publication or submission for publication of quotations for OTC securities that do not satisfy any of the exceptions under the Rule. The exceptions are discussed in Section A.5, infra.

23    See 1991 Adopting Release, 56 at 19150 (discussing of the nature of the review that a broker-dealer must conduct to satisfy its obligations under Rule 15c2-11 and the determination of whether the source of the information is reliable).

24    Id.

25    See General Bond & Share Co., 51 S.E.C. 411 (1993) aff'g Market Surveillance Committee v. General Bond & Share Co., 1992 NASD Discip. Lexis 99 (January 30, 1992), affirmed in part, vacated in part, and remanded, 39 F.3d 1451 (10th Cir. 1994). In this case, the Commission affirmed a decision of the NASD's National Business Conduct Committee Securities Dealers ("NBCC"), which found that General Bond & Share Co. ("General Bond"), a registered broker-dealer, violated Article III, Section 1 of the NASD's Rules of Fair Practice by accepting issuer-paid compensation for listing itself as a market maker in the Pink Sheets for the securities of numerous issuers. The NBCC also found that General Bond's Pink Sheet entries paved the way for other market makers to piggyback onto those quotations without complying with the requirements of Rule 15c2-11.
FN26 See D.H. Blair & Co., 44 S.E.C. 320, 332 (1970) (trading by the numbers cannot be completely separated from the investment value of the security or the need for supervision with a view to detecting possible signs of manipulation).

27    See Section C, infra, for a discussion of the definition of quotation medium.
FN28 See Section D, infra.

29    The term quotation is defined as any bid or offer at a specified price with respect to a security, or any indication of interest by a broker or dealer in receiving bids or offers from others for a security, or any indication by a broker or dealer that advertises its general interest in buying or selling a particular security. For the purposes of this release, a "priced quotation" is a bid or offer at a specified price and an "unpriced quotation" is any indication by a broker or dealer in receiving bids or offers from others or any indication by a broker or dealer that advertises its general interest in buying or selling a particular security.

30    15 U.S.C. 78l(k).

31    Regulation A provides an exemption from registration under the Securities Act for offerings not exceeding $5 million, less the aggregate offering price of any other Regulation A offering during the prior 12 months. 17 CFR 230.251-230.263.
FN32 15 U.S.C. 78l(g).
FN33 15 U.S.C. 78l(g)(2)(G).
FN34 17 CFR 240.12g3-2(b).

APP. 000600

Publication or Submission of Quotations Without Specified Information, 63 FR 9661-01

35    Currently, a broker-dealer can rely on paragraph (a)(5) of the Rule pertaining to non-reporting issuers when a report or statement of a reporting issuer or exempt insurance company is not "reasonably available" (i.e., not on file with the Commission). 17 CFR 240.15c2-11(a)(5). See e.g., Robin Rushing, [1995-1996] Fed. Sec. L. Rep. (CCH) 85,731 (Initial Decision), Securities Exchange Act Release No. 36910 (February 29, 1996) (Finality Order) (where the company was delinquent in Exchange Act filing, the market maker was required to obtain paragraph (a)(5) information to comply with Rule 15c2-11).

36    SEC v. Wincanton, No. 96-CV-02152 (D.D.C. September 17, 1996) (Litigation Release No. 15052 (D.D.C. September 17, 1996)); SEC v. Equity AU, Inc., 96-CV-01775 (D.D.C. July 30, 1996)(Litigation Release No. 14993 (July 30, 1996)); SEC v. Cayman Resources, 96-CV-00968 (D.D.C. July 24, 1996) (Litigation Release No. 14996 (D.C.C. July 31, 1996; SEC v. American Cascade, 96-CV-00626 (D.D.C. March 29, 1996) (Litigation Release No. 14857 (March 29, 1996)); SEC v. Parallel Technologies, Inc., 96-CV00545 (D.D.C. March 19, 1996) (Litigation Release No. 14848 (March 20, 1996)).

37    In response to the 1991 Proposing Release, 17 commenters suggested some form of special designation indicating the broker-dealers's lack of required information. See, e.g., Letter dated February 24, 1992, from Stephen D. Hickman, Secretary, NASD, to Jonathan G. Katz, Secretary, SEC ("1992 NASD Letter"), p.7.

38    17 CFR 240.15c2-11(a)(5).

39    See Michael J. Markowski, Securities Exchange Act Release No. 38424 (March 20, 1997) (instituting an administrative proceeding alleging manipulation in connection with the initial public offering of units made up of common stock and warrants of three different issuers); Securities Exchange Act Release No. 38425 (March 20, 1997) (order of settlement).

40    See NASD Manual, Marketplace Rules, Rule 6740.

41    Requirements for quantitative and qualitative reconciliations of non-U.S. GAAP financial information to U.S. GAAP are specified in Items 17 and 18 of Form 20-F. 17 CFR 249.220F.

42    Id. *9667

43    17 CFR 240.15c2-11(a)(3).
      FN44 17 CFR 240.12g3-2(b).
      FN45 The information may be submitted by a government official or agency of the country of the issuer's domicile or in which it is incorporated or organized.

46    See proposed paragraph (d)(5) of the Rule. Broker-dealers publishing quotations for the securities of Rule 12g3-2(b) issuers would be subject to the updating requirements of proposed paragraph (b). Accordingly, broker-dealers would have to review updated information about these foreign private issuers following a Commission trading suspension or a five-day lapse in quotations. Broker-dealers also would have to review the issuer information on an annual basis in order to publish priced quotations. The Commission staff is considering whether Rule 12g3-2(b) continues to serve its original purpose and will evaluate whether changes to that rule should be proposed. If Rule 12g3-2(b) is amended, the interaction if that exemption with the requirements of Rule 15c2-11 could be affected.
      FN47 See SEC v. Chelekis, Litigation Release No. 15264 (February 25, 1997) (over half of the companies involved claimed the Rule 12g3-2(b) exemption).

48    See, e.g., definition of "principal market" contained in Rule 100 of Regulation M. 17 CFR 242.100.

49    15 U.S.C. 77(c)(a)(2), 78l(i).
      FN50 See e.g., 12 CFR 363.4 (requiring insured banks to file annual reports with their respective bank supervisory agencies); 12 CFR 208.16 (requiring state member banks to file periodic reports with the Federal Reserve); 12 CFR 18.3 through .5 (requiring national banks to file annual disclosure statements with the Office of the Comptroller of the Currency ("OCC")); FFIEC Forms 031-034 (requiring national banks to file annual call reports with the OCC and Federal Deposit Insurance Corporation); 12 CFR 562.2 (requiring federally chartered savings associations to file annual regulatory reports with the Office of Thrift Supervision ("OTS")); NY Bank Section 37 and NY ADC §24.1 (requiring all New York state chartered banks to file annual reports with the New York Banking Department); and Ca Fin Section 689 (requiring California state chartered banks to file annual reports with the California Department of Banking).
      FN51 Broker-dealers publishing quotes for securities of exempt financial institutions may obtain the regulatory reports from the financial institution by contracting their primary bank regulatory agency. Broker-dealers can access the Federal Reserve System's National Information Center of Banking Information website, www.ffiec.gov/NIC, the Federal Deposit Insurance Corporation's ("FDIC") website, www.fdic.gov, which provides the most recent Call Reports for all FDIC insurance banks, or the OCC's

APP. 000601

website, www.occ.treas.gov, which has information about individual nationally chartered banks. Broker-dealers that access exempt financial institution information through these websites would be able to satisfy the Rule's requirements by recording their review and preserving the information in the same manner as for EDGAR information discussed above.

52   Securities Exchange Act Release No. 27247 (September 14, 1989), 54 FR 39194 ("1989 Release").
FN53 See 1992 NASD Letter, supra note 37.

54   1991 Proposing Release, 56 FR at 19158.

55   11 U.S.C. 1101 et seq.
FN56 See Federal Rule of Bankruptcy Procedure 2015.

57   See Letter from Daniel J. Demers to Nancy J. Sanow, Assistant Director, Division of Market Regulation, SEC (November 14, 1997). This petition for rulemaking is available in File No. 4-405 in the Commission's Pubic Reference Room, 450 Fifth Street, N.W., Washington, D.C. 20549.
FN58 11 U.S.C. 1125. The disclosure statement includes, among other things, a description of the issuer's business plan, a description of any securities to be issued, and financial information.

59   17 CFR 240.15c2-11(b)(2). Information regarding recent trading suspension orders can be obtained by calling (800) SEC-0330.
FN60 17 CFR 240.15c2-11(b)(3).
FN61 Cf. Robin Rushing, supra note 35.

62   See Butcher & Singer, Inc., 48 S.E.C. 640 (1987); Douglass and Co., Inc., 14 S.E.C. 537 (1978); Gotham Securities Corporation, 46 S.E.C. 723 (1976). See also NASD Rule 2460 (prohibiting broker-dealers from receiving payment from an issuer or a promoter for publishing a quotation or acting as a market marker).
FN63 See General Bond & Share Co., 51 S.E.C. at 413-414.

64   Cf. D.H. Blair & Co., 44 S.E.C. 320, (1970) (noting that insertion of both bid and ask quotations in the Pink Sheets for a customer is a highly unusual practice).

65   Currently the exception for unsolicited customer orders is not available for customer orders representing both a bid and an offer at specified prices, unless the quotation medium identifies the quotations as customer orders.

66   See 17 CFR 240.15c2-11(a)(5).
FN67 As discussed above, this is a consequence of the current piggyback exception.

68   17 CFR 240.17a-4.

69   56 FR at 19163.

70   Commenters may also wish to consider the need for a process to recognize repositories that meet such standards. Cf. Securities Exchange Act Release No. 39457 (December 17, 1997), 62 FR 68018 (proposing the process for designating "nationally recognized statistical rating organizations" for purposes of the New Capital Rule, 17 CFR 240.15c3-1).

71   A separate definition of "interdealer quotation system" no longer would be necessary because of the elimination of the piggyback provision and the revision that the information be furnished to the NASD in accordance with NASD rules, rather than to interdealer quotation systems.

72   In 1985, the Commission issued a release for the purpose of seeking comment on the costs and benefits associated with Rule 15c2-11. Securities Exchange Act Release No. 21914 (April 1, 1985), 50 FR 14111. The comment letters are available in File No. S7-14-85. Generally, the commenters failed to provide data to support costs or benefits.

73   See, e.g., SEC v. Global Financial Traders, Ltd., Litigation Release Nos. 15291 (March 14, 1997), and 15338 (April 17, 1997); see also supra note 10.

74   The Commission assumes that because the required information should be available in house, someone in a clerical position should be able to copy and forward the information in response to a request. Accordingly, the Commission believes that $15 per hour is a reasonable estimate of this cost.

75   15 U.S.C. 78c(f).

Publication or Submission of Quotations Without Specified Information, 63 FR 9661-01

76    5 U.S.C. 603.

77    44 U.S.C. 3501 et seq.

78    The NASD has a rule requiring broker-dealers that initiate or resume quotations for covered equity securities to submit verification that they have collected the information necessary to comply with NASD requirements, as well as Rule 15c2-11. See NASD Manual, Marketplace Rules, 6740.

79    This number overstates the number of affected issuers because some issuers have more than one security with priced quotes.

**End of Document**                                             © 2015 Thomson Reuters. No claim to original U.S. Government Works.

APP. 000603

# Appendix

# Exhibit BB

FINRA Manual Rule 6432

FINRA Manual
FINRA Rules
6000. QUOTATION AND TRANSACTION REPORTING FACILITIES
6400. QUOTING AND TRADING IN OTC EQUITY SECURITIES
6430. OTC Equity Quotation Requirements

(C) 2015 FINRA. All rights reserved. FINRA is a trademark of the Financial Industry Regulatory Authority, Inc.

*1 6432. Compliance with the Information Requirements of SEA Rule 15c2-11

(a) Except as provided in SEA Rules 15c2-11(f)(1), (2), (3) and (5) and 15c2-11(h), no member shall initiate or resume the quotation of a non-exchange-listed security in any quotation medium unless the member has demonstrated compliance with this Rule and the applicable requirements for information maintenance under SEA Rule 15c2-11. A member shall demonstrate compliance by making a filing with, and in the form required by, FINRA, which filing must be received at least three business days before the member's quotation is published or displayed in the quotation medium.

(b) The information to be filed shall contain:

(1) One copy of all information required to be maintained under SEA Rule 15c2-11(a)(1), (2), (3), (4), or (5), including any information that may be required by future amendments thereto. Members are not required to file with FINRA copies of any information that is available through the SEC's Electronic Data Gathering, Analysis, and Retrieval ("EDGAR") system; provided, however, that the filing with FINRA shall contain identifying information for each issuer report or statement available through EDGAR that was relied upon in satisfying the member's obligations under this Rule and SEA Rule 15c2-11(a), including the type of report, report date and any other information as may be requested by FINRA.

(2) Identification of the issuer, the issuer's predecessor in the event of a merger or reorganization within the previous 12 months, the type of non-exchange-listed security to be quoted (e.g., ADR, warrant, unit, or common stock), the quotation medium to be used, the member's initial or resumed quotation, and the particular subsection of SEA Rule 15c2-11 with which the member is demonstrating compliance.

(3) If a member is initiating or resuming quotation of a non-exchange-listed security with a priced entry, the basis upon which that priced entry was determined and the factors considered in making that determination.

(4) A certification that neither the member nor persons associated with the member have accepted or will accept any payment or other consideration prohibited by FINRA Rule 5250.

(c) If a member's initial or resumed quotation does not include a priced entry, a member shall supplement its prior filing under this Rule, in the form required by FINRA, before inserting a priced entry for the affected non-exchange-listed security in a quotation medium. The supplemental filing shall specify the basis upon which the proposed priced entry was determined and the factors considered in making that determination. The supplemental filing must be received by FINRA at least three business days before the member's priced entry first appears in a quotation medium.

(d) All filings made with FINRA under this Rule must be reviewed and signed by a principal of the member firm.

(e) For purposes of this Rule, the term "non-exchange-listed security" means any equity security, other than a Restricted Equity Security, that is not traded on any national securities exchange.

• • • Supplementary Material: ——————

APP. 000605

6432. Compliance with the Information Requirements of..., FINRA Manual Rule...

**\*2 01.** Any member initiating or resuming quotations in reliance on the exception provided by SEA Rule 15c2-11(f)(2) must be able to demonstrate eligibility for the exception by making a contemporaneous record of:

(a) the identification of each associated person who receives the unsolicited customer order or indication of interest directly from the customer, if applicable;

(b) the identity of the customer;

(c) the date and time the unsolicited customer order or indication of interest was received; and

(d) the terms of the unsolicited customer order or indication of interest that is the subject of the quotation (e.g., security name and symbol, size, side of the market, duration (if specified) and, if priced, the price).

Any member displaying a quote representing an unsolicited customer order or indication of interest that was received from another broker-dealer must contemporaneously record the identity of the person from whom information regarding the unsolicited customer order or indication of interest was received, if applicable; the date and time the unsolicited customer order or indication of interest was received by the member displaying the quotation; and the terms of the order that is the subject of the quotation.

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**APP. 000606**

# Appendix

# Exhibit CC

## NASD Notice to Members 00-49

INFORMATIONAL

# SEC Interpretive Guidance

## SEC Issues Staff Interpretation On The "Free Trading" Status Of Blank Check Company Securities Under Certain Scenarios

### SUGGESTED ROUTING

*The Suggested Routing function is meant to aid the reader of this document. Each NASD member firm should consider the appropriate distribution in the context of its own organizational structure.*

- Legal & Compliance
- Senior Management
- Trading & Market Making

### KEY TOPICS

- Blank Check Companies
- Freely Tradeable Securities

### Executive Summary

A unit of the NASD Regulation, Inc. (NASD Regulation℠) Market Regulation Department recently asked the Securities and Exchange Commission (SEC) for interpretive guidance regarding initial distribution or the redistribution in the aftermarket of the shares issued by "blank check" companies[1] and whether these distributions were in compliance with SEC Rules.

NASD Regulation's request for guidance and the SEC's response are included with this *Notice*.

### Questions/Further Information

Questions regarding this *Notice* may be directed to Ken Worm, Assistant Director, Market Regulation Department, NASD Regulation, at (301) 978-2097.

### Background

The Market Regulation Department's OTC Compliance Unit (Unit) reviews Form 211 filings submitted by potential Market Makers to determine whether they are in compliance with Rule 15c2-11(a) of the Securities Exchange Act of 1934 (Exchange Act) and NASD Rule 6740 before Market Makers are permitted to initiate or resume quotation of a non-Nasdaq® security in any quotation medium. During the course of these reviews, the Unit's staff has raised concerns regarding certain factual scenarios where either the initial distribution or the redistribution in the aftermarket of the shares issued by blank check companies may violate Section 5 of the Securities Act of 1933 (Securities Act) based on the nature of the initial distribution of the securities of certain issuers. As a result of these concerns, the Market Regulation Department

requested guidance from the Division of Corporation Finance (Division) of the SEC on whether certain factual scenarios may present potential violations of Section 5 of the Securities Act. In response to the NASD Regulation staff request, the Division issued a staff interpretation dated January 21, 2000, on the "free trading" status[2] of securities initially issued by blank check companies in a number of factual scenarios.

As an initial matter, it is important to emphasize that the restrictions on trading of securities of blank check companies, as described in the Division's response letter, are not limited to the scenarios described within this *Notice*. Based on the Division's response letter as well as subsequent conversations with Division staff, in most, if not all, cases, the resale of securities of blank check companies is restricted and such securities can only be resold through registration under the Securities Act. In addition, Rule 144 would not be available to promoters or affiliates of blank check companies or to their transferees either before or after a business combination with an operating company or other person.

Moreover, NASD Regulation staff will require a Market Maker, when seeking NASD Regulation clearance pursuant to NASD Rule 6740 to initiate or resume quotation of a security of a blank check company, to provide an independent opinion from its own counsel detailing why the sale of such securities would not violate the registration requirements of the Securities Act. In addition, the NASD Regulation staff will continue to scrutinize closely such filings and will vigorously pursue disciplinary action and/or refer the staff's findings to the SEC for further action.

## NASD Notice to Members 00-49

### Specific Factual Scenarios Presented To The SEC

In its November 1, 1999 letter to the Division, NASD Regulation staff requested guidance on whether the following factual scenarios presented potential violations of Section 5 of the Securities Act.

**Scenario 1:** The issuer transfers a nominal amount of its shares (less than 10 percent of the total float) as a gift to between 20 and 50 individuals under Section 4(2) of the Securities Act. After the gift recipients have held their shares for two years, a broker/dealer submits a Form 211 citing the gifted shares as the only free-trading securities. The application does not disclose whether the recipients are sophisticated investors, although the individual who controls the issuer frequently has gifted shares of other companies to the same individuals on other occasions.

**Scenario 2:** The issuer transfers a significant amount of its shares to one individual under Section 4(2) of the Securities Act. That individual subsequently gifts a nominal amount of the shares to between 20 and 50 individuals. After the gift recipients have held their shares for two years, a broker/dealer submits a Form 211 citing the gifted shares as the only free-trading securities. The application does not disclose whether the recipients are sophisticated investors, although the individual who gifted the shares frequently has gifted shares of other companies to the same individuals on other occasions.

**Scenario 3:** The issuer transfers a significant amount of its shares to one individual

under Section 4(2) of the Securities Act. That individual holds the shares for two years and then subsequently gifts a nominal amount of the shares to between 20 and 50 individuals. After the gift recipients have held their shares a few months, a broker/dealer submits a Form 211 citing the gifted shares as the only free-trading securities. The application does not disclose whether the recipients are sophisticated investors, although the individual who gifted the shares frequently has gifted shares of other companies to the same individuals on other occasions.

**Scenario 4:** A small number of shareholders (less than 10) hold all of the free-trading shares of an issuer. A broker/dealer submits a Form 211 indicating that the concentration of ownership in the hands of so few shareholders will not result in an ongoing distribution because it expects the market for the security to develop slowly.

**Scenario 5:** A small number of shareholders (less than 10) control nearly all (more than 90 percent) of the free-trading shares in the issuer. The remaining nominal amount of free-trading shares (less than 10 percent) are widely dispersed among a larger number of shareholders (50 or more individuals). A broker/dealer submits a Form 211 indicating that the concentration of ownership in the hands of so few shareholders will not result in an ongoing distribution because it expects the market for the security to develop slowly and considers the number of total shareholders to be determinative.

**Scenario 6:** An issuer controlled by one individual issues shares to another company controlled by the same individual pursuant to Rule 701 of the Securities Act. The issuer files a Form 10 with the SEC that became effective by default. The second company then sells all its shares in the issuer through a brokerage firm. A second broker/dealer submits a Form 211 indicating that the shares sold through the first broker/dealer are all free-trading securities.

**Scenario 7:** A reporting shell company merges with a private company and the former controlling shareholder of the reporting shell company sells his shares to numerous individuals more than three months after he ceases to be an affiliate of the post-merger company. A Market Maker submits a Form 211 citing the post-merger shares sold by the former control person as the only free-trading shares.

### Division Response

In its response letter, the Division indicated that each of the scenarios initially suggests the availability of Rule 144 or Section 4(1) of the Securities Act following the lapse of some period of time after the issuance of shares in the blank check company, regardless of whether a merger has occurred. The Division noted that in several of the scenarios, promoters of the issuers also appear to be in the business of creating blank check companies, then gifting or selling the securities of the companies without registration, either directly or through intermediaries.

Section 4(1) exempts transactions not involving issuers, underwriters,

## NASD Notice to Members 00-49

or dealers. The availability of this exemption depends upon the facts and circumstances of each particular situation. The Division indicated that transactions in blank check company securities by their promoters or affiliates, especially where they control or controlled the "float" of the "freely tradable" securities, are not the kind of ordinary trading transactions between individual investors of securities already issued that Section 4(1)was designed to exempt.[3] Moreover, the Division noted that purchasers who are mere conduits for a wider distribution of securities may be deemed "underwriters." When such purchasers sell their securities, they assume the risk of possible violation of the registration requirements of the Securities Act and consequent civil liabilities. Persons engaged in the business of buying and selling securities who function in this capacity are subject to careful scrutiny.[4]

The Division noted in its response that both before and after the business combination or transaction with an operating entity or other person, the promoters or affiliates of blank check companies, as well as their transferees, would be considered "underwriters" of the securities issued. As a result, the securities involved can only be resold through registration under the Securities Act.[5] Similarly, Rule 144 would not be available for resale transactions in this situation, regardless of technical compliance with that rule, because these resale transactions appear to be designed to distribute or redistribute securities to the public without compliance with the registration requirements of the Securities Act.[6]

**Accordingly, the Division concluded that each of the scenarios illustrates what it**

**believes to be a scheme to evade the registration requirements of the Securities Act.** Consequently, the resale of the shares in scenarios 1 through 7 would require registration. In addition, with regard to scenario 6, the Division noted that Rule 701 is not available for issuances to companies or entities, but only to individuals. In view of the business of a blank check company which generally has few or no employees, it seems unlikely that reliance upon this exemption would be appropriate; therefore, Rule 701 generally would not be available to blank check companies when issuing shares to their consultant or advisors.

Moreover, the Division was advised by staff of the SEC's Division of Market Regulation that Rules 101 and 102 of Regulation M[7] impose restrictions on issuers, selling shareholders, and distribution participants when they effect transactions in securities that are part of a distribution. Generally, a distribution exists when a sufficient magnitude of shares is being sold and special selling efforts are employed to sell these shares. If a distribution exists, the persons involved in the distribution are prohibited from bidding for or purchasing the securities in distribution. The rule covers the persons selling securities, their affiliates, and others participating in the distribution. Persons selling in the manner described in the scenarios above should carefully analyze the facts surrounding the sales to determine whether the security being sold is in a distribution for purposes of Regulation M. This analysis specifically should consider the actions taken by any persons assisting with the transactions. In particular, selling through a Market Maker into an illiquid market raises heightened concerns regarding compliance with Regulation M.[8]

### Compliance Guidance

Based on the Division's response letter as well as subsequent conversations with Division staff, in most, if not all, cases, the resale of securities of blank check companies is restricted and such securities can only be resold through registration under the Securities Act. In addition, Rule 144 would not be available to promoters or affiliates of blank check companies or to their transferees either before or after a business combination with an operating company or other person.

Moreover, NASD Regulation staff will require a Market Maker, when seeking NASD Regulation clearance pursuant to NASD Rule 6740 to initiate or resume quotation of a security of a blank check company, to provide an independent opinion from its counsel detailing why the sale of such securities would not violate the registration requirements of the Securities Act. Member firms are reminded that, in complying with these requirements, a Market Maker cannot reasonably rely on a legal opinion provided by the issuer or the issuer's counsel, or by counsel acting for any individual or entity involved in the transaction.[9] To ensure reliability of the opinion, the Market Maker must obtain an independent opinion from its own counsel.[10] The NASD Regulation staff will continue to closely scrutinize such filings and will vigorously pursue disciplinary action and/or refer the staff's findings to the SEC for further action.

## NASD Notice to Members 00-49

### Endnotes

[1] A blank check company is a development stage company that has no specific business plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company or companies, or other entity or person.

[2] The concept of "freely tradable" securities is used to describe securities that are exempt from the registration requirements pursuant to Section 4(1) of the Securities Act because no issuer, underwriter, or dealer is engaged in the transaction.

[3] See SEC v. Cavanagh, 1 F. Supp. 2d 337 (S.D.N.Y. 1998).

[4] See SEC Release No. 33-4552 (Nov. 6, 1962).

[5] This view is analogous to one the SEC has expressed with respect to business combinations under Rule 145 where affiliates of parties to the transaction are viewed to be "underwriters." Further, the nature of these types of resale transactions

are closely analogous to shares from an unsold allotment held by professional underwriters. Generally, these securities are only resaleable through registration. Shares purchased by non-affiliates in a registered transaction such as one offered in compliance with Rule 419, however, would not be subject to this restriction.

[6] SEC Release No. 33-5223 (Jan. 11, 1972).

In view of the objectives and policies underlying the Act, the rule shall not be available to any individual or entity with respect to any transaction which, although in technical compliance with the provisions of the rule, is part of a plan by such individual or entity to distribute or redistribute securities to the public. In such case, registration is required.

[7] 17 CFR 242.101 - 102.

[8] See SEC Release No. 34-38067 (Dec. 20, 1996).

[9] See James L. Owlsey, 54 S.E.C. Docket 739, SEC Release No. 34-32941 (June 18,

1993) (citing SEC v. Datronics Engineers, Inc., 490 F. 2d 250, 253-254) (4th Cir. 1973).

[10] SEC v. Harwyn Indus. Corp., 326 F. Supp. 943, 954-55 (S.D.N.Y. 1971). The Market Maker's duty to seek independent counsel stems from its obligation to make a "searching inquiry" and to conduct a meaningful investigation of the surrounding circumstances in order to ensure that it is not engaged in the distribution of an unregistered security on behalf of an issuer, any person in a control relationship with an issuer, or an underwriter. See Stead v. SEC, 444 F. 2d 713 (10th Cir. 1971) cert. denied , 404 U.S. 1059 (1972); see also SEC Release No. 33-4445, Distribution by Broker-Dealers of Unregistered Securities (Feb. 2, 1971).

© 2000, National Association of Securities Dealers, Inc. (NASD). All rights reserved. Notices to Members attempt to present information to readers in a format that is easily understandable. However, please be aware that, in case of any misunderstanding, the rule language prevails.

# Appendix

# Exhibit DD



Print

## 92-50 Procedures Regarding Securities and Exchange Commission Rule 15c2-11 and Schedule H, Section 4 of the NASD® By-Laws

| SUGGESTED ROUTING:* |
| --- |
| Senior Management<br>Corporate Finance<br>Government Securities<br>Institutional<br>Internal Audit<br>Legal & Compliance<br>Municipal<br>Operations<br>Syndicate<br>Trading<br>Training<br>*These are suggested departments only.<br>Others may be appropriate for your firm. |

### EXECUTIVE SUMMARY

In response to questions by members, issuers, and the legal community, the NASD is issuing this *Notice to Members* to address frequently raised questions regarding Schedule H, Section 4 of the NASD By-Laws relating principally to compliance with Securities and Exchange Commission (Commission or SEC) Rule 15c2-11. This section of Schedule H is described in *Notice to Members 90-40.* It requires broker/dealers to submit information to the NASD gathered pursuant to SEC Rule 15c2-11 before initiating or resuming a quotation of a non-Nasdaq over-the-counter equity security in any quotation medium. Section 4 also requires members to specify the basis and factors considered in establishing their initial priced entries for a non-Nasdaq over-the-counter equity security before such entry may be published in any quotation medium. In preparing this Notice, the NASD has received comments from the staff of the Division of Market Regulation of the SEC; however, the views expressed in this Notice represent those of the NASD.

### INTRODUCTION

SEC Rule 15c2-11 governs the submission and publication of quotations by brokers and dealers for certain non-Nasdaq over-the-counter equity securities. Specifically, the rule applies to a broker/dealer's initiation or resumption of quotations for such securities in any interdealer quotation medium, including the NASD's OTC Bulletin Board" and National Quotation Bureau, Inc.'s "Pink Sheets" ("pink sheets"). Pursuant to the rule, brokers and dealers are required to review and maintain specified information about the issuer of the security before publishing a quotation for that security.

Unless an exception to Rule 15c2-11 is available, the rule can be satisfied in one of only five ways: (1) the broker/dealer must have in its possession a prospectus specified by Section 10(a) of the Securities Act of 1933 (Securities Act) that has been filed with the Commission and which has been in effect less than 90 calendar days; or (2) the broker/dealer must have a copy of the offering circular provided for under Regulation A of the Securities Act and the effective date must be within the preceding 40 days; or (3) the issuer must be current in its filings with the Commission and the broker/dealer must have in its possession the issuer's latest Form 10-K and all subsequent Form 10-Qs and Form 8-Ks; or (4) the issuer must be exempt from Section 12(g) of the Securities Exchange Act of 1934 (Exchange Act) pursuant to Rule 12g3-2(b) and the broker/dealer must have in its possession all the information furnished to the Commission during the issuer's last fiscal year; or (5) the broker/dealer must have in its possession 16 items of information about the issuer, including financial information which shall be reasonably current in relation to the day the quotation is submitted.

Paragraph (g)(1) of Rule 15c2-11 provides that the required financial information with respect to the issuer will be presumed to be reasonably current, unless the broker/dealer has information to the contrary, if the balance sheet is as of a date less

APP. 000613

than 16 months before the submission or publication of the quotation; the statements of profit and loss and retained earnings are for the 12 months preceding the date of such balance sheet; and, if such balance sheet is not as of a date less than six months before the submission or publication of the quotation, is accompanied by additional statements of profit and loss and retained earnings for the period from the date of such balance sheet to a date less than six months before the submission or publication of the quotation.

Information that does not satisfy the time frame of paragraph (g)(1) of Rule 15c2-11, is presumptively not reasonably current. Broker/dealers seeking to rely on information outside of the time frame must affirmatively establish that the financial information is reasonably current.

Documentation compiled by a member pursuant to Rule 15c2-11 must be filed with the NASD pursuant to Schedule H, Section 4 of the By-Laws together with a completed Form 211 at least three business days prior to entering a quotation in a quotation medium. Upon receipt, the NASD conducts a substantive review of the material and within three business days, notifies the broker/dealer whether the application has cleared such that quotation activity may begin or, alternately identifies deficiencies in the submission which must be resolved prior to a member being permitted to enter a quotation in a quotation medium.

The following is a compilation of questions and answers relative to SEC Rule 15c2-11, the NASD's OTC Bulletin Board, and Schedule H of the NASD By-Laws.

**QUESTIONS**

Rule 15c2-11, Informational Requirements

**Question #1:** What degree of scrutiny must a broker/dealer give the required Rule 15c2-11 documentation prior to submitting the information to the NASD seeking clearance to publish a quotation?

**Answer:** Prior to submitting the information to the NASD, a broker/dealer must have a reasonable basis for believing that the information is accurate in all material respects and is obtained from a reliable source.

**Question #2:** What steps should a broker/dealer take to have a reasonable basis to believe that the information is accurate in all material respects?

**Answer:** A broker/dealer must review the material for obvious errors, internal inconsistencies, and questionable disclosures. This review must be in the context of all other information about the issuer in the broker/dealer's knowledge or possession, including the information required by paragraph (b).

**Question #3:** What are the requirements of Rule 15c2-11 paragraph (b)?

**Answer:** Paragraph (b) requires a broker/dealer to have in its possession: (1) A record of the circumstances surrounding the quotation request, including the identity of the person for whom the quotation is being submitted, (2) a copy of the trading suspension order or the Commission release announcing the suspension if the security has been suspended by the Commission during the last 12 months, and (3) a copy or written record of other material information, including adverse information, that the broker/dealer becomes aware of prior to publishing a quotation.

**Question #4:** What steps should a broker/dealer take to have a reasonable basis to believe that the information is obtained from a reliable source?

**Answer:** Generally, a broker/dealer can be satisfied that information is obtained from a reliable source if it is received from the issuer or its agents, or was obtained from an independent information service such as the Commission's public reference room. If a broker/dealer receives information about an issuer from another market maker or someone other than an agent of the issuer, the broker/dealer should verify the validity of the information with the issuer. Agents do not include promoters or others outside the issuer that may have a personal or an indirect interest in the security.

**Question #5:** Under what circumstances would a broker/dealer be required to take further steps to have a reasonable basis to believe that the information is accurate in all material respects and the sources of the information are reliable?

**Answer:** Ordinarily the broker/dealer need not do any further review unless a potential material deficiency has been detected. Examples of potential material deficiencies are material inconsistencies in the information or between the information and other information in the broker/dealer's possession, a qualified auditor's report, a recently acquired asset that materially enhances the financial condition of the issuer, or a material asset listed on the balance sheet that is unrelated to the issuer's business.

**Question #6:** What should a broker/dealer do if a potential material deficiency is detected in the documents?

**Answer:** A broker/dealer's specific efforts to satisfy itself with respect to the accuracy of the information if a potential

material deficiency has been detected will vary with the circumstances, and may require the broker/dealer to obtain additional information or seek to verify existing information. For example, the broker/dealer may be satisfied that the information is correct after questioning the issuer, or the broker/dealer may need to consult an independent source, such as an attorney or accountant. Regardless of the methodology used to review a potential material deficiency, members are required to maintain in their records any other material information (including adverse information) regarding the issuer which comes to the member's knowledge or possession before the publication or submission of the quotation. Members are also strongly urged to document the manner in which the material deficiencies are resolved.

**Question #7:** May a broker/dealer satisfy its obligation to review the required information and have a reasonable belief as to its accuracy and the reliability of its source solely because its documentation has been reviewed by the NASD?

**Answer:** No. A broker/dealer must independently satisfy the requirements of Rule 15c2-11. Clearance by the NASD to initiate quotations in a quotation medium is not a substitute for this review.

**Question #8:** Are a wholesale market maker's obligations under Rule 15c2-11 any different than a retail market maker's obligations?

**Answer:** No. Commission Release No. 34-29094 states that the rule is directed at the fraudulent, deceptive, or manipulative potential of a broker/dealer's quotations, and does not focus on whether the broker/dealer also engages in retail activity.

**Question #9:** Can a supplemental prospectus satisfy Rule 15c2-11(a)(1)?

**Answer:** Yes. As long as the supplemental prospectus is filed pursuant to Section 10(a) of the Securities Act and includes sufficient information about the issuer to enable the broker/dealer to satisfy its obligation under Rule 15c2-11, i.e., it contains the types of information described in Rule 15c2-11(a)(5). However, if the issuer meets the requirements of Rule 15c2-11(a)(3), the broker/dealer must obtain the documents required by Rule 15c2-11(a)(3).

**Question #10:** Is the issuer required to be current in its filings with the Commission in order for the broker/dealer to utilize Rule 15c2-11(a)(3)?

**Answer:** Yes. Issuers that meet the requirements of Rule 15c2-11(a)(3) are those issuers that report to the Commission and are current in their reports. The broker/dealer must have the issuer's latest Form 10-K and all subsequent Form 10-Qs and those Form 8-Ks filed within five business days prior to publication or submission of the quotation. If the issuer has not filed a Form 10-K, the broker/dealer must have a copy of the prospectus, which has been in effect less than 16 months, and all subsequent Form 10-Qs and Form 8-Ks. If a filing is due at the Commission prior to the NASD's clearance of the Form 211 application, that filing must also be submitted with the application.

**Question #11:** What happens if an issuer is not current in its filings with the Commission?

**Answer:** If the issuer is not current in its filings with the Commission, the broker/dealer can seek to satisfy another subsection of the rule. Usually this would be Rule 15c2-11(a)(5). However, the fact that the issuer is not current in its filings may bear upon the determination of whether the available information is materially accurate.

**Question #12:** Can banks that file Form 10-Ks and Form 10-Qs with the Office of Thrift Supervision or other bank regulators satisfy Rule 15c2-11(a)(3)?

**Answer:** If the reports are filed pursuant to Section 13 or 15(d) of the Exchange Act with bank regulators, the reports will satisfy Rule 15c2-11(a)(3).

**Question #13:** What information is required to be submitted under Rule 15c2-11(a)(4) relating to certain foreign issuers which are exempt from the periodic reporting requirements of Section 12(g) of the Exchange Act?

**Answer:** The broker/dealer is required to submit all the information that the issuer has furnished during its past fiscal year to the Commission in order for the issuer to maintain its Rule 12g3-2(b) exemption.

**Question #14:** Must the financial information required under Rule 15c2-11(a)(5) be independently audited?

**Answer:** No. Rule 15c2-11(a)(5) does not require audited financials. However, a broker/dealer would ordinarily be required to review unaudited financial statements more closely than if the statements were independently audited. Nevertheless, simply because the statements have been audited, a broker/dealer cannot avoid its responsibility to review the financial statements in order to have a reasonable basis to believe that the information is accurate.

**Question #15:** If an issuer has filed a Form 10-K or a prospectus with the Commission and the issuer is current in its reports to the Commission, can the broker rely on Rule 15c2-11(a)(5)?

**APP. 000615**

**Answer:** No. If an issuer has filed a 10-K or prospectus with the Commission and is current in its reports, the broker must file under, and have in its possession the information required by, Rule 15c2-11(a)(3).

**Question #16:** What are the requirements for a broker/dealer if the issuer or its predecessor has been the subject of a Commission trading suspension during the preceding year?

**Answer:** An SEC trading suspension should alert the broker/dealer to the possibility that information in its possession concerning the issuer may no longer be current or accurate. The broker/dealer must be particularly cautious when seeking to reinstate quotations following an SEC trading suspension. The member must obtain a copy of the Commission trading suspension order or the Commission release announcing the trading suspension. A broker/dealer should, at a minimum, receive assurances or additional information with respect to matters cited in the suspension order or with respect to other matters affecting the broker/dealer's reasonable belief as to the accuracy of the information. Reliance on new information or assurances from prior sources of information in these circumstances, however, requires caution. In exceptional cases, where the source is unable to provide reasonable assurances about the reliability of the information, consultation with an independent accountant or attorney may be warranted. All information gathered in the broker/dealer's investigation of the issues must accompany the Form 211 application.

Rule 15c2-11 Exceptions

**Question #17:** Are there any exceptions from the informational requirements of Rule 15c2-11?

**Answer:** Yes. If a broker/dealer can meet one of the exceptions of Rule 15c2-11, it is not required to maintain or submit to the NASD any documents required by Rule 15c2-11. These exceptions primarily relate to instances where a broker/dealer wishes to quote a security that: is traded on a national securities exchange in the United States; represents unsolicited customer interest; has been the subject of regular and continuous quotations for the past 30 days; or is traded on Nasdaq.

**Question #18:** When does the Rule 15c2-11(f)(1) "exchange" exception apply?

**Answer:** The exchange exception applies to securities that are traded on a United States national securities exchange on the same day or the business day prior to the day the application is made to the quotation medium.

**Question #19:** If the common stock of an issuer trades on the New York Stock Exchange, are the warrants of the same issuer exempt from Rule 15c2-11?

**Answer:** No. The exception relates only to specific securities and not to the issuer. Each security must independently meet the requirements of the exception.

**Question #20:** If trading in a security is halted or suspended on Nasdaq or an exchange, but the security has not been officially delisted from Nasdaq or the exchange, can it be listed on the OTC Bulletin Board?

**Answer:** No. The OTC Bulletin Board is only for non-Nasdaq, non-U.S. exchange-listed securities. Dual listing is not permitted. Until a security is officially delisted from an exchange or Nasdaq, it cannot be entered on the OTC Bulletin Board.

**Question #21:** If the broker/dealer is claiming the Rule 15c2-11(f)(2) "unsolicited customer interest" exception of Rule 15c2-11, can the broker/dealer publish quotations for the security in a quotation medium for its own account?

**Answer:** No. If the broker/dealer claims the unsolicited customer interest exception, it can only publish or submit a quotation for that customer account. If the broker/dealer wishes to publish or submit a quotation for its own account or any other accounts, it must comply with Rule 15c2-11. Paragraph (f)(2) of Rule 15c2-11 does not apply to a quotation consisting of both a bid and an offer, each at a specified price, unless the quotation medium specifically identifies the quotation as representing a customer's unsolicited indication of interest.

**Question #22:** Will the NASD be monitoring the broker/dealer's compliance with the unsolicited customer interest exception?

**Answer:** Yes. The NASD monitors all aspects of broker/dealer compliance with Rule 15c2-11, including a quotation utilizing the unsolicited customer interest exception. The NASD may require the broker/dealer to produce its trading records and other documents to determine whether the broker/dealer traded for any account other than the indicated customer.

**Question #23:** What are the requirements of Rule 15c2-11(f)(3), the "piggyback" exception?

**Answer:** If a broker/dealer is relying on the Rule 15c2-11(f)(3) exception, the security must be quoted <u>in the same interdealer quotation medium</u> as the intended quotation during the past 30 calendar days, and that during those 30

**APP. 000616**

days the security had to be quoted on at least 12 days without more than four consecutive business days without quotations.

**Question #24:** Do "name only" quotations satisfy the piggyback exception requirement that the security be quoted in the quotation medium?

**Answer:** Yes. The information requirements of Rule 15c2-11 apply to name only as well as priced quotations. Both types of quotations can be used to satisfy the piggyback exception. It should be noted, however, that each broker/dealer submitting a quotation must satisfy the informational requirements of Rule 15c2-11 until all of the requirements of the piggyback exception, including the 30-day quotation period, have been satisfied.

**Question #25:** What happens when a security is no longer quoted by a broker/dealer in the quotation medium?

**Answer:** If a security is not quoted by any broker/dealer for a period of more than 4 business days, the security no longer qualifies for the piggyback exception. A broker/dealer would be required to comply with Rule 15c2-11 before it could initiate or resume quotation of the security.

**Question #26:** What constitutes a "business day" for purposes of Rule 15c2-11?

**Answer:** For purposes of Rule 15c2-11, a "business day" is defined by reference to the quotation medium to which a broker/dealer submits the quotation. Any day that the quotation medium accepts and disseminates quotations would constitute a "business day" under Rule 15c2-11.

**Question #27:** Must a broker/dealer quote a security for an entire "business day" to qualify for the "piggyback" exception contained in paragraph (f)(3)ofRule15c2-11?

**Answer:** Under the "piggyback" exception, a security will be deemed to have been quoted on a business day where a broker/dealer has continuously quoted a security for all or a substantial portion of that day. The existence of closing quotations on the OTC Bulletin Board may be used by the NASD to create a rebuttable presumption that the broker/dealer continuously quoted a security for a substantial portion of the business day.

**Question #28:** If a security qualifies for the piggyback exception in one quotation medium, does it meet the piggyback exception for other quotation mediums? For example, if a security is quoted in the OTC Bulletin Board, can a market maker quote the security in the "pink sheets" without filing a Form 211 application?

**Answer:** No. The staff of the SEC takes the position that the piggyback exception does not transfer from one quotation medium to another. Thus, quotations for a security in the OTC Bulletin Board may not be used to satisfy the piggyback requirements for the "pink sheets."

**Question #29:** What are the requirements of Rule 15c2-11(f)(5), the "Nasdaq" exception?

**Answer:** In order for a broker/dealer to rely on the Nasdaq exception, the security must be authorized for quotation on Nasdaq and the authorization must not be suspended, terminated, or prohibited.

**Question #30:** Can a broker/dealer publish a quotation on the OTC Bulletin Board for a security that is currently traded on Nasdaq?

**Answer:** No. The OTC Bulletin Board does not allow quotations for Nasdaq securities.

**Question #31:** If the common stock and units of an issuer are already quoted on the OTC Bulletin Board, does a Form 211 application need to be submitted for the warrants of the same issuer?

**Answer:** Yes. Rule 15c2-11 applies to securities, not issuers. Quotations for the common stock and units may be in compliance with Rule 15c2-1 1, but that does not qualify any other securities of the issuer. Accordingly, a completed Form 211 and the Rule 15c2-11 information would have to be submitted for the warrants. However, if the broker/dealer has previously submitted documents relating to the issuer that continue to meet the requirements of Rule 15c2-11, it need not refile identical documents. The broker/dealer need only submit a completed Form 211 alone or with any additional documents needed to comply with Rule 15c2-11.

Schedule H and OTC Bulletin Board Questions

**Question #32:** What must be included in the basis and factors for a broker/dealer's initial priced entry?

**Answer:** A broker/dealer's basis and factors should relate to the price that the broker/dealer is proposing. The statement on the Form 211 must be concise and directly related to the proposed bid and/or offer. The basis and factors should not be broad generalized statements but should articulate how the priced quotation was determined, including the

APP. 000617

factors taken into consideration. The NASD is not conducting merit review but must be able to clearly understand the basis for the initial priced entry.

**Question #33:** If a broker/dealer's Rule 15c2-11 documentation has been cleared by the NASD, but the broker/dealer did not request clearance for a priced quotation, is the broker/dealer required to file anything additional when it changes its unpriced quotation to a priced quotation?

**Answer:** Yes. The broker/dealer must supplement its original application with the Form 211 indicating the intended priced entry and the basis and factors even if other broker/dealers are publishing priced quotations for the security or a piggyback exception has become available.

**Question #34:** Can Form 211 applications be faxed to the NASD?

**Answer:** No. The original Form 211 must be mailed and requires original signatures.

**Question #35:** If a security on the OTC Bulletin Board appears in the "eligible" status, can a broker/dealer enter quotations without filing a Form 211 application?

**Answer:** No. The "eligible" status on the OTC Bulletin Board indicates that another broker/dealer has been cleared to quote the security, but the piggyback exception of Rule 15c2-11 has not been met. When the status for a security on the OTC Bulletin Board is "active" a broker/dealer may enter quotes without filing the Form 211 application.

**Question #36:** What are the filing requirements of Schedule H if another security of the issuer is trading on Nasdaq, i.e., if a broker/dealer wishes to quote the warrants of an issuer that has a common stock listed on Nasdaq?

**Answer:** Since an issuer that has a security trading on Nasdaq will be a reporting company, the broker/dealer need only submit the Form 211 and indicate on the Form 211, under Rule 15c2-11(a)(3), the reports that the broker/dealer has in its possession. These reports would include the issuer's latest Form 10-K and all subsequent Form 10-Qs and Form 8-Ks. In this case the Form 211 can be faxed to the NASD.

**Question #37:** Is there an expedited procedure for listing recently delisted Nasdaq securities on the OTC Bulletin Board?

**Answer:** Yes. On February 28, 1992, the SEC granted an exemption from Rule 15c2-1 1 for securities that will be delisted from Nasdaq due to the revised listing and maintenance requirements for the Nasdaq Small-Cap Market.[SM] When these securities are delisted, they will automatically be eligible to quote on the OTC Bulletin Board or any other quotation medium **the next business day** without the filing of a Form 211, as long as the following requirements are met:

(1) The security must have been traded on Nasdaq for the past 30 days;

(2) The issuer must not be subject to bankruptcy proceedings;

(3) The issuer must be current in its SEC reporting requirements; and

(4) The broker/dealer relying on this exception must have been a market maker in the subject security during the 30 days prior to delisting.

**Question #38:** Can more than one security of an issuer be included on a Form 211?

**Answer:** Yes. More than one security for a **single issuer** may be requested on a single Form 211.

**Question #39:** Can a broker/dealer accept payment to make a market in an issuer's securities?

**Answer:** No. A market maker cannot accept any form of compensation, including cash, securities, products, or services, for the purposes of making a market, to cover out-of-pocket expenses for making a market, or for submitting an application to make a market in an issuer's securities. This activity was addressed in *Notice to Members 75-16* in 1975.

**Question #40:** Can a broker/dealer rely on the inside market (high bid, low ask prices) calculated on the OTC Bulletin Board in executing retail transactions?

**Answer:** No. Broker/dealers cannot execute transactions in non-Nasdaq over-the-counter equity securities based on the prices of any non-validated quotations. Members should be aware that the best indication of the prevailing market price is the actual trades that are occurring in the marketplace and not the quotations appearing on the OTC Bulletin Board or other quotation mediums. As the Commission stated in the leading decision of *Alstead, Dempsey & Company, Incorporated* (SEC Release No. 34-20825, April 5, 1984): "By their very nature, quotations only propose a

transaction: they do not reflect the actual result of a completed arms-length sale. Thus, as we have frequently pointed out, quotations for obscure securities with limited inter-dealer trading activity may have little value as evidence of the current market." (See *Notice to Members 92-16*).

**Question #41:** If the OTC Bulletin Board displays three firm quotations, is a broker/dealer required by Article III, Sections 1 and 21 (b) of the NASD Rules of Fair Practice, to call the market makers to verify their quotations appearing on the OTC Bulletin Board?

**Answer:** No. The broker/dealer does not have to call the three market makers to verify the firm quotations that are displayed on the screen. A broker/dealer need only note on the order ticket the identity of the broker/dealers and the firm quotations obtained from the OTC Bulletin Board.

**Question #42:** If the OTC Bulletin Board has one firm quote and two name only quotations, is the broker/dealer required to call the name-only market makers to determine their quotations?

**Answer:** Yes. If there are fewer than three firm quotations on the OTC Bulletin Board, the broker/dealer must call the name-only market makers to obtain the three required quotations.

**Question #43:** What is the broker/dealer's obligation if the OTC Bulletin Board has fewer than three market makers listed?

**Answer:** The broker/dealer must check the "pink sheets" or any other quotation medium for additional market makers. A market maker in these quotation mediums must be contacted to obtain its current quotations. If three market makers cannot be found, then the broker/dealer need only contact the one or two that were found.

**Question #44:** If the OTC Bulletin Board has three non-firm priced quotations in a foreign security, must a broker/dealer contact each market maker?

**Answer:** Yes. Non-firm quotations on the OTC Bulletin Board cannot be used to satisfy the requirement that quotations be obtained from other market makers.

**Question #45:** Does Rule 15c2-1 1 and Schedule H apply to secondary market transactions in direct participation program securities?

**Answer:** Yes. Both Rule 15c2-11 and all of the sections of Schedule H apply. Pursuant to Schedule H, Section 4, members are required to submit their Rule 15c2-11 information to the NASD prior to publishing quotations. Moreover, members must report their volume in secondary market transactions, and certain pricing information in direct participation program trading as required by Schedule H, Section 2 of the NASD By-Laws. For more information on trade reporting for these securities, please call Automated Reports at (301) 590-6887. In addition, a separate Notice will be issued addressing this subject.

**Question #46:** Where can a broker/dealer get more information on the subjects discussed in this Notice?

**Answer:** All interested broker/dealers should read Rule 15c2-11, Commission Release No. 34-29094, Schedule H, Section 4 of the NASD By-Laws, and *Notice to Members 90-40*. Additionally, the Compliance Division's OTC Compliance Unit (202) 728-8149 is available throughout the business day and by voice mail during non-business hours to respond to inquiries or to direct the caller to the appropriate party. We encourage members to call with their questions and inquiries.

For more information contact Daniel M. Sibears, Director, Compliance Division, at (202) 728-8959 or Ken Worm, Manager, OTC Compliance Unit, at (202) 728-8149. Also, broker/dealers with questions regarding Rule 15c2-11 may contact the Office of Trading Practices, Division of Market Regulation, Securities and Exchange Commission at (202) 272-2848.

©2014 FINRA. All rights reserved.

# Appendix

# Exhibit EE



Financial Industry Regulatory Authority

## FORM 211

### General Instructions

Complete this form to initiate or resume quotations in a quotation medium, as defined in Rule 15c2-11(e)(i) under the Securities Exchange Act of 1934 (1934 Act) including, but not limited to, the OTC Bulletin Board™ or OTC Link® ATS. By completing this form, your firm is representing that it has satisfied all applicable requirements of Rule 15c2-11 and the filing and information requirements of FINRA Rule 6432. **It is not necessary to file this application if a member qualifies for an exception or exemption provided by paragraphs (f)(1)-(5) or (h) of Rule 15c2-11.**

Send the completed form and a copy of the required Issuer information to FINRA, OTC Compliance Unit, 9509 Key West Avenue, Rockville, MD 20850-3329. **If you have any questions, call the OTC Compliance Unit at (240) 386-5100.**

**Check the applicable quotation medium(s):**

☐   OTC Bulletin Board™

☐   OTC Link® ATS

☐   Other (name of quotation medium)

1

**APP. 000621**

## Part 1 – Issuer and Security Information

**Provide the information requested below:**

1.  Exact name of Issuer and predecessor (if any) _____

2.  Address of principal executive offices _____

    _____

3.  Telephone number of principal executive offices _____

4.  Type of security (check one)  ☐ Domestic Security    ☐ Foreign Security    ☐ DPP
    ☐ Sponsored ADR    ☐ Unsponsored ADR

5.  State of incorporation _____ Country of incorporation _____

6.  Complete title and class of security to be quoted _____

7.  Symbol of security (if assigned) _____ CUSIP _____

8.  Par or stated value of security _____

9.  Total securities outstanding at the end of the Issuer's most recent fiscal year _____

    _____

10. Name and address of transfer agent _____

    _____

11. List any restrictions on the transfer of the security _____

    _____

12. Price of initial quotation entry _____ Bid _____ Ask _____

    ☐ No price at this time _____

**If you are requesting to enter a bid and/or ask price, you must also provide a clear statement of the following information:**

The basis upon which the priced entry was determined: _____

The factors considered in making that determination: _____

2

## Part 2 – Required Issuer Information

Check the applicable box (select only one) that corresponds to the category of Issuer information accompanying this application. **To determine the applicable category, carefully review paragraphs (a)(1)-(5) of Rule 15c2-11 and paragraph (g), which defines "reasonably current" information for purposes of paragraph (a)(5).**

Provide one copy of all required information (except for EDGAR documents) along with this completed form.

### RECENT OFFERINGS

☐ **(a)(1)** Provide the prospectus that became effective less than 90 calendar days prior to filing this Form 211, as specified by Section 10(a) of the Securities Act of 1933 (1933 Act).

SEC Effective Date:                          Date Security(ies) Issued:

☐ **(a)(2)** Provide the offering circular that became effective less than 40 calendar days prior to filing this Form 211, as provided for under Regulation A under the 1933 Act.

SEC Effective Date:                          Date Security(ies) Issued:

### REPORTING COMPANIES

☐ **(a)(3)** Provide the Issuer's most recent annual report filed pursuant to Section 13 or 15(d) of the 1934 Act or the annual statement referred to in Section 12(g)(2)(G)(i) of the 1934 Act. Provide quarterly and other current reports filed after the Issuer's most recent annual report or statement. List below each report or statement and applicable amendments filed by the Issuer through EDGAR that your firm has in its possession that meets the requirements of this section.

Name of Report or Statement          Report or Statement Date          EDGAR Filed Date

### FOREIGN PRIVATE ISSUERS

☐ **(a)(4)** Provide the following information regarding the Issuer's reliance upon Rule 12g3-2(b) of the 1934 Act.

The foreign exchange(s) on which the subject class of securities is listed that, either singly or together with the trading of the same class of the Issuer's securities in another foreign jurisdiction, constitutes the primary trading market for those securities.

The symbol(s) of the security(ies) that trade on the foreign exchange(s).

The location of the Internet Web site or electronic information delivery system that the member firm would provide upon request to any person to direct them to the information that the Issuer published electronically pursuant to Rule 12g3-2(b).

3

**NON-REPORTING AND ALL OTHER COMPANIES**

☐ **(a)(5)** The applicant must make the Issuer information filed in conjunction with section (a)(5) of this form available upon request to any person expressing an interest in a proposed transaction with the subject security filed. Provide the Issuer's most recent balance sheet, profit and loss and retained earnings statements, equivalent financial information for the two prior fiscal years for the Issuer or any predecessor company, and the documents that support the information provided in this form.

a.  Describe the Issuer's business. _____

_____

b.  Describe the products or services offered by the Issuer. _____

_____

c.  Describe the Issuer's facilities. _____

_____

d.  List the name(s) of the current Chief Executive Officer(s) and members of the Board of Directors of the Issuer. _____

_____

e.  Is the firm that is submitting this form, or any person associated with it, affiliated directly or indirectly with the Issuer?

☐ Yes  ☐ No   If yes, what is the affiliation? _____

_____

f.  Is the quotation being published or submitted on behalf of any other broker-dealer?

☐ Yes  ☐ No   If yes, what is the name of the broker or dealer? _____

_____

g.  Is the quotation being published or submitted directly or indirectly on behalf of the Issuer or any director, officer or any person who is directly or indirectly the beneficial owner of more than 10% of the outstanding units or shares of any equity security of the Issuer?

☐ Yes  ☐ No   If yes, what is the name of the person, and what is the basis for any exemption under the federal securities laws for any sales of such securities on behalf of this person?

_____

_____

_____

4

## Part 3 – Supplemental Information

**Please review paragraphs (b)(1)-(3) of Rule 15c2-11 and provide the information requested below.**

**(b)(1)**   Describe the circumstances surrounding the submission of this application. Include the identity of any person(s) for whom the quotation is being submitted and any information provided to your firm by such person(s).

_____

_____

_____

_____

**(b)(2)**   Has the Issuer or its predecessor (if any) been subject to a trading suspension order issued by the SEC during the past 12 months? If a trading suspension order has been issued, provide a copy of the order or of the SEC's public release announcing the trading suspension order.

Check the appropriate box: ☐ Trading suspension order or release enclosed. ☐ Not applicable.

_____

_____

_____

_____

**(b)(3)**   Provide any material information, including adverse information regarding the Issuer, that your firm is aware of or has in its possession. (Do not list information already provided in Part 2.) If your firm does not possess such information, state "None" below.

Identify any applicable information by name and date.

_____

_____

_____

_____

5

## Part 4 – Regulatory Filings

Fiscal Year End Date (MM/DD) _____

Date of Incorporation (MM/DD/YYYY) _____

Standard Industrial Classification (SIC) Code _____

**(a) Complete if the Issuer files periodic reports through the SEC's EDGAR system.**

- Provide the 10-digit Central Index Key (CIK) number. (The CIK is a unique identifier assigned by the SEC to all companies and people who file disclosure documents through EDGAR with the SEC.)

_____

**(b) Complete if the non-EDGAR filing Issuer is an insurance company or files periodic reports with a federal banking agency or state supervisor.**

- Name of regulatory authority where the Issuer files periodic financial reports:

_____

- Telephone number of the regulatory authority:

_____

- The Issuer's filing cycle. (Check one)
  - ☐ Quarterly
  - ☐ Semi-Annually
  - ☐ Annually
  - ☐ Other (Describe the filing cycle)_____

- List the required reports filed by the Issuer for the current fiscal year.

| Name of Report or Statement | Report or Statement Date | Filed Date |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

6

## Part 5 – Certification

**The undersigned must have a reasonable basis for believing that the information accompanying this form is accurate in all material respects and that the source of the information is reliable.**

By signing this document:

- I acknowledge and certify that my firm has a reasonable basis for believing that the information accompanying this form (including required EDGAR filed documents not provided) is accurate in all material respects and that the sources of information are reliable ("affirmative review obligation") as required by Rule 15c2-11 and FINRA Rule 6432;

- I understand and acknowledge that this affirmative review obligation applies to all subsequent submissions made in connection with this Form 211 application;

- I certify that I have examined this form and, to the best of my knowledge and belief, it is true, correct, and complete;

- I certify that neither _____ [member name]

  nor persons associated with _____ [member name] have accepted or will accept any payment or other consideration, directly or indirectly, from the Issuer of the security to be quoted, or any affiliate or promoter thereof, for publishing a quotation or acting as market maker in the security to be quoted, or submitting an application in connection therewith, including the submission of this Form 211; and

- I understand and acknowledge that copies of this form, accompanying documents, and subsequent submissions made in connection with this Form 211 application may be provided to the Securities and Exchange Commission, other regulatory agencies, or to the quotation medium(s) on which the security is or will be quoted.

Name, title and signature of firm employee to contact regarding information contained in this Form 211 application.

| | |
|---|---|
| Name | Title |
| Signature | Date |
| Phone | Fax |

Name, title, and signature of the registered principal of the firm responsible for this Form 211 application, and all subsequent submissions made in connection with this application.

| | |
|---|---|
| Name | Title |
| Signature | Date |
| Firm Name | |

(Firm must be an OTC Link subscriber if application is for the OTC Link.)

| | | |
|---|---|---|
| Address | | |
| City | State | Zip |
| Firm CRD# | Market Participant Identifier | |

Investor protection. Market integrity.

9509 Key West Ave.
Rockville, MD 20850
www.finra.org

© 2014. FINRA. All rights reserved.
14_0167.1 – 06/14

APP. 000627

# Appendix

# Exhibit FF

APP. 000628

| From: | Andrew Farmer <andrew.farmer@iridiumcapitallimited.com> |
| Sent: | Thursday, December 22, 2011 11:53 PM |
| To: | Mark Dillon <mark@pennaluna.com> |
| Subject: | Chimera Energy Corp |

Mark,

My buddy Charles is the CEO of Chimera Energy Corp.  Chimera's S-1 just went effective on the 21st.  They'll be looking to do a 15c211 sometime in the first two weeks of 2012.

I know you've done them before and thought I'd give you the opportunity if you're interested.  Charles can direct one of his shareholders to deposit their shares with Pennaluna.

As a side note, neither Carolyn or myself are involved in the deal in any way.

Let me know if you're interested.

Thanks,

Andrew Farmer
**Iridium Capital Limited**
(832) 364-6317
(832) 553-3080 Fax
(619) 247-2680 Cell

SEC-PC-E-0000441

# Appendix

# Exhibit GG

| From: | Andrew Farmer <andrew.farmer@iridiumcapitallimited.com> |
|---|---|
| Sent: | Friday, January 13, 2012 7:44 PM |
| To: | Ashley Dillon <ashley@pennaluna.com> |
| Subject: | Re: pre-211 paperwork (1st email) |
| Attach: | Chimera - Investor Introductions - 1.13.12.pdf; Chimera - Investor Relationships - 1.13.12.pdf |

Ashley,

Here's what we've come up with. Let me know if you think this will suffice. If it is sufficient we'll get it sent off to you today.

Thanks,

Andrew Farmer
**Iridium Capital Limited**
(832) 364-6317
(832) 553-3080 Fax
(619) 247-2680 Cell

**From:** Ashley Dillon <ashley@pennaluna.com>
**Date:** Fri, 13 Jan 2012 09:42:51 -0800
**To:** Andrew Farmer <andrew.farmer@iridiumcapitallimited.com>
**Subject:** RE: pre-211 paperwork (1st email)

Hi Andrew,

<!--[if !supportLists]-->1. <!--[endif]-->Are you looking for an example as to : *On company letterhead: who made introductions, who solicited them, how they knew them, how many were solicited, and if there were any that did not buy.?*

We don't have a typical introduction letter, but usually people create an excel spreadsheet of sorts, explaining the shareholder and their relationship, please see following as an example...

### MACKENZIE TAYLOR MINERALS INC.
### (the "Company")
### Relationships among shareholders and the officers and directors of the Company

| Name And Address | Relationships |
|---|---|
| Terry Loychuk<br>#203, 703 14th Avenue, S.W.<br>Calgary, Alberta., T2R 0N2 | Long term , close friend of Terry Stimpson, President of the Company. |
| Maki Maruoka<br>#203, 703 14th Avenue, S.W.<br>Calgary, Alberta., T2R 0N2 | Close friend of Terry Stimpson , President of the Company, as well as Joseph Pace, another of our shareholders. |
| Robert L. Jacobs<br>Suite 140, 2nd Street S.W.<br>Calgary, Alberta. T2s 3C4 | Stepfather of our Secretary-Treasurer, Kendall O'Leary, David Pyke and Dana Dedeluk, spouse of D.M. Pyke, father of Micheile Jacobs |
| D. M. Pyke-Jacobs<br>Suite 140, 2nd Street S.W.<br>Calgary, Alberta. T2s 3C4 | Mother of our Secretary Treasurer, Kendall O'Leary, David Pyke and Dana Dedeluck stepmother to Michele Jacobs |

Let me know if you have any further questions,

SEC-PC-E-0000723

Ashley Dillon
http://www.markjdillon.com/
Pennaluna and Company
421 Sherman ave
Coeur d 'Alene Id  83814
800 654 9929 or 1 208 667 7472
fax 1 208 664 2283


Attn; Mark Dillon



**From:** Andrew Farmer [mailto:andrew.farmer@iridiumcapitallimited.com]
**Sent:** Friday, January 13, 2012 8:17 AM
**To:** Ashley Dillon; Mark Dillon
**Cc:** cgrob@chimeraenergyusa.com
**Subject:** Re: pre-211 paperwork (1st email)

Ashley,

You'll receive a FedEx this morning with copies of the subscription agreements as well as the director questionnaire.  The notarized rep letter will be sent today.  We expect to have the certified shareholders list on Tuesday and will email a copy asap.

We are in the process of putting together the certificate as to consultants and merger discussions.  Do you have a sample of the "introduction" letter that we can use as a template?

Thanks,

Andrew Farmer
Iridium Capital Limited
(832) 364-6317
(832) 553-3080 Fax
(619) 247-2680 Cell

**From:** Ashley Dillon <ashley@pennaluna.com>
**Date:** Tue, 27 Dec 2011 09:30:41 -0800
**To:** Andrew Farmer <andrew.farmer@iridiumcapitallimited.com>
**Cc:** "cgrob@chimeraenergyusa.com" <cgrob@chimeraenergyusa.com>
**Subject:** pre-211 paperwork (1st email)

**Mr. Farmer and Mr. Grob,**

Regarding filing a 15c2-11, to get us started we will need you fill out the attached paperwork as well as supply:

<!--[if !supportLists]-->1. <!--[endif]-->Copies of the subscription agreements and form of payments for each subscriber.
<!--[if !supportLists]-->2. <!--[endif]-->On company letterhead: who made introductions, who solicited them, how they knew them, how many were solicited, and if there were any that did not buy.
<!--[if !supportLists]-->3. <!--[endif]-->A current/certified shareholders list, generated by the transfer agent. The transfer agent can PDF a list to us based on the issuer's request.
>> <!--[if !supportLists]-->a. <!--[endif]-->Name and address of shareholder
>> <!--[if !supportLists]-->b. <!--[endif]-->The share amount
>> <!--[if !supportLists]-->c. <!--[endif]-->The date acquired
>> <!--[if !supportLists]-->d. <!--[endif]-->Whether shares are restricted, controlled, or free trading
>> <!--[if !supportLists]-->e. <!--[endif]--> The total amount of shares free trading and restricted
<!--[if !supportLists]-->4. <!--[endif]-->On company letterhead: is the issuer working with a consultants or public relations firms?
i.   Has the issuer entered into any discussions or negotiations concerning any merger or acquisition.

Please send all paperwork (originals on the rep letter/questionnaire) to Pennaluna and Company, Attn: Mark or Ashley Dillon.

SEC-PC-E-0000724

And please let me know if you have any questions,

Sincerely,

Ashley Dillon
Pennaluna and Company
421 Sherman ave
Coeur d 'Alene Id  83814
800 654 9929 or 1 208 667 7472
fax 1 208 664 2283

Attn; Mark Dillon

SEC-PC-E-0000725



January 13, 2012

Pennaluna & Company
421 Sherman Avenue
Coeur d'Alene, ID 83814

Dear Sirs:

Chimera Energy Corp. raised $75,000 from 29 investors pursuant to a Registration Statement on Form S-1 filed with the Securities and Exchange Commission that was approved for effectiveness on December 21, 2011. The subscription period was opened on December 22, 2011 and closed on January 11, 2012.

Each of the individuals who subscribed to the offering was either personally known to our CEO, Charles Grob, or introduced to our CEO by another shareholder. Mr. Grob was the sole individual authorized by the company to solicit investments from individuals who indicated interest in the offering. In addition to the 29 investors who subscribed to the offering, 4 individuals who initially expressed interest in the offering chose not to subscribe.

Attached is a spreadsheet detailing the inter-relationships between the investors as well as the individual who introduced them to our CEO.

Sincerely,


Charles Grob
President and CEO

**APP. 000634**                    SEC-PC-E-0000726

Document Properties

## Description

### Description

File: SEC-PC-E-0000726

Title: Microsoft Word - Chimera - Investor Introductions - 1.13.12.docx

Author: Andrew Farme

Subject:

Keywords:

Created: 1/13/2012 7:43:18 PM

Modified: 1/13/2012 7:43:18 PM

Application: Microsoft Word

[Additional Metadata...]

### Advanced

PDF Producer: Mac OS X 10.6.8 Quartz PDFContex

PDF Version: 1.4 (Acrobat 5.x)

Location: C:\Users\VydashenkoN\AppData\Local\Microsoft\Windows\Temporary Int...\WZ0885A8\

File Size: 59.76 KB (61,196 Bytes)

Page Size: 8.50 x 11.00 in          Number of Pages: 1

Tagged PDF: No                      Fast Web View: No

[Help]                         [OK]        [Cancel]



# RELATIONSHIPS BETWEEN SHAREHOLDERS

| SHAREHOLDER NAME | RELATIONSHIP |
|---|---|
| AUSTIN, ANDREW | CLOSE FRIEND OF BRIAN BARRILLEAUX, BROTHER OF ROBBIE AUSTIN, BROTHER-IN-LAW OF NICOLE MILLER |
| AUSTIN, ROBBIE | CLOSE FRIEND OF BRIAN BARRILLEAUX, HUSBAND OF NICOLE MILLER, BROTHER-IN-LAW OF ANDREW AUSTIN |
| BARRILLEAUX, BRIAN | LONGTIME FRIEND OF CEO CHARLES GROB, FIANCÉE OF NATALIE MOORE, BROTHER OF MATTHEW BRYANT |
| BEALL, ROBERT | LONGTIME FRIEND OF CEO CHARLES GROB |
| BRYANT, MATTHEW | BROTHER OF BRIAN BARRILLEAUX |
| COTTON, LYDIA | LONGTIME FRIEND OF CEO CHARLES GROB |
| COX, MAIRI | LONGTIME FRIEND OF CEO CHARLES GROB, WIFE OF PAUL COX |
| COX, PAUL | LONGTIME FRIEND OF CEO CHARLES GROB, HUSBAND OF MAIRI COX |
| DEMANDANTE, ARCHIE | CLOSE FRIEND OF ANNA TIKHONOVA, HUSBAND OF JANA ROBINSON-DEMANDANTE |
| EAGLETON, BRENDAN | LONGTIME FRIEND OF CEO CHARLES GROB |
| FARMER, LINWOOD | FATHER-IN-LAW OF ANNA TIKHONOVA, HUSBAND OF PATRICIA FARMER |
| FARMER, PATRICIA | MOTHER-IN-LAW OF ANNA TIKHONOVA, WIFE OF LINWOOD FARMER |
| FERTITTA, NICOLE | LONGTIME FRIEND OF CEO CHARLES GROB |
| FLEMING, MATT | LONGTIME FRIEND OF CEO CHARLES GROB |
| GARCIA, BRITTANY | CLOSE FRIEND OF JANA ROBINSON-DEMANDANTE, WIFE OF ALEJANDRO GARCIA-HERRERA |
| GARCIA-HERRERA, ALEJANDRO | HUSBAND OF BRITTANY GARCIA |
| HUFF, H. DOUG | PARTNER OF DAVID PARISI |
| LEAL, BRANDI | CLOSE FRIEND OF JANA ROBINSON-DEMANDANTE |
| MEGA, BENJAMIN | LONGTIME FRIEND OF CEO CHARLES GROB |
| MILLER, NICOLE | CLOSE FRIEND OF BRIAN BARRILLEAUX, WIFE OF ROBBIE AUSTIN, SISTER-IN-LAW OF ANDREW AUSTIN |
| MOORE, NATALIE | FIANCÉE OF BRIAN BARRILLEAUX |
| MOSS, JAMES | CLOSE FRIEND OF BRIAN BARRILLEAUX, HUSBAND OF KELLIE MOSS |
| MOSS, KELLIE | CLOSE FRIEND OF BRIAN BARRILLEAUX, WIFE OF JAMES MOSS |
| PARISI, DAVID | BUSINESS ACQUAINTANCE OF CEO CHARLES GROB |
| ROBINSON-DEMANDANTE, JANA | CLOSE FRIEND OF ANNA TIKHONOVA, WIFE OF ARCHIE DEMANDANTE |
| SAMIUDDIN, SHARA | LONGTIME FRIEND OF CEO CHARLES GROB |
| SORELLE, DANIEL | LONGTIME FRIEND OF CEO CHARLES GROB |
| STRESSAU, M. ASHTON | LONGTIME FRIEND OF CEO CHARLES GROB |
| TIKHONOVA, ANNA | LONGTIME FRIEND OF CEO CHARLES GROB |

2800 POST OAK BLVD, SUITE 4100 • HOUSTON, TX • 77056 • (832) 390-2334

APP. 000636

SEC-PC-E-0000727

Document Properties

## Description

### Description

| | |
|---|---|
| File: | SEC-PC-E-0000727 |
| Title: | Microsoft Word - Chimera - Investor Relationships - 1.13.12.docx |
| Author: | Andrew Farme |
| Subject: | |
| Keywords: | |

Created: 1/13/2012 7:42:59 PM

Modified: 1/13/2012 7:42:59 PM

Application: Microsoft Word

[Additional Metadata...]

### Advanced

PDF Producer: Mac OS X 10.6.8 Quartz PDFContex

PDF Version: 1.4 (Acrobat 5.x)

Location: C:\Users\VydashenkoN\AppData\Local\Microsoft\Windows\Temporary I...\MIVWLNUL\

File Size: 63.29 KB (64,804 Bytes)

Page Size: 8.50 x 11.00 in                    Number of Pages: 1

Tagged PDF: No                                 Fast Web View: No

[Help]                                    [OK]    [Cancel]

APP. 000637

# Appendix

# Exhibit HH

| | |
|---|---|
| **From:** | Eddie Austin, Jr. |
| **To:** | Culley Adamson, Grace; Feldman, Cary M. |
| **Sent:** | 6/20/2013 10:47:02 AM |
| **Subject:** | Fw: Chimera Subscription Agreement |
| **Attachments:** | Chimera - S-1 Subscription Agreement - Farmer.docx; Chimera - S-1 Subscription Agreement.docx |

----- Forwarded Message -----
**From:** "Eddie Austin, Jr." <eddieaustinjr@yahoo.com>
**To:** Kellie <kellieraustin@yahoo.com>; Robbie Paul Austin <contrabandbayou@yahoo.com>; Nicole Miller <nicole_housing@yahoo.com>; Andrew Austin <redguts@gmail.com>
**Sent:** Tuesday, January 10, 2012 3:45 PM
**Subject:** Fw: Chimera Subscription Agreement

Hi Everyone

I will call you tonight to talk about this.

Thanks

Padre

----- Forwarded Message -----
**From:** "Eddie Austin, Jr." <eddieaustinjr@yahoo.com>
**To:** Eddie Austin Jr. <eddieaustinjr@yahoo.com>
**Sent:** Tuesday, January 10, 2012 12:17 PM
**Subject:** Fw: Chimera Subscription Agreement

----- Forwarded Message -----
**From:** Andrew Farmer <andrew.farmer@iridiumcapitallimited.com>
**To:** Eddie Austin <eddieaustinjr@yahoo.com>; Carolyn Bryant <carolynpaustin@yahoo.com>
**Sent:** Saturday, December 24, 2011 8:38 PM
**Subject:** Chimera Subscription Agreement

Eddie,

Here is the subscription agreement.  I've sent a blank one as well as one that is filled out already.

Let me know if you have any questions.

Thanks.

Andrew Farmer
**Iridium Capital Limited**
(832) 364-6317
(832) 553-3080 Fax
(619) 247-2680 Cell

EA0000022

# Appendix

# Exhibit II

# PENNALUNA & COMPANY

*~ Stockbrokers since 1926 ~*

January 24, 2012

FINRA
OTC Compliance Unit
9513 Key West Avenue
Rockville, MD 20850-3389

Re:    Form 211 – Pink Quote & OTCBB
       Chimera Energy Corporation

Dear Sir or Madam:

Pennaluna & Company submits herewith an original and one copy of a completed Form 211 pertaining to quotation on the Pink Sheets & the OTC Bulletin Board of the stock of Chimera Energy Corporation, a Nevada corporation.

If you have questions or comments on this submission, please contact Mark Dillon of this firm. He may be reached as follows:

       Phone: (208) 667-7472
       Fax:    (208) 664-2283

Thank you very much for your assistance.

Sincerely,

Mark Dillon
Trader and Broker

Members
NASD • SIPC

421 Sherman Avenue • Coeur d'Alene, Idaho 83814 • (208) 667-7472 • (800) 535-5329
413 6th Street • Wallace, Idaho 83873 • (208) 752-1242
e-mail: pennaluna@pennaluna.com • web site: http://www.pennaluna.com

APP. 000639

SEC-PC-P-0000089



**Financial Industry Regulatory Authority**

## FORM 211

### General Instructions

Complete this form to initiate or resume quotations in the OTC Bulletin Board®, the Pink Quote or any other comparable quotation medium. By completing this form, your firm is representing that it has satisfied all applicable requirements of Securities and Exchange Commission (SEC) Rule 15c2-11 and the filing and information requirements of NASD Rule 6640. It is not necessary to file this application if a member qualifies for an exception or exemption provided by paragraphs (f)(1)-(5) or (h) of Rule 15c2-11.

Send the completed form, a photocopy of the completed form and two copies of the required Issuer information to FINRA, OTC Compliance Unit, 9509 Key West Avenue, Rockville, MD 20850-3329 If you have any questions, call the OTC Compliance Unit at (240) 386-5100.

Check the applicable quotation medium(s):

☑ OTC Bulletin Board

☑ Pink Quote

☐ Other (name of quotation medium)

1

SEC-PC-P-0000090

## Part 1 – Issuer and Security Information

**Provide the information requested below:**

1. Exact name of Issuer and predecessor (if any) *Chimera Energy Corporation*

2. Address of principal executive offices *2800 Post Oak Blvd Suite 4100*

   *Houston, Tx. 77056*

3. Telephone number of principal executive offices *832-390-2334*

4. Type of security (check one)  ☒ Domestic Security   ☐ ADR   ☐ Foreign Security   ☐ DPP

5. State of incorporation *Nevada*   Country of incorporation *USA*

6. Complete title and class of security to be quoted *Common*

7. Symbol of security (if assigned) *N/A*   CUSIP (if assigned) *16934)100*

8. Par or stated value of security *.001*

9. Total securities outstanding at the end of the Issuer's most recent fiscal year

   *15,000,000*

10. Name and address of transfer agent *Island Stock Transfer*

    *15500 Roosevelt Blvd, suite 301 Clearwater, FL 33760*

11. List any restrictions on the transfer of the security

12. Price of initial quotation entry                  Bid                  Ask

    ☒ No price at this time

**If you are requesting to enter a bid and/or ask price, you must also provide a clear statement of the following information:**

The basis upon which the priced entry was determined:

The factors considered in making that determination:

2

SEC-PC-P-0000091

## Part 2 – Required Issuer Information

Check the applicable box (select only one) that corresponds to the category of Issuer information accompanying this application. To determine the applicable category, carefully review paragraphs (a)(1)-(5) of Rule 15c2-11 under the Securities Exchange Act of 1934 (1934 Act) and paragraph (g), which defines "reasonably current" information for purposes of paragraph (a)(5).

Provide two copies of all required information (except for EDGAR documents) along with this completed form.

### RECENT OFFERINGS

☐ (a)(1) Provide the prospectus that became effective less than 90 calendar days prior to filing this Form 211, as specified by Section 10(a) of the Securities Act of 1933 (1933 Act).

SEC Effective Date: _____    Date Security(ies) Issued: _____

☐ (a)(2) Provide the offering circular that became effective less than 40 calendar days prior to filing this Form 211, as provided for under Regulation A under the 1933 Act.

SEC Effective Date: _____    Date Security(ies) Issued: _____

☑ (a)(3) REPORTING COMPANIES LISTS:

The Issuer's most recent annual report filed pursuant to Section 13 or 15(d) of the 1934 Act or the annual statement referred to in Section 12(g)(2)(G)(i) of the 1934 Act. Quarterly and other current reports filed after the Issuer's most recent annual report or statement. List below each report or statement and applicable amendments filed by the Issuer through EDGAR that your firm has in its possession that meets the requirements of this section.

| Name of Report or Statement | Report or Statement Date | EDGAR Filed Date |
|---|---|---|
| S-1/A | 12-05-11 | 12-5-11 |
| 10-Q | 11-30-11 | 1-13-12 |
| | | |
| | | |

☐ (a)(4) FOREIGN PRIVATE ISSUERS

Provide the following information regarding the Issuer's reliance upon Rule 12g3-2(b) of the 1934 Act.

The foreign exchange(s) on which the subject class of securities is listed that, either singly or together with the trading of the same class of the Issuer's securities in another foreign jurisdiction, constitutes the primary trading market for those securities.

_____

The location of the Internet Web site or electronic information delivery system that the member firm would provide upon request to any person to direct them to the information that the Issuer published electronically pursuant to Rule 12g3-2(b).

_____

3

SEC-PC-P-0000092

☐   (a)(5) NON-REPORTING AND ALL OTHER COMPANIES

The applicant must make the Issuer information filed in conjunction with section (a)(5) of this form available upon request to any person expressing an interest in a proposed transaction with the subject security filed. Provide the Issuer's most recent balance sheet, profit and loss and retained earnings statements, equivalent financial information for the two prior fiscal years for the Issuer or any predecessor company, and the documents that support the information provided in this form.

a.   Describe the Issuer's business.

b.   Describe the products or services offered by the Issuer.

c.   Describe the Issuer's facilities.

d.   List the name(s) of the current Chief Executive Officer(s) and members of the Board of Directors
of the Issuer.

e.   Is the firm that is submitting this form, or any person associated with it, affiliated directly or indirectly with the Issuer?

☐ Yes   ☐ No   If yes, what is the affiliation?

f.   Is the quotation being published or submitted on behalf of any other broker-dealer?

☐ Yes   ☐ No   If yes, what is the name of the broker or dealer?

g.   Is the quotation being published or submitted directly or indirectly on behalf of the Issuer or any director, officer or any person who is directly or indirectly the beneficial owner of more than 10%
of the outstanding units or shares of any equity security of the Issuer?

☐ Yes   ☐ No   If yes, what is the name of the person, and what is the basis for any exemption under the federal securities laws for any sales of such securities on behalf of this person?

4

SEC-PC-P-0000093

## Part 3 – Supplemental Information

Please review paragraphs (b)(1)-(3) of Rule 15c2-11 and provide the information requested below.

(b)(1)   Describe the circumstances surrounding the submission of this application. Include the identity of any person(s) for whom the quotation is being submitted and any information provided to your firm by such person(s).

In August, 2011 Andrew Farmer opened a brokerage account @ our firm. In December 2011 he introduced us to Chimera via email regarding Sponsorship of their 15c2-11. We have only been in contact w/ Andrew in only regarding Chimera and have no other relationship

(b)(2)   Has the Issuer or its predecessor (if any) been subject to a trading suspension order issued by the SEC during the past 12 months? If a trading suspension order has been issued, provide two copies of the order or of the SEC's public release announcing the trading suspension order.

Check the appropriate box:  ☐ Trading suspension order or release enclosed.  ☑ Not applicable.

(b)(3)   Provide any material information, including adverse information regarding the Issuer, that your firm is aware of or has in its possession. (Do not list information already provided in Part 2.) If your firm does not possess such information, state "None" below.

Identify any applicable information by name and date.

None

5

SEC-PC-P-0000094