```
GFX Message Print - Message Inquiry Display Dialog Box

User: jcarden      Bank: Square 1 Bank      Date: 08/02/13 14:06:25

Message Status: PNRM
Seq Num: 20122490084700      Related Seq Num:
Pay Method: FED Input      Message ID: FTR811
Date Recvd: 09/05/2012 13:00:56      Value Date: 09/05/2012

Sender:  021000021,      Receiver:  053112615
Amount:  $30,000.00
Debit info --
     ABA:      021000021
     Name:     JPMORGAN CHASE BANK, NA
     Addr1:
     Addr2:
     Addr3:
     Addr4:

Credit info --
     Account: 106685
     Name:    Crisp Media, Inc.
     Addr1:   545 EIGHTH AVE
     Addr2:   STE 2000
     Addr3:   NEW YORK NY 10018
     Addr4:

Advice:           Dept:    DEPT1     Trancode:
Category:         Linesheet:        Create Template:

Message Text:
          XFT811
   Msg Disp    {1100}30P N
   Acc Time    {1110}09051600FT03
   OMAD        {1120}20120905L1LFBP4C00015709051600FT03
   Msg Type    {1510}1000
   IMAD        {1520}20120905B1QGC07C004196
   Amount      {2000}000003000000
   Sender DI   {3100}021000021JPMORGAN CHASE*
   Sndr Ref    {3320}4475900249ES*
   Rcvr DI     {3400}053112615SQUARE 1 BANK*
   Bus Func    {3600}CTR
   BNF         {4200}D106685*
               CRISP MEDIA INC.*
               545 EIGHTH AVE SUITE 2000*
               NEW YORK NY 10018 US*
   RFB         {4320}BPL OF 12/09/05*
   ORG         {5000}D897988374*
               CHARTERED INVESTMENTS INC*
               5005 HIDALGO ST UNIT 619*
               HOUSTON, TX 770566425*
   OBI         {6000}CHIMERA ENERGY CAMPAIGN*
```

CONFIDENTIAL

CRISP000007

CONFIDENTIAL

# crisp

**CRISP MEDIA INSERTION ORDER**
Campaign Name    Omega Cyber Systems August '12 Awareness Campaign

*Client/Agency CONTACT INFO*

| | | |
|---|---|---|
| Corporate Address | 545 8th Avenue, Fl 20<br>New York, NY 10018 | **Agency** OX<br>**Client Contact Name** John Brotherton |
| Accounts Executive<br>Phone Number<br>Email Address<br>Fax Number | Tyler Webster<br>646-826-0725<br>tyler.webster@crispmedia.com<br>212.202.7602 | **Contact Email** John.Brotherton@gmail.com<br>**Contact Phone** (337) 515-1336<br>**Contact Address** |
| | | **Billing Contact Name**<br>**Billing Contact Email**<br>**Billing Contact Phone**<br>**Invoice Address** |
| Traffic Contact | Michael Hynd<br>michael.hynd@crispmedia.com<br>646-214-9113 | *CAMPAIGN DETAILS* |
| Billing Contact | RosaReda Clemente<br>rosaReda.clemente@crispmedia.com<br>212-557-1850 | |

| CAMPAIGN DETAILS | |
|---|---|
| Campaign Start Date | 7/30/2012 |
| Campaign End Date | 8/31/2012 |
| Total Campaign Impressions | 6,250,000 |
| Contract Net | $ 100,000.00 |
| Payment Terms 30 days | |

| Placement Name/Section | Ad Format | Pixel Sizes | Start Date | End Date | Platform | Mobile Web/ App | CPM | Impression 'level | Cost |
|---|---|---|---|---|---|---|---|---|---|
| Adnetion Expandable / Custom Business & Finance Channel | Adhesion -> Tap to site | 320 x 50, 320 x 416 | 7/30/2012 | 8/31/2012 | iOS, Android | Mobile Web | $16.00 | 6,250,000 | $ 100,000.00 |
| CPM Total | | | | | | | | 6,250,000 | $ 100,000.00 |
| Campaign Set-Up Fee | | | | | | | | | |
| Production/QA/trafficing | | | | | | | | | Waived |
| Campaign Total | | | | | | | | | $ 100,000.00 |

**Notes and/or Special Instructions:**
Impressions are estimates only - Crisp serving fees based on actual impressions delivered, including any additional impressions delivered above the amount outlined in this insertion order.

| | | |
|---|---|---|
| Crisp Media, Inc. | | |
| Name | Greg Jones | Client Signature |
| Date | | John Brotherton for Omega Cyber Systems, Inc. |
| | | Name |
| 7 - 18 - 12 | JULY 18, 2012 | Date |

CRISP000008



CONFIDENTIAL

CRISP000028

# Appendix

# Exhibit AAA

| | |
|---|---|
| **From:** | Kimberly Paul <kpaul@marchex.com> |
| **Sent:** | Thursday, July 26, 2012 8:03 PM |
| **To:** | 'John Brotherton' <john.david.brotherton@gmail.com> |
| **Cc:** | Joseph Zara <jzara@marchex.com>; Cody Kunning <ckunning@marchex.com> |
| **Subject:** | RE: CHMR - IO Attached |

Sounds good.

Thanks!
Kim

**From:** John Brotherton [mailto:john.david.brotherton@gmail.com]
**Sent:** Thursday, July 26, 2012 3:57 PM
**To:** Kimberly Paul
**Cc:** Joseph Zara; Cody Kunning
**Subject:** Re: CHMR - IO Attached

Kimberly,

Let's start with $5K - but if it takes off, I will increase it.

Thanks,
John B.

On Thu, Jul 26, 2012 at 2:01 PM, Kimberly Paul <kpaul@marchex.com> wrote:
John –

Thanks for sending everything over so quickly.  Cody will review the creatives and provide feedback but we will be prepped to launch on Monday.  What is the daily budget for CHMR?

Kim

**From:** John Brotherton [mailto:john.david.brotherton@gmail.com]
**Sent:** Thursday, July 26, 2012 1:43 PM
**To:** Joseph Zara
**Cc:** Cody Kunning; Kimberly Paul
**Subject:** Re: CHMR - IO Attached

Joe,

I have attached the executed IO as a PDF file named "**CHMR_IO_Signed.pdf**".

The mobile site for **www.chimeraenergyusa.com** will be up early in the morning tomorrow.

Below are the 3 text ad creatives that I would like to start with:

**CHMR - New Safe Fracking**
CHMR acquires new environmentally friendly shale fracking method. New investment.

**CHMR- Replacing Fracking**
Newly licensed method uses zero water and is environmentally neutral. New stock.

SEC-MARCHEX-E-0003173

**CHMR – Shale Extraction**
Company has licensed new method to safely extract shale oil. Hot investment.

Please let me know if you have any questions.

Thank you,
John Brotherton
**OMEGA CYBER SYSTEMS INC**

On Thu, Jul 26, 2012 at 9:48 AM, Joseph Zara <jzara@marchex.com> wrote:
Hi John,

Hope your morning is off to a good start – attached is the IO for our CHMR Google Mobile campaign. Please sign and send back my way and I will get it approved.

Looking forward to receiving the creative for this campaign and getting it set up for you.

Talk with you soon John,

**Joseph Zara** | Senior Account Executive
T 212.209.3326  F 212.889.8595  E jzara@marchex.com

   

---

**From:** John Brotherton [mailto:john.david.brotherton@gmail.com]
**Sent:** Wednesday, July 25, 2012 5:03 PM
**To:** Kimberly Paul
**Cc:** Cody Kunning; Joseph Zara
**Subject:** Re: AEDC pause

Kimberly,

Yes - there is no change to Nova (it keeps going). I am adding a campaign named "CHMR" Monday and am building the mobile site now. I will send you the proposed creatives tomorrow as the site should be ready very soon.

Thank you,
John Brotherton

On Wed, Jul 25, 2012 at 3:59 PM, Kimberly Paul <kpaul@marchex.com> wrote:
John –

AEDC is paused. Is Nova still running through the end of the month at $2K?

Thanks,
Kim

---

**From:** John Brotherton [mailto:john.david.brotherton@gmail.com]
**Sent:** Wednesday, July 25, 2012 4:55 PM
**To:** Kimberly Paul; Cody Kunning
**Cc:** Joseph Zara
**Subject:** AEDC pause

Kimberly / Cody (& Joe),

SEC-MARCHEX-E-0003174

The AEDC Company contacted me and they are going to take a temporary advertising pause. Please stop ads for them until they take me off of hold. I will let you know as soon as the pause is over.

Please confirm that you have received this info.

Thanks,
John Brotherton
**OMEGA CYBER SYSTEMS INC**

SEC-MARCHEX-E-0003175

# Appendix

# Exhibit BBB



## MARCHEX

### Digital Call Marketplace Insertion Order

| Advertiser/Agency Information | |
|---|---|
| Advertiser/Agency Name: | **Omega Cyber Systems** |
| Address: | **6201 Winrock Blvd., Houston, TX 77057** |
| Contact Name/Phone Number: | **John Brotherton / 337.515.8335** |
| Contact Email: | **John.david.brotherton@gmail.com** |
| Campaign Name: | **CHMR** |

| Campaign Summary | | |
|---|---|---|
| Advertising Description: | Mobile Search click bid management campaign. | |
| Ad Type: | *Google Mobile* | |
| Start/End Dates: | Start Date: 7/31/12 / End Date: December 31, 2012 | |
| Volume: | **Estimated Click Volume** | **Media Spend Budget** |
| | | **Open** |
| Pricing: | **Variable price per click subject to a maximum (not to exceed) of $4.15 cost-per-click (media spend + management fee) on average per month.** | |
| Additional Terms: | **The pricing will be based on all Google Mobile media costs incurred for the applicable month and a management fee consisting of 10% of such media costs.** | |

| Payment Terms | |
|---|---|
| Method/Plan: | ☒ Credit Card   ☐ Invoice   ☐ Pre-pay |

| Agreement |
|---|

This Advertiser/Agency Insertion Order ("IO"), together with the Call Advertising Terms and Conditions (located at http://www.marchex.com/legal/terms-and-conditions-pfc or such successor URL as Company may designate) (the "Terms"), constitute a separate and legally binding and enforceable Advertising Services agreement ("Agreement") between Marchex Sales, Inc., a wholly-owned subsidiary of Marchex, Inc. with its principal place of business at 6700 Via Austi Parkway, Suite D, Las Vegas NV 89119 ("Company") and the Advertiser or Agency set forth above. This Agreement supplements and does not replace any other existing advertiser campaign between the parties. By executing this Agreement, Advertiser or Agency affirms that it fully understands and accepts all applicable terms, policies and conditions of this Agreement and enters into this Agreement with Company.

Agreed and accepted this, 31 day of July 2012:

Authorized Representative for Marchex Sales, Inc.:

By: (*Signature*): _____

Name: _____Brendhan Hight_____

Title: _____Director_____

Authorized Representative for Advertiser/Agency:

By: (*Signature*): _Alpha For OCSI_

Name: _JOHN BROTHERTON_

Title: _AD MANAGER_

Marchex Form 103 Digital Call Marketplace IO (08-25-2011)

# Appendix

# Exhibit CCC

| From: | Danny Nguyen <dnguyen@marchex.com> |
|---|---|
| Sent: | Monday, November 12, 2012 11:20 PM |
| To: | Heather Forest <hforest@marchex.com>; Kimberly Paul <kpaul@marchex.com>; Stacey Doyne <sdoyne@marchex.com>; Alissa Bisman <abisman@marchex.com> |
| Cc: | Kimberly Francisco-Clark <kclark@marchex.com>; Brian Windus <bwindus@marchex.com> |
| Subject: | Credit Card Charge PFC Customers Declined and Approved |

Hi All

These credit card have been charge successful except 562 Media, Inc declined for PFC charges – Also, please submit credit card authorization for Armored Locksmith and Mexico Travel

Thank you-
-dn

| Parent Name | GPID | Customer | DocNum | Date | Terms | Current | Credit card | Notes |
|---|---|---|---|---|---|---|---|---|
| 562 Media, Inc | PC70076 | 562 Media, Inc. (www.MiniUStorage.com) | 70076103112 | 10/31/2012 | Net 10 | 5,258.00 | x2009 | Declined |
| Airtime Media | PC70286 | Airtime Media - Credit Card Debt | 70286103112 | 10/31/2012 | Net 10 | 450.00 | x2007 | Approved |
| Aquila Capital | PC70334 | Aquilia Capital - Treatment Doctors | 70334103112 | 10/31/2012 | Net 10 | 3,151.00 | Charge on the 20th of each month |
| Armored Locksmith | PC70433 | Armored Locksmith | 70433103112 | 10/31/2012 | Net 10 | 150.00 | Need CC |
| Big Box Storage | PC70229 | Big Box Storage | 70229103112 | 10/31/2012 | Net 10 | 32.00 | x1865 | Approved |
| BlueSEO | PC70398 | BlueSEO - Personal Injury Attorney | 70398103112 | 10/31/2012 | Net 10 | 875.00 | x0744 | Approved |
| DAS Group | PC70230 | DAS Group - Truly Nolen | 70230103112 | 10/31/2012 | Net 10 | 880.00 | x1247 | Approved |
| First Dental Choice | PC70397 | First Dental Health - New Dental Choice | 70397103112 | 10/31/2012 | Net 10 | 18,598.00 | x2057 | Approved |
| Mexico Travel | PC70426 | Mexico Travel Company | 70426093012 | 09/30/2012 | Net 10 | 390.00 | Need CC |
| | | | 70426103112 | 10/31/2012 | Net 10 | 285.00 | Need CC |
| Omega Cyber Systems | PC70404 | Omega Cyber Systems - CHMR | 70404083112 | 08/31/2012 | Net 10 | 7,550.69 | x3005 | Approved |
| | | | 70404093012 | 09/30/2012 | Net 10 | 3,974.38 | x3005 | Approved |
| | | | 70404103112 | 10/31/2012 | Net 10 | 6,911.78 | x3005 | Approved |
| | PC70396 | Omega Cyber Systems - Nova | 70396083112 | 08/31/2012 | Net 10 | 3,409.29 | x3005 | Approved |
| | | | 70396093012 | 09/30/2012 | Net 10 | 2,953.18 | x3005 | Approved |
| PEAS | PC70425 | Product & Event Awareness Specialists (PEAS) - MSSD | 70425103112 | 10/31/2012 | Net 10 | 7,923.28 | x1003 | Approved |
| Walker Advertising | PC70347 | Walker Advertising - 1-800-THE-LAW2 | 70347103112 | 10/31/2012 | Net 10 | 705.62 | x1009 | Approved |
| Grand Total | | | | | | 63,497.22 | | |

SEC-MARCHEX-E-0001933

# Appendix

# Exhibit DDD

**DUPLICATE COPY**

ANDREW FARMER

Account Ending 3-03005

┌─────────────────────────────────────────────────────────────────────────────┐
│ **Detail Continued**                                                          │
└─────────────────────────────────────────────────────────────────────────────┘

| | | Foreign Spend | Amount |
|---|---|---|---|
| 10/09/12 | CHEVRON KING FUELS IHOUSTON          TX<br>7137832303<br>Description              Price<br>FUEL/MISCELLANEOUS     $71.26<br>002 UNL PLS | | $71.26 |

**ANNA TIKHONOVA**
Card Ending 3-01033

| | | Foreign Spend | Amount |
|---|---|---|---|
| 09/10/12 | EUROPEAN WAX CENTER-HOUSTON          TX<br>HEALTH & BEAUTY SPA | | $70.00 |
| 09/15/12 | AMAZON PRIME      866-557-2820     NV<br>SHIPPINGCLUB | | $85.52 |
| 09/16/12 | AMAZON MKTPLACE PMTSAMZN.COM/BILL     WA<br>MERCHANDISE | | $18.95 |
| 09/16/12 | AMAZON.COM      AMZN.COM/BILL     WA<br>MERCHANDISE | | $43.02 |
| 09/17/12 | AMAZON.COM      AMZN.COM/BILL     WA<br>MERCHANDISE | | $12.74 |
| 09/17/12 | AMAZON MKTPLACE PMTSAMZN.COM/BILL     WA<br>MERCHANDISE | | $23.49 |
| 09/17/12 | AMAZON MKTPLACE PMTSAMZN.COM/BILL     WA<br>MERCHANDISE | | $18.95 |
| 09/17/12 | AMAZON MKTPLACE PMTSAMZN.COM/BILL     WA<br>MERCHANDISE | | $13.50 |
| 09/17/12 | AMAZON MKTPLACE PMTSAMZN.COM/BILL     WA<br>MERCHANDISE | | $8.78 |
| 09/18/12 | CHIPOTLE 0095 0074  HOUSTON          TX<br>713-666-9769<br>Description<br>FAST FOOD REST | | $10.81 |
| 09/18/12 | ORIENTAL TRADING CO 800-2280475<br>65299601701 770826 | | $50.24 |
| 09/18/12 | STARBUCKS CORP063008HOUSTON          TX<br>800-7827282 | | $1.95 |
| 09/18/12 | CVS 5685 05685      HOUSTON          TX<br>DRUG STORE/PHARMACY | | $7.74 |
| 09/18/12 | CHASING FIREFLIES 02SEATTLE          WA<br>888-860-9474<br>Description<br>CHILD'S/INFANT | | $115.00 |
| 09/19/12 | SAKS DIRECT HRDC 068ABERDEEN          MD<br>8003479177<br>Description              Price<br>FF SUNGLASSES          $199.00 | | $215.42 |
| 09/19/12 | STARBUCKS CORP063008HOUSTON          TX<br>800-7827282 | | $1.95 |
| 09/20/12 | CENTRAL MARKET #491 HOUSTON          TX<br>9999999999 | | $300.40 |
| 09/20/12 | OVERSTOCK.COM OverstSALT LAKE CITY    UT<br>overstock.com | | $183.69 |

Continued on next page

SEC-AMEX-P-0000588

# Appendix

# Exhibit EEE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| *Revenue Tier:* Tier1-Premium | | | | | | | |
| **327202** | 07/30/2012 – 08/31/2012 | Barrons - ROS 300x250 | CPM | 36.50 | 350,000 | | 12,775.00 |
| *Third-Party:* No Third Party | | | | | | | |
| *Revenue Tier:* Tier1-Premium | | | | | | | |
| **327198** | 08/02/2012 – 08/02/2012 | WSJ - Front Page 300x250 Buy Out | Fixed | 65,000.00 | 4,500,000 | | 65,000.00 |
| *Third-Party:* No Third Party | | | | | | | |
| *Revenue Tier:* Tier1-Premium | | | | | | | |
| **327199** | 08/09/2012 – 08/09/2012 | MW - Front Page 300x250 Buy Out | Fixed | 40,000.00 | 6,500,000 | | 40,000.00 |
| *Third-Party:* No Third Party | | | | | | | |
| *Revenue Tier:* Tier1-Premium | | | | | | | |
| **327200** | 08/06/2012 – 08/10/2012 | MW - Industries - Energy 300x250 Buy Out | Fixed | 7,948.00 | 93,500 | | 7,948.00 |
| *Third Party:* No Third Party | | | | | | | |
| *Revenue Tier:* Tier1-Premium | | | | | | | |
| **327201** | 07/30/2012 – 08/31/2012 | WSJ Digital Global Network 300x250 | CPM | 0.00 | 630,000 | | 0.00 |
| *Third-Party:* No Third Party | | | | | | | |
| *Revenue Tier:* Tier1-Premium | | | | | | | |

| | |
|---|---|
| **Total Impressions** | 14,664,963 |
| **Order Net Value** | **200,000.00** |

**Terms and Conditions:**
*OMEGA CYBER SYSTEMS INC.*
Dow Jones & Company, Inc. ("Dow Jones") and                ("Advertiser"; if the party signing below is an agency, then it is deemed the "Advertiser" hereunder) hereby agree that these Standard Advertising Terms and Conditions ("Terms") apply to advertising buys on The Wall Street Journal Digital ("WSJD") media properties, including without limitation, WSJD websites and emails (the "WSJD Properties").

1. Insertion Order; WSJD Properties; Optimization. From time to time, the parties may negotiate insertion orders ("IOs") under which Dow Jones agrees to deliver, and Advertiser agrees to pay for, the services set forth in the applicable IOs, which IOs are incorporated herein by this reference (collectively, "Services"), according to rates specified on such IOs and subject to these Terms. To the extent that an IO covers multiple WSJD Properties, Dow Jones shall have the discretion to distribute impressions in whatever manner throughout such properties, unless otherwise expressly agreed in the IO. Subject to available inventory and appropriate rate adjustment, positions on an IO may be adjusted ("optimized"); provided that Advertiser's total financial obligation under an IO is not reduced ("Optimization"). Optimizations are subject to Dow Jones' prior approval, with applicable terms documented via email, and Advertiser's confirmation of acceptance via reply email, and such terms shall be binding on Advertiser and made part of the IO as though fully set forth therein.

2. Cancellation. Advertiser may cancel an IO by giving at least fifteen (15) days' prior written notice ("Notice Period"); provided that Advertiser shall be financially responsible for Services (e.g., impressions) delivered and scheduled to run up to and through the end of the Notice Period and any volume discounts shall be reversed and Advertiser will be invoiced based on actual volume run according to WSJD's rate card in effect when an IO was placed. Cancellation notice must be sent to the Dow Jones contact identified on the IO and will be deemed given upon Dow Jones' confirmation of receipt.

3. Ad Materials; Late Creative. Artwork, copy, other content, active URLs and other components of the advertisement (collectively, "Ad Materials") must comply with the criteria and specifications at http://advertising.wsj.com/online/ (or any successor URL) for the applicable WSJD Property (collectively, the "Policies"), as updated from time-to-time in Dow Jones' discretion. Ad Materials must be received at least five (5) business days prior to the scheduled start date or within the timeframe in the Policies for the applicable ad type if such timeframe is greater. If Ad Materials are not received within such timeframe, or if provided incorrectly or inconsistent with the Policies, then Advertiser is still responsible for the Services purchased pursuant to the Insertion Order. At its option, Dow Jones may run a house ad or Public Service Announcement (PSA) as a replacement until the creative is received.

4. Editorial Approval. All Ad Materials are subject to Dow Jones' approval. Dow Jones reserves the right, at any time and for any reason in its discretion, to reject, cancel or cease publication of any Ad Materials, space reservation, or position commitment, without any liability for the same except as provided below for makegoods.

APP. 000839

SEC-DOW JONES-E-0000002

5. Ad Servers; Direct Billing of Certain Charges. Dow Jones uses third party ad servers for its ad serving and reporting functions and to track delivery of impressions, which ad servers may vary depending on the WSJD Property and are subject to change in Dow Jones' discretion, and such applicable ad server(s) shall be the official counter(s) for determining impressions delivered, invoices and payment. Advertiser's and/or its agency's proprietary or third party ad server reporting is therefore not accepted, unless Dow Jones permits tracking of delivery through Advertiser's proprietary or subcontracted third party ad server whose identity is set forth in the applicable IO (the "Permitted Ad Server"). Certain types of advertising are not permitted to be tracked by other ad servers and therefore other ad servers will not be permitted in such circumstances. Advertiser may not substitute the Permitted Ad Server specified in the IO without Dow Jones' consent. In the event a Permitted Ad Server is used, Dow Jones and Advertiser agree to give reciprocal access to relevant and non-proprietary statistics from both ad servers, or if such is not available, provide weekly placement-level activity reports to each other. If Dow Jones' ad server measurements are higher than those produced by the Permitted Ad Server by more than 10% over the invoice period, Advertiser will facilitate a reconciliation effort between WSJD's ad server and such Permitted Ad Server. If the discrepancy cannot be resolved and Advertiser has made a good faith effort to facilitate the reconciliation effort, any discrepancy over 10% will be considered a underdelivery and subject to the Make Good.

6. Makegoods. If actual inventory delivered with respect to a particular advertisement placement falls below guaranteed levels on an IO according to Dow Jones' applicable ad server counts, and/or if there is an omission of any advertisement (placement or creative unit), Advertiser and Dow Jones will make an effort to agree upon the conditions of a makegood at the time of shortfall. If no makegood can be agreed upon, Advertiser may execute a credit equal to the value of the under-delivered portion of an IO for which it was invoiced. In the event Advertiser made a cash pre-payment to Dow Jones specifically for an IO for which under-delivery applies, then if Advertiser is current on all amounts owed to Dow Jones under any other advertising agreement, Advertiser may elect to receive a refund for the under-delivery equal to the difference between the applicable pre-payment and the value of the delivered portion of an IO. Makegoods are not available under an IO (a) when under-delivery or omission of an advertisement is attributable to Advertiser's (i) delayed, incorrect or incompatible Ad Materials or (ii) failure to follow applicable Policies, (b) for failure to deliver impressions according to any specific daily or weekly distribution, (c) for impressions marked on an IO as "estimated" or "not guaranteed", (d) for sponsorship, exclusive or similar placements, (e) for preemptive placements and/or impressions; or (f) when delivery of 90% or more of the impressions under the IO has occurred. This section sets forth the sole and exclusive remedy for any failure of Dow Jones to fulfill its obligations under an IO.

7. Payment Terms; Direct Payment of Certain Charges; Taxes. If Dow Jones approves credit, Advertiser will be invoiced at the end of each month for Services (e.g., impressions) delivered during such month under an IO and payment shall be made to Dow Jones within fifteen (15) days from the date of invoice ("Due Date"). Certain charges from ad servers must be paid directly by the Advertiser (e.g., Rich Media charges). If Advertiser fails to make timely payment, Advertiser will be responsible for all reasonable expenses (including reasonable attorneys' fees and court costs) incurred by Dow Jones in collecting such amounts along with interest at the then current prime rate on such unpaid payment. Dow Jones reserves the right to suspend credit and/or performance of its obligations if Advertiser fails to make timely payment. Fees on an IO are exclusive of all taxes. Advertiser shall be responsible for payment of all taxes, duties and similar charges assessed in connection with the Services or on any payments made by Advertiser hereunder, excluding taxes on Dow Jones' net income. If agency is the Advertiser placing an IO for the benefit of its client, then agency is responsible for all payments hereunder regardless of whether it has received payment from its client, however Dow Jones reserves the right to hold agency and its client jointly and severally liable for all payments.

8. Data Collection Policy. To the extent that Advertiser needs to drop cookies on subscribers' and/or users' computers or use pixels, web beacons or other data collecting technology (the "Data Collecting Technology") for the purpose of displaying or providing advertising on one or more WSJD Properties and tracking impressions and related data with respect thereto (collectively, the "Approved Purpose"), it shall notify Dow Jones of such need in advance and provide all information requested by Dow Jones regarding such Data Collecting Technology as well as comply with any of Dow Jones policies regarding such Data Collecting Technology. If Dow Jones authorizes Advertiser to use Data Collecting Technology, Advertiser agrees to use such Data Collecting Technology and all data collected there from solely in the manner disclosed to Dow Jones and only for the Approved Purpose. All data collected by Advertiser through such Data Collecting Technology will be confidential information owned by Dow Jones and will not be disclosed by Advertiser to any third party without the consent of Dow Jones in advance. In no event shall such Data Collecting Technology or the data collected there from be used by Advertiser for the purpose of tracking or targeting subscribers or users when they leave the WSJD Properties or be combined with information collected from other sources, except as otherwise expressly authorized by Dow Jones. Advertiser shall ensure it complies with the applicable Dow Jones privacy policy or policies with respect to such Data Collecting Technology and all applicable laws and regulations and that all such data will be deleted from its servers upon termination or expiration of the relationship between Dow Jones and Advertiser.

9. Ad Verification Services. Advertiser must notify Dow Jones in advance of its intention to use ad verification services (e.g., DoubleVerify, AdSafe) (the "Ad Verification Services") in connection with the placement of advertising on The Wall Street Journal Digital Network ("WSJDN") and the types of tracking/crawling technologies being used in connection with such Ad Verification Services. Dow Jones may approve or reject in its sole discretion the use of Ad Verification Services on WSJDN generally or the use of a specific vendor. If Dow Jones approves the use of an Ad Verification Service, Advertiser will provide reports from the Ad Verification Service to Dow Jones twice per week to enable the parties to discuss any issues raised by such reports on an immediate basis. Such reports should identify specific delivery problems, associated sites and number of impressions in question. Dow Jones is under no obligation to adjust its billing or provide make-goods or credits as a result of reports. However, Dow Jones will consider in good faith any issues raised by such reports, including optimization issues and other errors.

10. Warranties; Indemnity. Advertiser hereby represents and warrants to Dow Jones that Advertiser has the right (and

APP. 000840

SEC-DOW JONES-E-0000003

therefore Dow Jones will have the right) to publish the Ad Materials in the form delivered and manner published without infringing or violating the rights of any third party or violation of any law, rule or regulation. Advertiser agrees, at its own expense, to indemnify, defend and hold harmless Dow Jones, its parents, subsidiaries, affiliates and their respective employees, officers, directors, representatives, and agents, against any and all claims, demands, suits, actions, proceedings, damages, liabilities, costs, expenses and losses of any kind (including reasonable attorneys' fees and costs) arising out of or related to (a) the publication of any advertisement hereunder, (b) the Ad Materials or any matter or thing contained in any advertisement, and/or (c) any material of Advertiser to which users can link through any advertisement, including, without limitation, in all such cases claims of trademark or copyright infringement, libel, defamation, breach of confidentiality, privacy or data protection violation, false, deceptive or misleading advertising or sales practices. If agency is the Advertiser placing one or more IOs for the benefit of its client, then client and agency shall each be considered the Advertiser for purposes of this section, and agency, by signing below, represents and warrants that it has the authority, as agent, to bind its client to these Terms and any IOs. DOW JONES MAKES NO WARRANTY OF ANY KIND WITH RESPECT TO THE WSJD PROPERTIES OR SERVICES TO BE DELIVERED HEREUNDER AND HEREBY DISCLAIMS ANY AND ALL WARRANTIES, EXRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ALL WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. ALL SERVICES ARE PROVIDED ON AN AS IS BASIS WITHOUT GUARANTEE.

11. Limitation of Liability. DOW JONES SHALL NOT BE LIABLE TO ADVERTISER, ITS AGENCY OR ANY THIRD PARTY UNDER OR IN RELATION TO THESE TERMS OR ANY IO FOR ANY CONSEQUENTIAL, PUNITIVE, INCIDENTAL, SPECIAL OR INDIRECT DAMAGES OF ANY KIND OR NATURE, UNDER ANY THEORY OF LAW OR EQUITY, AND WHETHER OR NOT DOW JONES HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL DOW JONES'S LIABILITY UNDER OR IN RELATION TO THESE TERMS OR ANY IO EXCEED THE FEES ACTUALLY PAID TO DOW JONES FOR THE ADVERTISEMENT GIVING RISE TO SUCH LIABILITY.

12. Miscellaneous. Dow Jones shall not be liable to Advertiser or its agency for delay or default in the performance of or completion of Services under an IO or these Terms, if caused by conditions beyond its control, including but not limited to, any act of God, governmental authority, or war, terrorist act, riot, labor stoppage or slowdown, fire, flood, severe weather, earthquake, accident, telecommunications or network failures, failure of the Internet, or electrical outages. These Terms, together with each IO, shall be governed and construed in accordance with the laws of the state of New York, without regard to its conflicts of law principles. The parties agree to submit to the exclusive jurisdiction of the state and federal courts located in New York, New York with respect to any legal proceeding arising out of these Terms or an IO, waiving all defenses with respect to jurisdiction, forum and venue. These Terms and each IO are the complete and exclusive agreement between the parties with respect to the subject matter and supersede any prior or contemporaneous agreements, negotiations and communications, whether written or oral, between the parties regarding such subject matter. The Terms and each IO (except in the case of Optimizations) may only be modified, or any rights under it waived, by a written document executed by both parties. Dow Jones will not be bound by any terms or conditions, printed or otherwise, appearing on any purchase order, copy instructions, contract or other documents submitted by Advertiser, or expressed orally. To the extent of any conflict, these Terms shall prevail over an IO and Policies. These Terms and each IO are specifically between and for the benefit of Dow Jones and Advertiser, and no other person or entity whatsoever Advertiser shall have any rights, interests or claims hereunder or be entitled to any benefits under or on account of these Terms or an IO as a third party beneficiary or otherwise. All obligations and liabilities which by their nature are intended to survive termination or expiration of these Terms and each IO for any reason. Each IO and Terms may be executed in multiple counterparts and by facsimile, each of which, when so executed, shall be deemed to be an original copy hereof, and all such counterparts together shall constitute one single agreement.

Acknowledged and Agreed to by:

Dow Jones & Company, Inc.

By: _____

Signature

Title: _____

Date: _____ -

Advertiser: Advertiser or Agency

*OMEGA CYBER SYSTEMS INC.*

Name of Advertiser or Agency

By: *JOHN BROTHERTON*

Signature *[signature]*

Title: *AD DIRECTOR*

SEC-DOW JONES-E-0000004

Order Details

Date: _JULY  24, 2012_

**Billing Profile:**
Bill on Actual – DFP

Signature: _____ _FOR OMEGA CYBER SYSTEMS INC._ ____ Date: _7-24-2012_

Signature: _____ Date: _7/26/12_

Sales Rep: Schuyler Williams

**APP. 000842**

SEC-DOW JONES-E-0000005

THE WALL STREET JOURNAL
Digital Network



# Chimera Energy 2012 Screenshots

WSJD Screenshots 7.30.12

THE WALL STREET JOURNAL   MarketWatch   BARRON'S   D | All Things Digital.
WSJ.com

SEC-DOW JONES-E-0000006





SEC-DOW JONES-E-0000007



SEC-DOW JONES-E-0000008



SEC-DOW JONES-E-0000009



SEC-DOW JONES-E-0000010

# Appendix

# Exhibit FFF

# This Document is Available in Native Format

| | |
|---:|:---|
| Filename: | CHMR Time and Sales Data.xlsx |
| Folder: | R:\1216_11436\Data CD\Data CD\2d\ |
| Author: | Tim DiBlasi |
| Modified Date: | Thursday, December 6, 2012 |
| Accessed Date: | Thursday, December 6, 2012 |
| Created Date: | Wednesday, November 28, 2012 |

| CHMR Time and Sales Data | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Seq | User | Acct # | Type | Date | Time | Action | Sol/Unsol | Quantity | Security Type | Security | Price | Contra | Gross | Comm |
| 10 | SC10 | 77664620 | 1 | 5/31/2012 | 16:07:07 | Sold | UNSOLICITED | 2,500 | CS | CHMR | $0.98750 | VNDM | $2,468.75 | |
| 35 | SC09 | 20864209 | 1 | 6/29/2012 | 16:00:34 | Sold | UNSOLICITED | 7,000 | CS | CHMR | $0.98500 | VFIN | $6,895.00 | |
| 35 | SC09 | 20864209 | 1 | 7/6/2012 | 16:00:27 | Sold | UNSOLICITED | 1,750 | CS | CHMR | $1.18200 | VFIN | $2,068.50 | |
| 1 | SC10 | 78144308 | 1 | 7/30/2012 | 16:01:37 | Sold | UNSOLICITED | 9,050 | CS | CHMR | $1.04197 | VNDM | $9,429.83 | $424.34 |
| 1 | SC09 | 78144308 | 1 | 7/31/2012 | 16:01:27 | Sold | UNSOLICITED | 139,366 | CS | CHMR | $1.28636 | VNDM | $179,274.85 | $8,067.37 |
| 5 | SC09 | 78144308 | 1 | 8/1/2012 | 16:01:59 | Sold | UNSOLICITED | 111,152 | CS | CHMR | $1.41161 | VNDM | $156,903.27 | $7,060.65 |
| 30 | SC09 | 78144308 | 1 | 8/2/2012 | 16:01:38 | Sold | UNSOLICITED | 183,672 | CS | CHMR | $1.38884 | VNDM | $255,091.02 | $11,479.10 |
| 2 | SC09 | 78144308 | 1 | 8/3/2012 | 16:03:48 | Sold | UNSOLICITED | 79,878 | CS | CHMR | $1.43340 | VNDM | $114,497.13 | $5,152.37 |
| 9 | SC09 | 78144308 | 1 | 8/6/2012 | 15:59:18 | Sold | UNSOLICITED | 96,062 | CS | CHMR | $1.39770 | VFIN | $134,265.86 | $6,041.96 |
| 9 | SC10 | 78144308 | 1 | 8/7/2012 | 16:01:20 | Sold | UNSOLICITED | 98,913 | CS | CHMR | $1.41407 | VNDM | $139,869.91 | $6,294.15 |
| 3 | SC10 | 78144308 | 1 | 8/8/2012 | 16:00:49 | Sold | UNSOLICITED | 66,140 | CS | CHMR | $1.44086 | VNDM | $95,298.48 | $4,288.43 |
| 63 | SC10 | 78144308 | 1 | 8/9/2012 | 16:01:06 | Sold | UNSOLICITED | 210,925 | CS | CHMR | $1.84300 | VFIN | $388,734.78 | $17,493.06 |
| 7 | SC10 | 78144308 | 1 | 8/9/2012 | 16:03:13 | Sold | UNSOLICITED | 166,371 | CS | CHMR | $1.72694 | VNDM | $287,312.73 | $12,929.07 |
| 65 | SC10 | 78144308 | 1 | 8/10/2012 | 16:00:30 | Sold | UNSOLICITED | 342,358 | CS | CHMR | $1.81511 | VNDM | $621,417.43 | $27,963.78 |
| 10 | SC09 | 78144308 | 1 | 8/14/2012 | 16:00:58 | Sold | UNSOLICITED | 284,090 | CS | CHMR | $1.13350 | VFIN | $322,016.02 | $14,490.72 |
| 14 | SC09 | 78144308 | 1 | 8/15/2012 | 15:56:47 | Sold | UNSOLICITED | 24,500 | CS | CHMR | $1.14000 | VFIN | $27,930.00 | $1,256.85 |
| 20 | SC10 | 78144308 | 1 | 8/17/2012 | 16:01:16 | Sold | UNSOLICITED | 200,000 | CS | CHMR | $0.43030 | VFIN | $86,060.00 | $3,872.70 |
| 33 | SC09 | 78144308 | 1 | 8/20/2012 | 16:02:15 | Sold | UNSOLICITED | 353,520 | CS | CHMR | $0.33490 | VFIN | $118,393.85 | $5,327.72 |
| 44 | SC10 | 78144308 | 1 | 8/21/2012 | 15:44:32 | Sold | UNSOLICITED | 35,100 | CS | CHMR | $0.55000 | VFIN | $19,305.00 | $868.73 |
| 11 | SC10 | 78144308 | 1 | 8/22/2012 | 16:09:13 | Sold | UNSOLICITED | 307,297 | CS | CHMR | $0.68690 | BKRT | $211,082.31 | $9,498.70 |
| 1 | SC09 | 78144308 | 1 | 8/23/2012 | 11:41:26 | Sold | UNSOLICITED | 91,606 | CS | CHMR | $0.63040 | BKRT | $57,748.42 | $2,598.68 |
| 20 | SC10 | 20864209 | 1 | 8/23/2012 | 16:01:26 | Sold | UNSOLICITED | 37,500 | CS | CHMR | $0.63040 | BKRT | $23,640.00 | $1,063.80 |
| 23 | SC09 | 20864209 | 1 | 8/24/2012 | 16:27:47 | Sold | UNSOLICITED | 617,500 | CS | CHMR | $0.68154 | VNDM | $420,850.95 | $18,938.29 |
| 9 | SC09 | 20864209 | 1 | 8/27/2012 | 16:06:44 | Sold | UNSOLICITED | 231,027 | CS | CHMR | $0.55270 | BKRT | $127,688.62 | $5,745.99 |
| 11 | SC10 | 20864209 | 1 | 8/28/2012 | 16:00:09 | Sold | UNSOLICITED | 143,841 | CS | CHMR | $0.45520 | VFIN | $65,476.42 | $2,946.44 |
| 33 | SC09 | 20864209 | 1 | 8/29/2012 | 15:53:19 | Sold | UNSOLICITED | 70,000 | CS | CHMR | $0.44660 | VFIN | $31,262.00 | $1,406.79 |
| 31 | SC10 | 20864209 | 1 | 8/31/2012 | 16:00:25 | Sold | UNSOLICITED | 6,000 | CS | CHMR | $0.56100 | VFIN | $3,366.00 | $151.47 |
| 8 | SC09 | 20864209 | 1 | 9/27/2012 | 16:06:52 | Sold | UNSOLICITED | 33,704 | CS | CHMR | $0.33548 | VNDM | $11,307.02 | $508.82 |

# Appendix

# Exhibit GGG

APP. 000851



## FED WIRE TRANSFER REQUEST FORM

Process Date:                                        **August 8, 2012**

Alpine Account Number:                          ▮▮▮▮-4308

Amount of Transfer:                                **$675,000**

**Recipient Bank Information**

Bank ABA Number:                                 121000248

Bank Name:                                          **Wells Fargo Bank NA**

Bank City and State:                              **Las Vegas, NV**

SWIFT Number (Foreign Wires Only):

Country (Foreign Wires Only):

**Beneficiary Information**

Customer's Name:                                  **TransAmerica Trading Inc.**

Customer's Bank Account Number:           ▮▮▮▮▮▮3283

Customer's Address (Optional):

**For Further Credit To**

Name:

Account Number:

---

I agree to hold all parties acting on this request, including the introducing broker and Alpine Securities, and their respective agents and employees (hereinafter, collectively, "the parties") harmless from any and all claims, demands, proceedings, suits and actions and all liabilities, losses, and expenses including without limitation those asserted by me, associated with actions taken by the parties due to instructions received from me in this request.

Customer Signature:   *Carolyn P. Austin*

Customer Signature:

---

Notary Signature:
Notary Seal
*(Required for all 3ʳᵈ-Party transactions)*

---

### Internal Use Only – Registered Principal Approval

Print Name                                              Title

Signature                                                Date

---



## FED WIRE TRANSFER REQUEST FORM

Process Date: **August 15, 2012**

Alpine Account Number:

Amount of Transfer: **$1,500,000**

**Recipient Bank Information**

Bank ABA Number: **121000248**

Bank Name: **Wells Fargo Bank NA**

Bank City and State: **Las Vegas, NV**

SWIFT Number (Foreign Wires Only):

Country (Foreign Wires Only):

**Beneficiary Information**

Customer's Name: **TransAmerica Trading Inc.**

Customer's Bank Account Number: **▓▓▓▓▓3283**

Customer's Address (Optional):

**For Further Credit To**

Name:

Account Number:

---

I agree to hold all parties acting on this request, including the introducing broker and Alpine Securities, and their respective agents and employees (hereinafter, collectively, "the parties") harmless from any and all claims, demands, proceedings, suits and actions and all liabilities, losses, and expenses including without limitation those asserted by me, associated with actions taken by the parties due to instructions received from me in this request.

Customer Signature: *Carolyn P. Austin*

Customer Signature:

---

Notary Signature:

Notary Seal
**(Required for all 3rd-Party transactions)**

---

|  |  |
|---|---|
| **Internal Use Only – Registered Principal Approval** | |
| Print Name | Title |
| Signature | Date |

SEC-ACA-E-0000662



## ALPINE SECURITIES
*Stock Brokerage & Investment Company*

## FED WIRE TRANSFER REQUEST FORM

Process Date: **August 23, 2012**

Alpine Account Number:

Amount of Transfer: **$600,000**

**Recipient Bank Information**

Bank ABA Number: **121000248**

Bank Name: **Wells Fargo Bank NA**

Bank City and State: **Las Vegas, NV**

SWIFT Number (Foreign Wires Only):

Country (Foreign Wires Only):

**Beneficiary Information**

Customer's Name: **TransAmerica Trading Inc.**

Customer's Bank Account Number: ▮▮▮▮▮▮**3283**

Customer's Address (Optional):

**For Further Credit To**

Name:

Account Number:

I agree to hold all parties acting on this request, including the introducing broker and Alpine Securities, and their respective agents and employees (hereinafter, collectively, "the parties") harmless from any and all claims, demands, proceedings, suits and actions and all liabilities, losses, and expenses including without limitation those asserted by me, associated with actions taken by the parties due to instructions received from me in this request.

Customer Signature: *Carolyn P. Austin*

Customer Signature:

Notary Signature:
Notary Seal
*(Required for all 3ʳᵈ-Party transactions)*

| Internal Use Only – Registered Principal Approval | |
|---|---|
| Print Name | Title |
| Signature | Date |

SEC-ACA-E-0000651



## ALPINE SECURITIES
Stock Brokerage & Investment Company

## FED WIRE TRANSFER REQUEST FORM

| | |
|---|---|
| Process Date: | **August 29, 2012** |
| Alpine Account Number: | |
| Amount of Transfer: | **$275,000** |

**Recipient Bank Information**

| | |
|---|---|
| Bank ABA Number: | **121000248** |
| Bank Name: | **Wells Fargo Bank NA** |
| Bank City and State: | **Las Vegas, NV** |
| SWIFT Number (Foreign Wires Only): | |
| Country (Foreign Wires Only): | |

**Beneficiary Information**

| | |
|---|---|
| Customer's Name: | **TransAmerica Trading Inc.** |
| Customer's Bank Account Number: | ▓▓▓▓▓3283 |
| Customer's Address (Optional): | |

**For Further Credit To**

| | |
|---|---|
| Name: | |
| Account Number: | |

I agree to hold all parties acting on this request, including the introducing broker and Alpine Securities, and their respective agents and employees (hereinafter, collectively, "the parties") harmless from any and all claims, demands, proceedings, suits and actions and all liabilities, losses, and expenses including without limitation those asserted by me, associated with actions taken by the parties due to instructions received from me in this request.

Customer Signature: *Carolyn P. Austin*

Customer Signature:

Notary Signature:
Notary Seal
*(Required for all 3rd-Party transactions)*

### Internal Use Only – Registered Principal Approval

| Print Name | Title |
|---|---|
| Signature | Date |

# Appendix

# Exhibit HHH

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Seq | User | Account | Type | Date | Time | Action | Quantity | ExchCode | SecurityType | Security | PutOrCall | MaturityDate | StrikePrice | Price | Contra |
| 2 | 6 | ME15 | 2TC05699 | 1 | 9/12/2012 | 16:04:31 | Sold | 12,000 | OBB | CS | CHMR | | | | 0.715 | FANC |
| 3 | 1 | ME15 | 2TC05699 | 1 | 9/26/2012 | 16:02:00 | Sold | 225,000 | OBB | CS | CHMR | | | | 0.335 | FANC |
| 4 | 0 | ME15 | 2TC05699 | 1 | 10/24/2012 | 10:47:05 | Sold | 313,750 | | CS | CHMR | | | | 0.187533022 | NITE |
| 5 | 0 | ME15 | 2TC05699 | 1 | 11/8/2012 | 14:14:48 | Sold | 300,000 | | CS | CHMR | | | | 0.063980933 | NITE |
| 6 | 0 | ME15 | 2TC05699 | 1 | 11/9/2012 | 9:40:21 | Sold | 333,475 | | CS | CHMR | | | | 0.040953219 | NITE |
| 7 | 0 | ME15 | 2TC05699 | 1 | 11/12/2012 | 9:58:10 | Sold | 400,483 | | CS | CHMR | | | | 0.040624277 | NITE |
| 8 | 0 | ME15 | 2TC05699 | 1 | 11/13/2012 | 12:13:32 | Sold | 184,500 | | CS | CHMR | | | | 0.040409214 | NITE |
| 9 | 1 | ME15 | 2TC05699 | 1 | 11/14/2012 | 9:44:22 | Sold | 4,850 | NAP | CS | CHMR | | | | 0.035 | NITE |
| 10 | 1 | ME15 | 2TC05699 | 1 | 11/14/2012 | 9:52:51 | Sold | 4,999 | NAP | CS | CHMR | | | | 0.035 | NITE |
| 11 | 1 | ME15 | 2TC05699 | 1 | 11/14/2012 | 9:53:00 | Sold | 857 | NAP | CS | CHMR | | | | 0.035 | NITE |
| 12 | 1 | ME15 | 2TC05699 | 1 | 11/14/2012 | 10:24:39 | Sold | 2,800 | NAP | CS | CHMR | | | | 0.035 | NITE |
| 13 | 1 | ME15 | 2TC05699 | 1 | 11/14/2012 | 11:00:14 | Sold | 500 | NAP | CS | CHMR | | | | 0.035 | NITE |
| 14 | 1 | ME15 | 2TC05699 | 1 | 11/14/2012 | 11:21:06 | Sold | 26,000 | NAP | CS | CHMR | | | | 0.035 | NITE |
| 15 | 1 | ME15 | 2TC05699 | 1 | 11/14/2012 | 11:21:06 | Sold | 5,000 | NAP | CS | CHMR | | | | 0.035 | NITE |
| 16 | 1 | ME15 | 2TC05699 | 1 | 11/14/2012 | 11:31:59 | Sold | 2,200 | NAP | CS | CHMR | | | | 0.035 | NITE |
| 17 | 1 | ME15 | 2TC05699 | 1 | 11/14/2012 | 14:31:00 | Sold | 4,950 | NAP | CS | CHMR | | | | 0.035 | NITE |
| 18 | 1 | ME15 | 2TC05699 | 1 | 11/14/2012 | 14:31:15 | Sold | 1,250 | NAP | CS | CHMR | | | | 0.035 | NITE |
| 19 | 1 | ME15 | 2TC05699 | 1 | 11/14/2012 | 14:31:15 | Sold | 3,000 | NAP | CS | CHMR | | | | 0.035 | NITE |
| 20 | 1 | ME15 | 2TC05699 | 1 | 11/14/2012 | 15:58:56 | Sold | 10,000 | NAP | CS | CHMR | | | | 0.035 | NITE |
| 21 | 1 | ME15 | 2TC05699 | 1 | 11/15/2012 | 12:55:35 | Sold | 3,352 | NAP | CS | CHMR | | | | 0.035 | NITE |

SEC-MERRIMAC-E-0000064

| | Q | R |
|---|---|---|
| 1 | Comm | OrderID |
| 2 | 386.1 | ME156SJ93009122012 |
| 3 | 1527.75 | ME151WD60709282012 |
| 4 | 2648 | COMB1024201215474659 |
| 5 | 862.65 | COMB11820121611790 |
| 6 | 615 | COMB1192012153017183 |
| 7 | 732 | COMB1112201214361689 |
| 8 | 335.35 | COMB1113201215544886 |
| 9 | | ME151AP11711142012 |
| 10 | | ME151AP11711142012 |
| 11 | | ME151AP11711142012 |
| 12 | | ME151AP11711142012 |
| 13 | | ME151AP11711142012 |
| 14 | | ME151AP11711142012 |
| 15 | | ME151AP11711142012 |
| 16 | | ME151AP11711142012 |
| 17 | | ME151AP11711142012 |
| 18 | | ME151AP11711142012 |
| 19 | | ME151AP11711142012 |
| 20 | 104.5895 | ME151AP11711142012 |
| 21 | 50 | ME151SZ6311152012 |

SEC-MERRIMAC-E-0000065

# Appendix

# Exhibit III

# This Document is Available in Native Format

| | |
|---:|:---|
| Filename: | CHMR.XLS |
| Folder: | R:\1216_17181\ |
| Modified Date: | Monday, November 11, 2013 |
| Accessed Date: | Tuesday, November 12, 2013 |
| Created Date: | Monday, November 11, 2013 |

SEC-PC-E-0000949

| Action | Qty | Symbol | Price | Total | Markup/ Markdown | Account | Company/ Executed |
|---|---|---|---|---|---|---|---|
| S | 5000 | CHMR | $0.50 | $2,500.00 | 0.0500 $250.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Wed Jun 20 12:52:57 2012 EST |
| S | 7500 | CHMR | $0.53 | $3,937.50 | 0.0250 $187.50 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Wed Jul 18 15:51:50 2012 EST |
| S | 7500 | CHMR | $0.62 | $4,635.00 | 0.0320 $240.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Tue Jul 24 11:46:57 2012 EST |
| S | 4000 | CHMR | $0.66 | $2,652.00 | 0.0370 $148.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Wed Jul 25 13:10:14 2012 EST |
| S | 2000 | CHMR | $0.95 | $1,900.00 | 0.0500 $100.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Mon Jul 30 10:51:39 2012 EST |
| S | 10000 | CHMR | $0.95 | $9,500.00 | 0.0500 $500.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Mon Jul 30 12:18:26 2012 EST |
| S | 5500 | CHMR | $1.00 | $5,500.00 | 0.0500 $275.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Mon Jul 30 15:58:44 2012 EST |
| S | 14000 | CHMR | $1.14 | $15,960.00 | 0.0600 $840.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Tue Jul 31 10:32:24 2012 EST |
| S | 5000 | CHMR | $1.19 | $5,950.00 | 0.0600 $300.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Tue Jul 31 10:45:16 2012 EST |
| S | 5000 | CHMR | $1.21 | $6,050.00 | 0.0600 $300.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Tue Jul 31 10:50:52 2012 EST |
|  |  |  |  |  | 0.0600 |  | CHIMERA ENERGY CORP |

| Action | Qty | Symbol | Price | Total | Markup/Markdown | Account | Company/Executed |
|--------|-----|--------|-------|-------|-----------------|---------|------------------|
| S | 5000 | CHMR | $1.23 | $6,150.00 | $300.00 | LT5-028320 OAK RESOURCES INC | Tue Jul 31 11:11:38 2012 EST |
| | | | | | 0.0600 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $1.25 | $6,250.00 | $300.00 | LT5-028320 OAK RESOURCES INC | Tue Jul 31 11:14:37 2012 EST |
| | | | | | 0.0600 | | CHIMERA ENERGY CORP |
| S | 4000 | CHMR | $1.27 | $5,080.00 | $240.00 | LT5-028320 OAK RESOURCES INC | Tue Jul 31 11:38:37 2012 EST |
| | | | | | 0.0600 | | CHIMERA ENERGY CORP |
| S | 7500 | CHMR | $1.29 | $9,675.00 | $450.00 | LT5-028320 OAK RESOURCES INC | Tue Jul 31 13:42:11 2012 EST |
| | | | | | 0.0600 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $1.33 | $6,650.00 | $300.00 | LT5-028320 OAK RESOURCES INC | Tue Jul 31 14:35:53 2012 EST |
| | | | | | 0.0700 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $1.33 | $6,650.00 | $350.00 | LT5-028320 OAK RESOURCES INC | Wed Aug 1 10:25:57 2012 EST |
| | | | | | 0.0700 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $1.35 | $6,750.00 | $350.00 | LT5-028320 OAK RESOURCES INC | Wed Aug 1 11:15:18 2012 EST |
| | | | | | 0.0600 | | CHIMERA ENERGY CORP |
| S | 2500 | CHMR | $1.31 | $3,275.00 | $150.00 | LT5-028320 OAK RESOURCES INC | Thu Aug 2 09:57:39 2012 EST |
| | | | | | 0.0700 | | CHIMERA ENERGY CORP |
| S | 6800 | CHMR | $1.33 | $9,044.00 | $476.00 | LT5-028320 OAK RESOURCES INC | Thu Aug 2 14:27:32 2012 EST |
| | | | | | 0.0700 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $1.34 | $6,700.00 | $350.00 | LT5-028320 OAK RESOURCES INC | Fri Aug 3 09:46:05 2012 EST |
| | | | | | 0.0700 | | CHIMERA ENERGY CORP |
| S | 12000 | CHMR | $1.37 | $16,440.00 | $840.00 | LT5-028320 OAK RESOURCES INC | Fri Aug 3 11:21:44 2012 EST |

| Action | Qty | Symbol | Price | Total | Markup/ Markdown | Account | Company/ Executed |
|--------|-----|--------|-------|-------|------------------|---------|-------------------|
| | | | | | 0.0700 | | CHIMERA ENERGY CORP |
| S | 4000 | CHMR | $1.38 | $5,520.00 | $280.00 | LT5-028320 OAK RESOURCES INC | Fri Aug 3 16:02:02 2012 EST |
| | | | | | 0.0700 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $1.36 | $6,800.00 | $350.00 | LT5-028320 OAK RESOURCES INC | Mon Aug 6 15:58:39 2012 EST |
| | | | | | 0.0700 | | CHIMERA ENERGY CORP |
| S | 7900 | CHMR | $1.34 | $10,586.00 | $553.00 | LT5-028320 OAK RESOURCES INC | Tue Aug 7 11:38:09 2012 EST |
| | | | | | 0.0000 | | CHIMERA ENERGY CORP |
| S | 3000 | CHMR | $1.36 | $4,080.00 | $0.00 | LT5-028320 OAK RESOURCES INC | Tue Aug 7 15:57:03 2012 EST |
| | | | | | 0.0700 | | CHIMERA ENERGY CORP |
| S | 15000 | CHMR | $1.38 | $20,700.00 | $1,050.00 | LT5-028320 OAK RESOURCES INC | Wed Aug 8 09:37:13 2012 EST |
| | | | | | 0.0700 | | CHIMERA ENERGY CORP |
| S | 17000 | CHMR | $1.38 | $23,460.00 | $1,190.00 | LT5-028320 OAK RESOURCES INC | Wed Aug 8 15:04:03 2012 EST |
| | | | | | 0.0700 | | CHIMERA ENERGY CORP |
| S | 7000 | CHMR | $1.50 | $10,500.00 | $490.00 | LT5-028320 OAK RESOURCES INC | Thu Aug 9 09:42:51 2012 EST |
| | | | | | 0.0700 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $1.52 | $7,600.00 | $350.00 | LT5-028320 OAK RESOURCES INC | Thu Aug 9 09:45:54 2012 EST |
| | | | | | 0.0800 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $1.53 | $7,650.00 | $400.00 | LT5-028320 OAK RESOURCES INC | Thu Aug 9 09:45:54 2012 EST |
| | | | | | 0.0800 | | CHIMERA ENERGY CORP |
| S | 7000 | CHMR | $1.62 | $11,340.00 | $560.00 | LT5-028320 OAK RESOURCES INC | Thu Aug 9 10:26:09 2012 EST |
| | | | | | 0.0900 | | CHIMERA ENERGY CORP |

| Action | Qty | Symbol | Price | Total | Markup/ Markdown | Account | Company/ Executed |
|--------|-----|--------|-------|-------|------------------|---------|-------------------|
| S | 9000 | CHMR | $1.71 | $15,390.00 | $810.00 | LT5-028320 OAK RESOURCES INC | Thu Aug 9 10:41:17 2012 EST |
| S | 10000 | CHMR | $1.76 | $17,600.00 | 0.0000 $0.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Thu Aug 9 10:53:47 2012 EST |
| S | 10000 | CHMR | $1.81 | $18,100.00 | 0.0900 $900.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Thu Aug 9 11:12:56 2012 EST |
| S | 10000 | CHMR | $1.72 | $17,200.00 | 0.0900 $900.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Thu Aug 9 11:28:37 2012 EST |
| S | 10000 | CHMR | $1.71 | $17,100.00 | 0.0900 $900.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Thu Aug 9 12:15:25 2012 EST |
| S | 17000 | CHMR | $1.78 | $30,260.00 | 0.0900 $1,530.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Thu Aug 9 13:30:30 2012 EST |
| S | 5000 | CHMR | $1.69 | $8,450.00 | 0.0800 $400.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Thu Aug 9 14:17:17 2012 EST |
| S | 5000 | CHMR | $1.62 | $8,100.00 | 0.0000 $0.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Thu Aug 9 15:51:29 2012 EST |
| S | 4000 | CHMR | $1.69 | $6,760.00 | 0.0800 $320.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Fri Aug 10 10:03:20 2012 EST |
| S | 7000 | CHMR | $1.74 | $12,180.00 | 0.0900 $630.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Fri Aug 10 10:51:22 2012 EST |
| S | 5000 | CHMR | $1.79 | $8,950.00 | 0.0900 $450.00 | LT5-028320 OAK RESOURCES INC | CHIMERA ENERGY CORP Fri Aug 10 10:57:47 2012 EST |

| Action | Qty | Symbol | Price | Total | Markup/ Markdown | Account | Company/ Executed |
|--------|-----|--------|-------|-------|------------------|---------|-------------------|
| | | | | | 0.0800 | | CHIMERA ENERGY CORP |
| S | 7500 | CHMR | $1.71 | $12,825.00 | $600.00 | LT5-028320 OAK RESOURCES INC | Fri Aug 10 15:36:37 2012 EST |
| | | | | | 0.0800 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $1.60 | $8,000.00 | $400.00 | LT5-028320 OAK RESOURCES INC | Mon Aug 13 12:27:06 2012 EST |
| | | | | | 0.0550 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $1.11 | $5,525.00 | $275.00 | LT5-028320 OAK RESOURCES INC | Tue Aug 14 10:29:59 2012 EST |
| | | | | | 0.0500 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $0.95 | $4,750.00 | $250.00 | LT5-028320 OAK RESOURCES INC | Wed Aug 15 09:43:41 2012 EST |
| | | | | | 0.0100 | | CHIMERA ENERGY CORP |
| B | 12000 | CHMR | $1.21 | $14,520.00 | $120.00 | LT5-028320 OAK RESOURCES INC | Wed Aug 15 11:23:27 2012 EST |
| | | | | | 0.0300 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $0.47 | $2,350.00 | $150.00 | LT5-028320 OAK RESOURCES INC | Tue Aug 21 12:11:26 2012 EST |
| | | | | | 0.0000 | | CHIMERA ENERGY CORP |
| S | 2500 | CHMR | $0.49 | $1,225.00 | $0.00 | LT5-028320 OAK RESOURCES INC | Tue Aug 21 13:14:46 2012 EST |
| | | | | | 0.0300 | | CHIMERA ENERGY CORP |
| S | 7500 | CHMR | $0.59 | $4,425.00 | $225.00 | LT5-028320 OAK RESOURCES INC | Wed Aug 22 09:42:22 2012 EST |
| | | | | | 0.0300 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $0.65 | $3,250.00 | $150.00 | LT5-028320 OAK RESOURCES INC | Wed Aug 22 09:44:57 2012 EST |
| | | | | | 0.0300 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $0.65 | $3,250.00 | $150.00 | LT5-028320 OAK RESOURCES INC | Wed Aug 22 09:48:13 2012 EST |
| | | | | | 0.0300 | | CHIMERA ENERGY CORP |

| Action | Qty | Symbol | Price | Total | Markup/ Markdown | Account | Company/ Executed |
|--------|-----|--------|-------|-------|------------------|---------|-------------------|
| S | 10000 | CHMR | $0.62 | $6,200.00 | $300.00 | LT5-028320 OAK RESOURCES INC | Wed Aug 22 10:03:54 2012 EST |
| | | | | | 0.0600 | | CHIMERA ENERGY CORP |
| S | 2500 | CHMR | $0.63 | $1,575.00 | $150.00 | LT5-028320 OAK RESOURCES INC | Wed Aug 22 15:41:44 2012 EST |
| | | | | | 0.0300 | | CHIMERA ENERGY CORP |
| S | 5000 | CHMR | $0.59 | $2,950.00 | $150.00 | LT5-028320 OAK RESOURCES INC | Thu Aug 23 10:07:31 2012 EST |

# Appendix

# Exhibit JJJ

| | |
|---|---|
| **From:** | lcotton@oakresources.net |
| **Sent:** | Thursday, August 9, 2012 2:51 PM |
| **To:** | Mark Dillon <mark@pennaluna.com> |
| **Subject:** | Oak Resources |

Mark,

Please wire $125,000 from the Oak Resources account to:

**Pay To**


JP MORGAN CHASE BANK
5847 SAN FELIPE ST
HOUSTON TEXAS 77057
ABA# 111000614
SWIFT# CHASUS33

**FOR FURTHER CREDIT TO**

OAK RESOURCES INC.
2500 CITYWEST BLVD, SUITE 309
HOUSTON, TX 77042
ACCT# 897988366

I would also like to schedule a time early next week so we can discuss some "blue chip" investments I am interested in making.

Sincerely,


Lydia Cotton
President
Oak Resources Inc.

SEC-PC-E-0000005

REQ 9-14-12

# APEX CLEARING

## Domestic Wire Request Form

Date: **Sep 14, 2012**

Wire Amount: **$300,000**

Apex Account Number: **2TC05699**

**1. Beneficiary/Recipient/For Further Credit To Information** (This is the ultimate recipient of the wire transfer funds.)

| | |
|---|---|
| Beneficiary/Recipient/For Further Credit To Name: | Oak Resources Inc. |
| Beneficiary Account Number: | 897988366 |
| Beneficiary Address, City State, Zip, Country: (required) | 2500 CityWest Blvd #365 |
| | Houston Texas 77042 |

**2. Beneficiary Bank Information** (This is the financial institution where the beneficiary maintains their account.)

| | |
|---|---|
| Beneficiary Bank Routing Transfer Number: | 111000614 |
| Bank Name (required): | JP Morgan Chase Bank NA |
| Beneficiary Bank Address, City State, Zip, Country (required) | 5847 San Felipe St |
| | Houston Texas 77057 |

**3. Intermediary Bank Information** (This is a financial institution that the wire must pass through before reaching the final beneficiary bank.) This section is OPTIONAL and not required for all wires.

| | |
|---|---|
| Correspondent Bank ABA: | |
| Bank Name (required): | |
| Beneficiary Bank Address, City State, Zip, Country: (required) | |
| | |

**4. Customer Authorization**

Reason for Transfer: Other Investments

Customer Signature _____     Joint Account Holder

I agree to hold all parties acting on this request, including the introducing broker and Apex Clearing Corporation, and their respective agents and employees(hereinafter, collectively, "the parties") harmless from any and all claims, demands, proceedings, suits and actions and all liabilities, losses and expenses including without limitation those asserted by me, associated with actions taken by the parties due to instructions received from me in this request.

Notary Signature: _____

Notary Seal

**FOR INTERNAL USE ONLY**

Registered Principal Approval:

| Print Name | Title |
|---|---|
| Signature | Date |

Compliance Officer Approval:

| Print Name | Title |
|---|---|
| Signature | Date |

PF10101-DWRE 07/26/2012

SEC-MERRIMAC-E-0000069



**APEX CLEARING**™

## Domestic Wire Request Form

Date: **Nov 21, 2012**

Wire Amount: **$100,000**

Apex Account Number: **2TC05699**

**1. Beneficiary/Recipient/For Further Credit To Information**(This is the ultimate recipient of the wire transfer funds.)

| | |
|---|---|
| Beneficiary/Recipient/For Further Credit To Name: | Oak Resources Inc. |
| Beneficiary Account Number: | 897988366 |
| Beneficiary Address, City State, Zip, Country: (required) | 2500 CityWest Blvd #365 |
| | Houston Texas 77042 |

**2. Beneficiary Bank Information**(This is the financial institution where the beneficiary maintains their account.)

| | |
|---|---|
| Beneficiary Bank Routing Transfer Number: | 111000614 |
| Bank Name (required): | JP Morgan Chase Bank NA |
| Beneficiary Bank Address, City State, Zip, Country (required) | 5847 San Felipe St |
| | Houston Texas 77057 |

**3. Intermediary Bank Information**(This is a financial institution that the wire must pass through before reaching the final beneficiary bank.) This section is **OPTIONAL** and not required for all wires.

| | |
|---|---|
| Correspondent Bank ABA: | |
| Bank Name (required): | |
| Beneficiary Bank Address, City State, Zip, Country: (required) | |

**4. Customer Authorization**

Reason for Transfer: Other Investments

Customer Signature                        Joint Account Holder

I agree to hold all parties acting on this request, including the introducing broker and Apex Clearing Corporation, and their respective agents and employees(hereinafter, collectively, "the parties") harmless from any and all claims, demands, proceedings, suits and actions and all liabilities, losses and expenses including without limitation those asserted by me, associated with actions taken by the parties due to instructions received from me in this request.

Notary Signature:

Notary Seal

---

**FOR INTERNAL USE ONLY**

Registered Principal Approval:

| | |
|---|---|
| Print Name | Title |
| Signature | Date |

Compliance Officer Approval:

| | |
|---|---|
| Print Name | Title |
| Signature | Date |

PF10101-DWRE 07/26/2012

SEC-MERRIMAC-E-0000308

# Appendix

# Exhibit KKK

5424078 1
480

**Account:** Kylemore Corp.

**Transfer/Agent**

| Transaction | Operative | Value | Number | Label | Client | Name | Security | Label | Quantity | Rate | Total Cur. | Label | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Remittance | 06/04/2012 | 06/07/2012 | - | Security Remitted 700,000.00 US1693HU1007 CHIMERA ENERGY — SHS | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | 700,000.00 | 0.03250 | (63,000.00) USD | PHYSICAL CERTIFICATES | CERT |
| Withdrawal | 06/07/2012 | 06/07/2012 | - | Sale Withdrawn 700,000.00 US1693HU1007 CHIMERA ENERGY — SHS | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (700,000.00) | 0.00000 | 0.00 USD | SHARE SPLIT 4:1 | CERT |
| Remittance | 06/07/2012 | 06/07/2012 | - | Security Remitted 2,100,000.00 US1693HU1007 CHIMERA ENERGY — SHS | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | 2,800,000.00 | 0.00000 | 0.00 USD | SHARE SPLIT 4:1 | CERT |
| Withdrawal | 10/05/2012 | 10/05/2012 | - | Sale Withdrawn 700,000.00 US1693HU1007 CHIMERA ENERGY — SHS | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (700,000.00) | 0.00000 | 0.00 USD | TRANSFER TO CHH A/C (DRS) | CERT |
| | | | | | | | | BALANCE CHIMERA ENERGY — SHS | 2,100,000.00 | | (63,000.00) | | |

**Bank CHH USD Current A/c**

| Transaction | Operative | Value | Number | Label | Client | Name | Security | Label | Quantity | Rate | Total Cur. | Label | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sale | 10/04/2012 | 15/02/2012 | 54,583 | Sale 10,000.0 US1693HU1007 CHIMERA ENERGY — SHS 1.79 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (10,000.00) | 1.78528 | 17,852.77 USD | Bank CHH USD Current A/c | SSS |
| Sale | 10/04/2012 | 15/02/2012 | 54,584 | Sale 8,500.0 US1693HU1007 CHIMERA ENERGY — SHS 1.79 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (8,500.00) | 1.78095 | 15,138.06 USD | Bank CHH USD Current A/c | SSS |
| Remittance | 14/02/2012 | 14/02/2012 | 54,582 | Security Remitted 700,000.00 US1693HU1007 CHIMERA ENERGY — SHS 0.00 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | 700,000.00 | 0.00000 | 0.00 USD | Bank CHH USD Current A/c | SSS |
| Purchase | 13/02/2012 | 16/02/2012 | 54,585 | Purchase 25,000.0 US1693HU1007 CHIMERA ENERGY — SHS 1.42 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | 25,000.00 | 1.42731 | (35,682.83) USD | Bank CHH USD Current A/c | SSS |
| Sale | 13/02/2012 | 16/02/2012 | 54,586 | Sale 167,000.0 US1693HU1007 CHIMERA ENERGY — SHS 1.35 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (167,000.00) | 1.34391 | 224,433.28 USD | Bank CHH USD Current A/c | SSS |
| Sale | 13/02/2012 | 16/02/2012 | 54,587 | Sale 85,000.0 US1693HU1007 CHIMERA ENERGY — SHS 1.72 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (85,000.00) | 1.71559 | 145,842.52 USD | Bank CHH USD Current A/c | SSS |
| Sale | 15/02/2012 | 20/02/2012 | 54,588 | Sale 15,000.0 US1693HU1007 CHIMERA ENERGY — SHS 1.18 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (15,000.00) | 1.16935 | 17,543.11 USD | Bank CHH USD Current A/c | SSS |
| Sale | 15/02/2012 | 20/02/2012 | 54,589 | Sale 50,000.0 US1693HU1007 CHIMERA ENERGY — SHS 1.07 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (50,000.00) | 1.06021 | 53,010.40 USD | Bank CHH USD Current A/c | SSS |
| Sale | 21/02/2012 | 24/02/2012 | 54,590 | Sale 175,000.0 US1693HU1007 CHIMERA ENERGY — SHS 0.85 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (175,000.00) | 0.84528 | 147,923.14 USD | Bank CHH USD Current A/c | SSS |
| Sale | 21/02/2012 | 24/02/2012 | 54,591 | Sale 125,000.0 US1693HU1007 CHIMERA ENERGY — SHS 0.90 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (125,000.00) | 0.89933 | 112,416.57 USD | Bank CHH USD Current A/c | SSS |
| Sale | 17/09/2012 | 22/02/2012 | 54,591 | Sale 89,500.0 US1693HU1007 CHIMERA ENERGY — SHS 0.53 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (89,500.00) | 0.53996 | 47,921.28 USD | Bank CHH USD Current A/c | SSS |
| Purchase | 07/09/2012 | 12/09/2012 | 55,191 | Purchase 14,000.0 US1693HU1007 CHIMERA ENERGY — SHS 0.65 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | 14,000.00 | 0.66753 | (9,293.62) USD | Bank CHH USD Current A/c | SSS |
| Purchase | 07/09/2012 | 12/09/2012 | 55,192 | Purchase 10,000.0 US1693HU1007 CHIMERA ENERGY — SHS 0.66 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | 10,000.00 | 0.66038 | (6,603.83) USD | Bank CHH USD Current A/c | SSS |
| Purchase | 10/09/2012 | 13/09/2012 | 55,373 | Purchase 2,500.0 US1693HU1007 CHIMERA ENERGY — SHS 0.70 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | 2,500.00 | 0.71076 | (1,776.91) USD | Bank CHH USD Current A/c | SSS |
| Sale | 11/09/2012 | 14/09/2012 | 55,374 | Sale 10,000.0 US1693HU1007 CHIMERA ENERGY — SHS 0.64 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (10,000.00) | 0.64438 | 6,443.81 USD | Bank CHH USD Current A/c | SSS |
| Sale | 11/09/2012 | 14/09/2012 | 55,375 | Sale 5,000.0 US1693HU1007 CHIMERA ENERGY — SHS 0.64 | 1,625 | Kylemore Corp. | US1693HU1007 | CHIMERA ENERGY — SHS | (5,000.00) | 0.63622 | 3,181.10 USD | Bank CHH USD Current A/c | SSS |
| | | | | | | | | BALANCE CHIMERA ENERGY — SHS | 11,500.00 | | 738,040.18 | | |

**APP. 000872**

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0000592

# Appendix

# Exhibit LLL

5424078 2
826

| Transaction | Operation | Value | Number | Label | Security | Client | Name | Label | Quantity | Rate | Total Cur. | Label |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Account: Williams S.A.**
**Transfer Agent:**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| transference | 04/04/2012 | 06/04/2012 | 53,897 | Security Remitted 700,000.0 US1691AU1007 CHIMERA ENERGY — SHS | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 700,000.00 | 0.02250 | (33,000.00) USD | CERT |
| withdrawal | 04/07/2012 | 04/07/2012 | | Sale Withdrawal 700,000.0 US1691AU1007 CHIMERA ENERGY — SHS | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (700,000.00) | 0.00000 | 0.00 USD | CERT |
| transference | 10/07/2012 | 10/07/2012 | | Security Remitted 2,100,000.0 US1691AU1007 CHIMERA ENERGY — SHS | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 2,800,000.00 | 0.00000 | 0.00 USD | CERT |
| Withdrawal | 18/09/2012 | 02/10/2012 | | Sale Withdrawal 800,000.0 US1691AU1007 CHIMERA ENERGY — SHS | US1691AU1007 | 1,624 | Williams S.A. | BALANCE | 1,000,000.00 | 0.00000 | 0.00 USD | CERT |

**Account: Bank CBH USD Current A/c**
**Transfer Agent:**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| verkauie | 18/07/2012 | 23/07/2012 | 53,897 | Purchase 22,500.0 US1691AU1007 CHIMERA ENERGY — SHS 0.52 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 22,500.00 | 0.5287 | (11,861.22) USD | Bank CBH USD Current A/c |
| verkauie | 24/07/2012 | 24/07/2012 | 53,898 | Purchase 3,500.0 US1691AU1007 CHIMERA ENERGY — SHS 0.63 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 3,500.00 | 0.6743 | (2,321.16) USD | Bank CBH USD Current A/c |
| verkauie | 24/07/2012 | 24/07/2012 | 53,900 | Purchase 4,500.0 US1691AU1007 CHIMERA ENERGY — SHS 0.63 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 4,500.00 | 0.65136 | (2,931.11) USD | Bank CBH USD Current A/c |
| verkauie | 24/07/2012 | 24/07/2012 | 53,911 | Purchase 2,500.0 US1691AU1007 CHIMERA ENERGY — SHS 0.68 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 2,500.00 | 0.69140 | (1,728.73) USD | Bank CBH USD Current A/c |
| verkauie | 24/07/2012 | 24/07/2012 | 53,911 | Purchase 2,500.0 US1691AU1007 CHIMERA ENERGY — SHS 0.68 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 2,500.00 | 0.68493 | (2,465.00) USD | Bank CBH USD Current A/c |
| verkauie | 24/07/2012 | 30/07/2012 | 53,912 | Purchase 6,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.68 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 6,000.00 | 0.68184 | (4,091.04) USD | Bank CBH USD Current A/c |
| verkauie | 25/07/2012 | 30/07/2012 | 53,913 | Purchase 7,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.73 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 7,000.00 | 0.73178 | (5,136.40) USD | Bank CBH USD Current A/c |
| verkauie | 27/07/2012 | 01/08/2012 | 53,918 | Purchase 2,500.0 US1691AU1007 CHIMERA ENERGY — SHS 0.82 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 2,500.00 | 0.83375 | (2,081.90) USD | Bank CBH USD Current A/c |
| sdt | 31/07/2012 | 02/08/2012 | 53,923 | Sale 30,000.0 US1691AU1007 CHIMERA ENERGY — SHS 1.31 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 30,000.00 | 1.30975 | 39,311.86 USD | Bank CBH USD Current A/c |
| sdt | 06/02/2012 | 09/02/2012 | 54,310 | Sale 10,000.0 US1691AU1007 CHIMERA ENERGY — SHS 1.34 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (10,000.00) | 1.34334 | 13,433.35 USD | Bank CBH USD Current A/c |
| sdt | 06/02/2012 | 09/02/2012 | 54,364 | Sale 5,000.0 US1691AU1007 CHIMERA ENERGY — SHS 1.46 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (10,000.00) | 1.46422 | (8,053.20) USD | Bank CBH USD Current A/c |
| sdt | 09/08/2012 | 13/08/2012 | 54,282 | Sale 10,000.0 US1691AU1007 CHIMERA ENERGY — SHS 1.39 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 5,500.00 | 1.39837 | 13,863.72 USD | Bank CBH USD Current A/c |
| sdt | 09/08/2012 | 13/08/2012 | 54,282 | Sale 7,500.0 US1691AU1007 CHIMERA ENERGY — SHS 1.77 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (15,000.00) | 1.14567 | 11,765.96 USD | Bank CBH USD Current A/c |
| verkauie | 15/02/2012 | 20/02/2012 | 54,599 | Purchase 40,000.0 US1691AU1007 CHIMERA ENERGY — SHS 1.22 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 40,000.00 | 1.23996 | (49,598.39) USD | Bank CBH USD Current A/c |
| verkauie | 17/08/2012 | 22/08/2012 | 54,602 | Purchase 20,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.56 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 20,000.00 | 1.23996 | (7,025.67) USD | Bank CBH USD Current A/c |
| verkauie | 27/03/2012 | 30/03/2012 | 54,617 | Purchase 3,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.79 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 3,000.00 | 0.58028 | 23,911.41 USD | Bank CBH USD Current A/c |
| sdt | 30/08/2012 | 04/09/2012 | 54,318 | Sale 3,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.66 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 3,000.00 | 0.58822 | (2,408.45) USD | Bank CBH USD Current A/c |
| sdt | 30/08/2012 | 04/09/2012 | 54,320 | Sale 3,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.63 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (3,000.00) | 0.63087 | 1,952.61 USD | Bank CBH USD Current A/c |
| sdt | 03/09/2012 | 05/09/2012 | 54,319 | Sale 8,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.53 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 8,000.00 | 0.53145 | (4,251.62) USD | Bank CBH USD Current A/c |
| sdt | 03/09/2012 | 05/09/2012 | 54,319 | Purchase 20,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.50 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 20,000.00 | 0.50046 | (10,009.20) USD | Bank CBH USD Current A/c |
| sdt | 04/09/2012 | 07/09/2012 | 54,364 | Sale 15,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.59 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 15,000.00 | 0.59788 | (8,966.90) USD | Bank CBH USD Current A/c |
| sdt | 05/09/2012 | 10/09/2012 | 55,183 | Sale 20,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.62 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (20,000.00) | 0.57019 | 11,403.70 USD | Bank CBH USD Current A/c |
| sdt | 12/09/2012 | 17/09/2012 | 55,184 | Sale 15,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.61 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (15,000.00) | 0.61632 | 9,255.12 USD | Bank CBH USD Current A/c |
| sdt | 12/09/2012 | 17/09/2012 | 55,378 | Sale 10,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.50 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (5,000.00) | 0.51009 | 5,832.58 USD | Bank CBH USD Current A/c |
| verkauie | 12/09/2012 | | 55,379 | Security Remitted 2,000,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.00 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 2,000,000.00 | 0.00000 | 0.00 USD | Bank CBH USD Current A/c |
| verkauie | 13/09/2012 | 17/09/2012 | 55,336 | Sale 100,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.57 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (100,000.00) | 0.67600 | 9,341.51 USD | Bank CBH USD Current A/c |
| sdt | 17/09/2012 | 20/09/2012 | 55,379 | Sale 100,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.47 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (75,000.00) | 0.66740 | 36,549.97 USD | Bank CBH USD Current A/c |
| sdt | 21/09/2012 | 26/09/2012 | 55,610 | Sale 225,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.57 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (225,000.00) | 0.56653 | 127,171.06 USD | Bank CBH USD Current A/c |
| verkauie | 14/09/2012 | 19/09/2012 | 55,610 | Sale 3,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.59 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (57,500.00) | 0.58169 | 33,412.56 USD | Bank CBH USD Current A/c |
| verkauie | 17/09/2012 | 22/09/2012 | 55,669 | Sale 20,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.58 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (20,000.00) | 0.56709 | 11,351.20 USD | Bank CBH USD Current A/c |
| sdt | 17/09/2012 | 22/09/2012 | 55,669 | Sale 5,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.55 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (5,000.00) | 0.55241 | 2,762.00 USD | Bank CBH USD Current A/c |
| sdt | 18/09/2012 | 21/09/2012 | 55,611 | Sale 50,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.53 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (50,000.00) | 0.53897 | 39,387.77 USD | Bank CBH USD Current A/c |
| sdt | 24/09/2012 | 27/09/2012 | 55,613 | Sale 135,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.51 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (50,000.00) | 0.51029 | 25,514.69 USD | Bank CBH USD Current A/c |
| sdt | 24/09/2012 | 27/09/2012 | 55,614 | Sale 130,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.46 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (135,000.00) | 0.50026 | 67,827.04 USD | Bank CBH USD Current A/c |
| sdt | 21/09/2012 | 26/09/2012 | 55,615 | Sale 100,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.55 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (200,000.00) | 0.54992 | 65,954.48 USD | Bank CBH USD Current A/c |
| sdt | 21/09/2012 | 26/09/2012 | 55,616 | Sale 72,500.0 US1691AU1007 CHIMERA ENERGY — SHS 0.58 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (72,500.00) | 0.54560 | 52,740.33 USD | Bank CBH USD Current A/c |
| sdt | 25/09/2012 | 28/09/2012 | 55,617 | Sale 215,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.54 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (215,000.00) | 0.54900 | 118,070.93 USD | Bank CBH USD Current A/c |
| sdt | 27/09/2012 | 02/10/2012 | 55,664 | Sale 25,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.49 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (25,000.00) | 0.51245 | 12,740.33 USD | Bank CBH USD Current A/c |
| remittance | 01/10/2012 | | 56,047 | Security Remitted 800,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.00 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | 800,000.00 | 0.00000 | 0.00 USD | Bank CBH USD Current A/c |
| sdt | 02/10/2012 | 05/10/2012 | 56,309 | Sale 70,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.51 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (70,000.00) | 0.49351 | 34,545.91 USD | Bank CBH USD Current A/c |
| sdt | 03/10/2012 | 08/10/2012 | 56,310 | Sale 135,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.55 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (50,000.00) | 0.48751 | 24,375.70 USD | Bank CBH USD Current A/c |
| sdt | 03/10/2012 | 08/10/2012 | 56,311 | Sale 20,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.52 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (165,000.00) | 0.39721 | 19,341.73 USD | Bank CBH USD Current A/c |
| verkauie | 02/10/2012 | 05/10/2012 | 56,300 | Sale 20,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.38 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (34,000.00) | 0.37163 | 15,440.93 USD | Bank CBH USD Current A/c |
| sdt | 12/10/2012 | 16/10/2012 | 56,325 | Sale 100,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.37 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (50,000.00) | 0.37163 | 19,351.73 USD | Bank CBH USD Current A/c |
| sdt | 12/10/2012 | 16/10/2012 | 56,326 | Sale 20,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.38 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (20,000.00) | 0.38328 | 7,665.54 USD | Bank CBH USD Current A/c |
| sdt | 18/10/2012 | 18/10/2012 | 56,762 | Sale 8,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.39 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (85,000.00) | 0.28992 | 29,361.96 USD | Bank CBH USD Current A/c |
| sdt | 16/10/2012 | 18/10/2012 | 56,763 | Sale 8,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.29 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (75,000.00) | 0.28996 | 8,693.54 USD | Bank CBH USD Current A/c |
| sdt | 22/10/2012 | 22/10/2012 | 56,765 | Sale 100,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.26 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (70,000.00) | 0.29127 | 24,647.40 USD | Bank CBH USD Current A/c |
| sdt | 22/10/2012 | 25/10/2012 | 56,766 | Sale 100,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.25 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (100,000.00) | 0.25966 | 25,966.24 USD | Bank CBH USD Current A/c |
| sdt | 22/10/2012 | 25/10/2012 | 56,767 | Sale 50,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.25 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (85,000.00) | 0.25671 | 23,231.01 USD | Bank CBH USD Current A/c |
| sdt | 24/10/2012 | 26/10/2012 | 72,324 | Sale 50,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.23 | US1691AU1007 | 1,624 | Williams S.A. | CHIMERA ENERGY — SHS | (100,000.00) | 0.23323 | 23,323.01 USD | Bank CBH USD Current A/c |
| verkauie | 24/10/2012 | 29/10/2012 | 72,338 | Sale 90,000.0 US1691AU1007 CHIMERA ENERGY — SHS 0.12 | US1691AU1007 | 1,624 | Williams S.A. | BALANCE | 0.00 | 0.18662 | 16,795.96 USD | Bank CBH USD Current A/c |

APP. 000874

# Appendix

# Exhibit MMM

5424078 1
478

## Due diligence questionnaire

__Personal information__

Surname: _Yurovskaya_............ First name(s): _Alina_...........

Legal address: _Yekatezinburg., Bdshakova st. 22/4-92_
............_Russia_..............

Telephone number: _79221717165_ Fax number: .................................

Mobile number: _079221717165_ E-mail: _alina-re@mail.ru_

Nationality: ..._Russian_........... Passport number: ▒▒▒▒_3295_

Date of birth: ▒▒▒▒_.87_........... Profession: _VICE PRESIDENT OF INTERNATIONAL SALES_

Marital status: ..._SINGLE_...........

Name of spouse: ..._N/A_........... Date of birth: ....▒▒▒▒_/1987_........

Number of children: ...._N/A_....... Name(s) of children: ......._N/A_...........

.........................................................................................

__Financial situation__

Personal net worth: ...._$ 1 million_.......

Estimated annual income: ..._$ 250,000_.......

Source of funds to be under administration: ..............................................

.........................................................................................

Anticipated activity for funds under administration: _Investments & trading in North American markets_

Do you have a criminal record ..._No_.......... (If yes please supply details)

Are you being or have you ever been investigated by any regulatory authority (SEC, BCSC, FSA or similar).........._No_................. (If yes please supply details)

Client signature: ..._[signature]_............. Date: ..._08.04.11_...............

In the presence of ..._[signature]_............

2




Confidential pursuant to Securities Exchange Act s.24(d).                SEC-FINMA-P-0000594

5424078 1
477



# EuroHelvetia TrustCo S.A.

### GENEVA

## ACCOUNT OPENING FORMS

**CLIENT**  ALINA  YUROVSKAYA

**REFERENCE**  YAA / 369

**DATE**  08.04.11

1 of 5

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0000595

5424078 1
476

**Further to our initial meeting and your subsequent proposal, I/We,**

Alisa Yourovskaya .................. request EuroHelvetia TrustCo. to
open on my/our behalf, the following structures :

☞  **Offshore corporation registered in:** Marshall Islands

   **Name of corporation:** Kylemore Corp.

☞  **Trust set up under the laws of** Bermuda

   **Name of trust:** The Kylemore Trust

☞  **Bank account with:** CBH

☐  **Brokerage accounts with:** ...........................................
(tick where appropriate)

Please accept my/our telephone, fax, email or safemessage instructions, without a reference number, and carry them out even when not confirmed in writing.

I/We assume All risks and especially those caused by a transmission error or misunderstanding as a result of this method of communication and including any genuine mistake on your part concerning my/our identity. We release you from all responsibility in this respect.

I/We acknowledge that no documentation, account information etc will be mailed, faxed, emailed or delivered out in any way, to me/us, without my/our written request to do so. My/Our client administration file will be maintained at the offices of EuroHelvetia TrustCo S.A. This file, containing account records and correspondence, will be made available for my/our review, at the offices of EuroHelvetia TrustCo S.A., on reasonable notice.

You may invoke these instructions and releases in relation to me/us and all representatives who have been or will be appointed by me/us.

You may deduct all EuroHelvetia TrustCo fees from balances held in my/our accounts.

Agreed.................................................

In the presence of.................................................

Date: ........ 08.04.11 .................................................

2 of 5

APP. 000878

Confidential pursuant to Securities Exchange Act s.24(d).            SEC-FINMA-P-0000596

5424078 1
475

# HOLD HARMLESS GUARANTEE

To      :      Directors of Epsom Trust S.A.
              P.O. Box 691
              1215 Geneva 15 - Airport
              Switzerland

In consideration of your agreeing to act as Trustee for ...... The ...... Kylemore ...... Trust

I (we jointly and severally)  Alina  Yaurovskaya

Of  4-22  Bolshakova  St.  Yekaterinburg,  Russia

Beneficial owner(s) of the above named trust hereby **UNDERTAKE AND AGREE** to hold you harmless from any liability, financial or otherwise, which you might incur in your capacity (ies) as

Directors and Officers

of Epsom Trust S.A., Trustees of ...... The ...... Kylemore ...... Trust ..............

for any reason whatsoever other than by reason of your own willful fraud or wrongdoing and I (we jointly and severally) **FURTHER UNDERTAKE AND AGREE** to give you all the assistance to ensure the smooth, swift and efficient flow of all related business.

SIGNED this  8th  day of  April , 2011

By the said:

                                        Signature

In the presence of ......

3 of 5

**APP. 000879**

Confidential pursuant to Securities Exchange Act s.24(d).

5424078 1
474

# HOLD HARMLESS GUARANTEE

To    :    EuroHelvetia TrustCo. S.A.
           P.O. Box 691
           1215 Geneva 15 - Airport
           Switzerland

In consideration of your agreeing to act as Directors of ....Kylemore....Corp.......

I (we jointly and severally) Alia Yourorskaya

of 4-22 Bolshakora St YeKaterinburg, Russia

Beneficial owner(s) of the above named Corporation hereby **UNDERTAKE AND AGREE** to hold you harmless from any liability, financial or otherwise, which you might incur in your capacity (ies) as:

Directors and Officers

of ...Kylemore....Corp..........................................................

for any reason whatsoever other than by reason of your own willful fraud or wrongdoing and I (we jointly and severally) **FURTHER UNDERTAKE AND AGREE** to give you all the assistance to ensure the smooth, swift and efficient flow of all related business.

SIGNED this 8ᵗʰ day of April, 2011

By the said:

In the presence of .............................

Signature

4 of 5

**APP. 000880**

Confidential pursuant to Securities Exchange Act s.24(d).                    SEC-FINMA-P-0000598

# Appendix

# Exhibit NNN

5424078 1
441

# THE KYLEMORE TRUST

**THIS DOCUMENT IS A DECLARATION OF TRUST** made on the 12th day of May, Two Thousand and Eleven between Epsom Trust S.A. of P.O. Box 556, Charlestown, Nevis, hereinafter called the "Original Trustee" and EuroHelvetia TrustCo. S.A. of World Trade Centre I, P.O. Box 691, CH-1215 Geneva 15, Switzerland hereinafter called the "Present Protector".

## WHEREAS

Two shares in Kylemore Corp; have been settled on the Original Trustee with the intent that it should make this Settlement.



## THIS DEED WITNESSETH AS FOLLOWS :

1. **DEFINITIONS**

   The following terms have the following meanings:

   (I)  The "Trustee" means the Original Trustee or the trustees or trustee for the time being of this Settlement.

   (II)  The "Protector" means the present Protector or protector for the time being appointed of this Settlement.

   (III)  The "Trust Fund" means :

       a)  The said two shares in Kylemore Corp;

       b)  All assets paid or transferred to and accepted by the Trustee in addition to the Trust Fund ;

       c)  The assets from time to time representing such shares and additions.



   (IV)  The "Vesting Day" means the day on which shall expire the period of eighty years from the date of this Settlement or such earlier day as the Trustee may at any time by Deed appoint.

   (V)  The "Beneficiaries" means :

       a)  The American Institute for Cancer Research, 1759 R. Street NW, Washington DC 2009;

       b)  Multiple Sclerosis Society of Great Britain and Northern Ireland, 25 Effie Road, Fulham, London SW6 IEE;

       c)  Such person or persons as the Trustee with the prior written approval of the Protector may by Deed appoint.

The Kylemore Trust-2870

**APP. 000882**

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0000631

5424078 1
440

(VI)    Always provided that the Trustee with the prior written consent of the Protector may by Deed declare that any person or institutions shall cease to be Beneficiary without prejudice to any prior acts or appointments of capital or income already made.

(VII)   Excluded Persons means all and any persons specifies in the section 14 hereto;

### 2.   THE TRUSTEE

The Trustee shall stand possessed of the Trust Fund and the income thereof or any part of either upon such Trusts for the benefit of the Beneficiaries or any one or more of them exclusive of the other or others in such shares and in such proportions and subject to such terms and limitations and with and subject to such provisions for maintenance, education, or advancement or for accumulation of income during minority or for the purpose of raising a portion or portions of for forfeiture in the event of bankruptcy or otherwise and with such discretionary trusts and powers exercisable by such persons as the Trustee shall appoint from time to time by Deed or Deeds revocable or irrevocable executed before the Vesting Day.



### 3.   INCOME

(a)    The Trustee may accumulate the income or any part thereof and add such accumulations to the capital of the Trust Fund but with the power at any time to treat the accumulations already made, or any part thereof, as current income.

(b)    The Trustee may pay or apply the whole or any part of the income of the Trust Fund to or for the benefit of all or such one or more of the Beneficiaries in such proportions and in such manner the Trustee thinks fit.

### 4.   CAPITAL



(a)    The Trustee may with the prior written consent of the Protector from time to time pay or apply the whole or any part of or parts of the capital of the Trust Fund to or for the benefit of all or such one or more exclusively of the others or other of the Beneficiaries for the time being living and ascertained in such shares if more than one and in such manner as the Trustee shall think fit.

(b)    The Trustee shall stand possessed of the Trust Fund on the Vesting Day and (subject to any appointment made as aforesaid and to the provisions of the last preceding sub-clause) in trust as to income and capital for such of the Beneficiaries as shall then be living and ascertained or any one or more of them in such share as the Protector may prior to or upon the Vesting Day by writing appoint and subject to and in default of any such appointment as the Trustee shall in its discretion think fit.

(c)    Subject to the foregoing Trusts, the Trustee shall stand possessed of the Trust Fund and the income thereof in trust for such charitable purposes as the Trustee shall determine.

The Kylemore Trust-2870

- 2 -.

APP. 000883

5424078 1
439

5. **INVESTMENT**

The Trustee shall have the same full and unrestricted powers of investing and transposing investments in all respects as if it were absolutely entitled thereto beneficially, and shall in its absolute discretion invest any sums subject to the Trusts hereof as it thinks fit.

No Beneficiary shall be entitled as such Beneficiary to compel the Trustee to sell, realise or purchase any investment whether or not producing income.

6. **ADDITIONAL TRUSTEE POWERS**

The Trustee shall until the Vesting Day have the following additional powers :



(a) Power to allow the Trust Fund to remain in the actual state of investment as long as the Trustee may think fit and at any time sell, call in, or convert into money the investments or any part thereof.

(b) Power to charge or vary any investments for the time being forming part of the Trust Fund.

(c) Power to permit any person entitled to any interest in the Trust Fund in possession or not, whether vested or contingent, to reside in any dwelling or occupy any land or buildings or have custody and use of any chattels upon conditions as the Trustee thinks fit.

(d) Power to mortgage or charge the Trust Fund or any part thereof for any purpose as the Trustee thinks fit.

(e) Power to receive property of any kind by gift or by will or from any other Trust as additions to the Trust Fund.

(f) Power to take legal advice and opinions concerning any matter as the Trustee shall think fit.



(g) Power to employ and to pay at the expense of the Trust Fund any agents or advisors or bankers or brokers or other persons or firms as the Trustee shall think fit to transact any business or do any act.

(h) With the prior written consent of the Protector power to pay or transfer the whole or any part of the Trust Fund to the Trustee or Trustees for the time being of any other irrevocable settlement whereunder all or any of the Beneficiaries (and no other person) are Beneficiaries to be held by such Trustee or Trustees as an addition to the property comprised in such settlement, whether or not such settlement be governed by the laws of the Island of Bermuda.

(i) Power to promote, incorporate, acquire, operate, control, manage and carry on the running of any company or limited company for any purpose including the acquisition of the whole or any part of the Trust Fund. Power to retain all or any other rights and interests in any company for as long as they think fit notwithstanding any professional advice to the contrary.

The Kylemore Trust-2870

- 3 -.

**APP. 000884**

Confidential pursuant to Securities Exchange Act s.24(d).          SEC-FINMA-P-0000633

5424078 1
438

Power to not be bound or required to exercise control or to interfere in or become involved in the management, administration or conduct of any company or limited company, nor to exercise any voting or other rights. Power to leave the administration management and conduct of the business and affairs of any company to the directors, officers and other authorised persons and not be bound or required to supervise and to assume that any company is being managed and conducted honestly, competently and diligently, and not to be bound to seek proof of the accuracy or truthfulness of any information supplied to it.

7. **LOANS**

The Trustee may at any time lend moneys forming part or all of the Trust Fund either with or without any security to any Beneficiary for the time being or may make any property subject to the Trusts hereof available as security for any loan raised or to be raised by any such Beneficiary.



8. **BANKING**

The Trustee may at all times lodge liquid assets belonging to the Trust Fund with a bank of international standing but no Trustee shall be held liable for any loss or damage arising therefrom.

9. **DISCRETION**

No Trustee shall be held liable for any loss or damage occurring as a result of it concurring or refusing or failing to concur in any exercise of any discretion or power hereunder. Save in so far as the consent of the Protector is required, every discretion or power conferred on the Trustee is an absolute and uncontrolled discretion or power.

10. **LIABILITY**



The Trustee shall not be liable for any loss to the Trust Fund arising by reason of any improper investments made in good faith or in consequence of the failure, depreciation or loss of any investment made in good faith, or for the negligence or fraud of any agent employed in good faith by the Trustee, or by reason of any other matter or thing except the willful and individual fraud or wrong-doing on the part of the Trustee who is sought to be made liable.

11. **TERMS**

Any corporate Trustee hereof including the Original Trustee may as such Trustee act on its terms and conditions including the right to remuneration in force at the date hereof or as amended from time to time.

The Kylemore Trust-2870

- 4 -

APP. 000885

5424078 1
437

12. **TAXATION**

In the event of taxation of any kind becoming payable by the Trustee in respect of the Trust Fund or any part thereof the Trustee may pay such taxation of the Trust Fund at its complete discretion.

13. **SECRECY**

The Trustee shall not except under compulsion of law or otherwise subject to the prior written consent of the Protector divulge or disclose to any tax or fiscal authority any information relating to the Trust Fund, the assets thereof or Beneficiaries hereunder.

14. **EXCLUDED PERSONS**



The following personas are excluded from being appointed as beneficiaries:

i.      The Protector
ii.     The Trustees
iii.    The Spouse of the Protector and the Spouse of the Trustees
iv.     Any persons from whom the trustees shall at any time during the Trust Period accept money investments or property as part of the Trust Fund.
v.      The Spouse of any persons referred to in (iv) above
vi.     Any person who is held to be a settlor of the trust
vii.    The spouse of any persons referred to in (vi) above.

15. **THE PROTECTOR**



The Protector may at any time by instrument in writing irrevocably appoint any individual or company to be the next succeeding Protector, and if such individual or company consents in writing such individual or company forthwith becomes the next succeeding Protector.

The Protector shall be entitled to be reimbursed reasonable expenses.

16. **THE TRUSTS**

The Trusts hereby created shall be irrevocable.

17. **TRUSTEES**

The power to remove Trustees and appoint new or additional Trustees shall be vested in the Protector for the time being hereof. The Protector shall exercise such power by simple notice in writing addressed by registered mail to the current Trustees.

The Kylemore Trust-2870

- 5 -.

APP. 000886

Confidential pursuant to Securities Exchange Act s.24(d).                    SEC-FINMA-P-0000635

5424078 1
436

18.   **LAW**

This Declaration of Trust shall be construed according to and governed by the law of the Island of Bermuda which is hereby declared to be the proper law applicable hereto. The proper law of this Settlement may be changed by the Trustee with the prior written approval of the Protector.

The place of administration of the Trusts hereof shall be determined by the Trustee from time to time.

All disputes, proceedings, litigation or summons for discretions brought by any person whatsoever in connection with the Trusts hereof shall be heard before the Courts of the Island of Bermuda who shall be the sole courts of competent jurisdiction provided the proper law of this Trust is not changed under this clause in which event the courts of that jurisdiction shall be solely competent.

**IN WITNESS WHEREOF** the parties hereto have hereunto caused common seals to be affixed.

**THE COMMON SEAL OF EPSOM TRUST S.A. WAS HEREUNTO AFFIXED IN THE PRESENCE OF :**

------------------------
Director

------------------------
Secretary

**THE COMMON SEAL OF EUROHELVETIA TRUSTCO. S.A. WAS HEREUNTO AFFIXED IN THE PRESENCE OF:**

------------------------
Director

------------------------
Secretary

The Kylemore Trust-2870

- 6 -

WE HEREBY CERTIFY THAT THIS IS A TRUE COPY OF THE ORIGINAL DOCUMENT

**APP. 000887**

Confidential pursuant to Securities Exchange Act s.24(d).

# Appendix

# Exhibit OOO

5424078 1
426

# ARTICLES OF INCORPORATION

## OF

### KYLEMORE CORP.

## PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of forming a corporation pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.   The name of the Corporation shall be:

### KYLEMORE CORP.

B.   The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act.

C.   The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960. The name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.   The aggregate number of shares of stock that the Corporation is authorized to issue is Two (2) registered shares with a par value of One U.S. Dollar (US$1.00) per share.

E.   The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.



REGISTRAR OF CORPORATIONS
FILED
May 12, 2011
REPUBLIC OF THE MARSHALL ISLANDS

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0000646

# Appendix

# Exhibit PPP

5424078 1
462

Intitulé/numéro de compte : 18998

### CBH Compagnie Bancaire Helvétique SA

T

| | |
|---|---|
| Kylemore Corp. | |
| Trust Company Complex | |
| Ajeltake Road, Ajeltake Island | |
| MH96960, Majuro, Marshall Islands | |

## Déclaration lors de l'ouverture d'un compte/dépôt en cas de groupements de personnes ou d'entités patrimoniales pour lesquels il n'existe pas d'ayant droit économique déterminé



Conformément au ch. 43 de la Convention relative à l'obligation de diligence des banques (CDB 08), le/les soussigné(s), en leur qualité de trustee, membre du conseil de la fondation ou membre du conseil d'administration de la société sous-jacente appartenant au trust ou à la fondation, etc. portant le nom de

The Kylemore Trust

donne(ent) à la banque, en sa/leur qualité et à sa/leur meilleure connaissance, les informations suivantes :

1. Informations relatives au trust, à la fondation, etc. :

    Type d'entité (trust, fondation, etc) : Trust

    ☒ Discrétionnaire

    *ou*

    ☐ Non discrétionnaire

2. Informations relatives au(x) settlor(s) (effectif(s) et non pas fiduciaire(s)) :

    Nom(s), prénom(s) : FARMER, Andrew

    Date(s) de naissance : 04.07.1978

    Nationalité(s) : American

    Adresse(s) de domicile, Etat(s) : 5005, Hidalgo Street, Unit 619, Houston, Texas 77056

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0000610

5424078 1
461

Intitulé/numéro de compte : <u>18998</u>

## CBH Compagnie Bancaire Helvétique SA

T

3. Informations relatives à la/aux personne(s) qui est/sont le/les premier(s) bénéficiaire(s), ou au(x) groupe(s) de personnes pouvant entrer en ligne de compte comme bénéficiaires (par ex. « membres de la famille du settlor »), lorsqu'il n'existe pas d'ayant droit économique déterminé fiduciaire(s)) :

Nom(s), prénom(s) : <u>YUROVSKAYA, Alina</u>

Date(s) de naissance : <u>████.1987</u>

Nationalité(s) : <u>Russian</u>

Adresse(s) de domicile, Etat(s) : <u>4-22 Bolshakova Street, Apmt 92 Yekaterinburg, Russia</u>

Nom(s), prénom(s) : _____

Date(s) de naissance : _____

Nationalité(s) : _____

Adresse(s) de domicile, Etat(s) : _____

Nom(s), prénom(s) : _____

Date(s) de naissance : _____

Nationalité(s) : _____

Adresse(s) de domicile, Etat(s) : _____

4. Informations relatives au(x) protector(s) et/ou aux tiers au bénéfice d'un pouvoir de nomination ou de désignation, pour autant que ce pouvoir permette d'exiger des représentants (trustees, membres du conseil de la fondation, etc.) qu'ils disposent des valeurs ou qu'ils modifient l'attribution des valeurs ou la désignation des bénéficiaires :

Nom(s), prénom(s) : <u>EuroHelvetia TrustCo S.A.</u>

Date(s) de naissance : <u>09.02.1977</u>

Nationalité(s) : <u>Swiss</u>

Adresse(s) de domicile, Etat(s) : <u>Rte. de l'Aeroport 10, WTC 1, 1215, Geneva</u>

Le(s) soussigné(s) confirme(nt) qu'il(s) est/sont autorisé(s) à ouvrir un compte/dépôt auprès de la banque pour le trust/la fondation, etc.

Le/les soussigné(s) s'engage(nt) à communiquer spontanément les modifications à la banque.

Date
15.07.11

Signature(s)

Le fait de remplir intentionnellement ce formulaire de manière erronée est punissable (Art. 251 du Code pénal suisse, faux dans les titres ; peine privative de liberté jusqu'à 5 ans ou peine pécuniaire).

Confidential pursuant to Securities Exchange Act s.24(d).

# Appendix

# Exhibit QQQ

5424078 2
823



# EuroHelvetia TrustCo S.A.

### GENEVA

## ACCOUNT OPENING FORMS

CLIENT      OLGA  TIKHONOVA

REFERENCE      TAO/ 388

DATE      08.04.11

1 of 5

APP. 000894

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0000973

5424078 2
822

Further to our initial meeting and your subsequent proposal, I/We,

Olga Tikhonova ......................................... request EuroHelvetia TrustCo. to open on my/our behalf, the following structures :

☑ **Offshore corporation registered in:** Marshall Islands

    **Name of corporation:** Hillsmere S.A.

☐ **Trust set up under the laws of** Bermuda

    **Name of trust:** The Hillsmere Trust

☑ **Bank account with:** CBH

☐ **Brokerage accounts with:** ...........................................................
(tick where appropriate)

Please accept my/our telephone, fax, email or safemessage instructions, without a reference number, and carry them out even when not confirmed in writing.

I/We assume All risks and especially those caused by a transmission error or misunderstanding as a result of this method of communication and including any genuine mistake on your part concerning my/our identity. We release you from all responsibility in this respect.

I/We acknowledge that no documentation, account information etc will be mailed, faxed, emailed or delivered out in any way, to me/us, without my/our written request to do so. My/Our client administration file will be maintained at the offices of EuroHelvetia TrustCo S.A. This file, containing account records and correspondence, will be made available for my/our review, at the offices of EuroHelvetia TrustCo S.A., on reasonable notice.

You may invoke these instructions and releases in relation to me/us and all representatives who have been or will be appointed by me/us.

You may deduct all EuroHelvetia TrustCo fees from balances held in my/our accounts.

Agreed....................................................

In the presence of....................................................

Date: 08.04.11

2 of 5

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0000974

5424078 2
821

# HOLD HARMLESS GUARANTEE

To   :    Directors of Epsom Trust S.A.
P.O. Box 691
1215 Geneva 15 - Airport
Switzerland

In consideration of your agreeing to act as Trustee for ... *Hilsmere Trust*

I (we jointly and severally) *Olga Tukhonora*

of ... *Ann Bychkovoy St. App 10, Yekaterinburg, Russia*

Beneficial owner(s) of the above named trust hereby **UNDERTAKE AND AGREE** to hold you harmless from any liability, financial or otherwise, which you might incur in your capacity (ies) as

Directors and Officers

of Epsom Trust S.A., Trustees of ... *The Hilsmere Trust* ...

for any reason whatsoever other than by reason of your own willful fraud or wrongdoing and I (we jointly and severally) **FURTHER UNDERTAKE AND AGREE** to give you all the assistance to ensure the smooth, swift and efficient flow of all related business.

SIGNED this *8th* day of *April, 2011*

By the said:

                                               Signature

In the presence of: ...

3 of 5

Confidential pursuant to Securities Exchange Act s.24(d).        SEC-FINMA-P-0000975

5424078 2
820

# HOLD HARMLESS GUARANTEE

To   :     EuroHelvetia TrustCo. S.A.
           P.O. Box 691
           1215 Geneva 15 - Airport
           Switzerland

In consideration of your agreeing to act as Directors of .... Hülsmere ....... S.A. .

I (we jointly and severally) *Olga Tikhonova*



of *Ana Bychkovoy St. App 10, Yekaterinburg, Russia*

Beneficial owner(s) of the above named Corporation hereby **UNDERTAKE AND AGREE** to hold you harmless from any liability, financial or otherwise, which you might incur in your capacity (ies) as:

Directors and Officers

of .... Hülsmere ...... S.A. ..................................................................

for any reason whatsoever other than by reason of your own willful fraud or wrongdoing and I (we jointly and severally) **FURTHER UNDERTAKE AND AGREE** to give you all the assistance to ensure the smooth, swift and efficient flow of all related business.



SIGNED this *8th* day of *April, 2011*

By the said:

                                       _____
                                       Signature

In the presence of:.......................................

APP. 000897

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0000976

# Appendix

# Exhibit RRR

APP. 000898

5424078 2
767

## THE HILLSMERE TRUST

**THIS DOCUMENT IS A DECLARATION OF TRUST** made on the 12th day of May, Two Thousand and Eleven between Epsom Trust S.A. of P.O. Box 556, Charlestown, Nevis, hereinafter called the "Original Trustee" and EuroHelvetia TrustCo. S.A. of World Trade Centre I, P.O. Box 691, CH-1215 Geneva 15, Switzerland hereinafter called the "Present Protector".

### WHEREAS

Two shares in Hillsmere S.A; have been settled on the Original Trustee with the intent that it should make this Settlement.

### THIS DEED WITNESSETH AS FOLLOWS :



1.  **DEFINITIONS**

    The following terms have the following meanings:

    (I)   The "Trustee" means the Original Trustee or the trustees or trustee for the time being of this Settlement.

    (II)  The "Protector" means the present Protector or protector for the time being appointed of this Settlement.

    (III) The "Trust Fund" means :

    a)    The said two shares in Hillsmere S.A;

    b)    All assets paid or transferred to and accepted by the Trustee in addition to the Trust Fund ;

    c)    The assets from time to time representing such shares and additions.



    (IV)  The "Vesting Day" means the day on which shall expire the period of eighty years from the date of this Settlement or such earlier day as the Trustee may at any time by Deed appoint.

    (V)   The "Beneficiaries" means :

    a)    The American Institute for Cancer Research, 1759 R. Street NW, Washington DC 2009;

    b)    Multiple Sclerosis Society of Great Britain and Northern Ireland, 25 Effie Road, Fulham, London SW6 1EE;

    c)    Such person or persons as the Trustee with the prior written approval of the Protector may by Deed appoint.

The Hillsmere Trust-2869

**APP. 000899**

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0001029

5424078 2
766

(VI)    Always provided that the Trustee with the prior written consent of the Protector may by Deed declare that any person or institutions shall cease to be Beneficiary without prejudice to any prior acts or appointments of capital or income already made.

(VII)    Excluded Persons means all and any persons specifies in the section 14 hereto;

## 2.    THE TRUSTEE



The Trustee shall stand possessed of the Trust Fund and the income thereof or any part of either upon such Trusts for the benefit of the Beneficiaries or any one or more of them exclusive of the other or others in such shares and in such proportions and subject to such terms and limitations and with and subject to such provisions for maintenance, education, or advancement or for accumulation of income during minority or for the purpose of raising a portion or portions of for forfeiture in the event of bankruptcy or otherwise and with such discretionary trusts and powers exerciseable by such persons as the Trustee shall appoint from time to time by Deed or Deeds revocable or irrevocable executed before the Vesting Day.

## 3.    INCOME

(a)    The Trustee may accumulate the income or any part thereof and add such accumulations to the capital of the Trust Fund but with the power at any time to treat the accumulations already made, or any part thereof, as current income.

(b)    The Trustee may pay or apply the whole or any part of the income of the Trust Fund to or for the benefit of all or such one or more of the Beneficiaries in such proportions and in such manner the Trustee thinks fit.

## 4.    CAPITAL



(a)    The Trustee may with the prior written consent of the Protector from time to time pay or apply the whole or any part of or parts of the capital of the Trust Fund to or for the benefit of all or such one or more exclusively of the others or other of the Beneficiaries for the time being living and ascertained in such shares if more than one and in such manner as the Trustee shall think fit.

(b)    The Trustee shall stand possessed of the Trust Fund on the Vesting Day and (subject to any appointment made as aforesaid and to the provisions of the last preceding sub-clause) in trust as to income and capital for such of the Beneficiaries as shall then be living and ascertained or any one or more of them in such share as the Protector may prior to or upon the Vesting Day by writing appoint and subject to and in default of any such appointment as the Trustee shall in its discretion think fit.

(c)    Subject to the foregoing Trusts, the Trustee shall stand possessed of the Trust Fund and the income thereof in trust for such charitable purposes as the Trustee shall determine.

The Hillsmere Trust-2869

- 2 -.

**APP. 000900**

Confidential pursuant to Securities Exchange Act s.24(d).        SEC-FINMA-P-0001030

5424078 2
765

## 5. INVESTMENT

The Trustee shall have the same full and unrestricted powers of investing and transposing investments in all respects as if it were absolutely entitled thereto beneficially, and shall in its absolute discretion invest any sums subject to the Trusts hereof as it thinks fit.

No Beneficiary shall be entitled as such Beneficiary to compel the Trustee to sell, realise or purchase any investment whether or not producing income.

## 6. ADDITIONAL TRUSTEE POWERS

The Trustee shall until the Vesting Day have the following additional powers :



(a) Power to allow the Trust Fund to remain in the actual state of investment as long as the Trustee may think fit and at any time sell, call in, or convert into money the investments or any part thereof.

(b) Power to charge or vary any investments for the time being forming part of the Trust Fund.

(c) Power to permit any person entitled to any interest in the Trust Fund in possession or not, whether vested or contingent, to reside in any dwelling or occupy any land or buildings or have custody and use of any chattels upon conditions as the Trustee thinks fit.

(d) Power to mortgage or charge the Trust Fund or any part thereof for any purpose as the Trustee thinks fit.

(e) Power to receive property of any kind by gift or by will or from any other Trust as additions to the Trust Fund.

(f) Power to take legal advice and opinions concerning any matter as the Trustee shall think fit.



(g) Power to employ and to pay at the expense of the Trust Fund any agents or advisors or bankers or brokers or other persons or firms as the Trustee shall think fit to transact any business or do any act.

(h) With the prior written consent of the Protector power to pay or transfer the whole or any part of the Trust Fund to the Trustee or Trustees for the time being of any other irrevocable settlement whereunder all or any of the Beneficiaries (and no other person) are Beneficiaries to be held by such Trustee or Trustees as an addition to the property comprised in such settlement, whether or not such settlement be governed by the laws of the Island of Bermuda.

(i) Power to promote, incorporate, acquire, operate, control, manage and carry on the running of any company or limited company for any purpose including the acquisition of the whole or any part of the Trust Fund. Power to retain all or any other rights and interests in any company for as long as they think fit notwithstanding any professional advice to the contrary.

The Hillsmere Trust-2869

APP. 000901

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0001031

5424078 2
764

Power to not be bound or required to exercise control or to interfere in or become involved in the management, administration or conduct of any company or limited company, nor to exercise any voting or other rights. Power to leave the administration management and conduct of the business and affairs of any company to the directors, officers and other authorised persons and not be bound or required to supervise and to assume that any company is being managed and conducted honestly, competently and diligently, and not to be bound to seek proof of the accuracy or truthfulness of any information supplied to it.

### 7. LOANS

The Trustee may at any time lend moneys forming part or all of the Trust Fund either with or without any security to any Beneficiary for the time being or may make any property subject to the Trusts hereof available as security for any loan raised or to be raised by any such Beneficiary.



### 8. BANKING

The Trustee may at all times lodge liquid assets belonging to the Trust Fund with a bank of international standing but no Trustee shall be held liable for any loss or damage arising therefrom.

### 9. DISCRETION

No Trustee shall be held liable for any loss or damage occurring as a result of it concurring or refusing or failing to concur in any exercise of any discretion or power hereunder. Save in so far as the consent of the Protector is required, every discretion or power conferred on the Trustee is an absolute and uncontrolled discretion or power.

### 10. LIABILITY

The Trustee shall not be liable for any loss to the Trust Fund arising by reason of any improper investments made in good faith or in consequence of the failure, depreciation or loss of any investment made in good faith, or for the negligence or fraud of any agent employed in good faith by the Trustee, or by reason of any other matter or thing except the willful and individual fraud or wrong-doing on the part of the Trustee who is sought to be made liable.

### 11. TERMS

Any corporate Trustee hereof including the Original Trustee may as such Trustee act on its terms and conditions including the right to remuneration in force at the date hereof or as amended from time to time.

The Hillsmere Trust-2869

- 4 -.



**APP. 000902**

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0001032

5424078 2
763

**12.  TAXATION**

In the event of taxation of any kind becoming payable by the Trustee in respect of the Trust Fund or any part thereof the Trustee may pay such taxation of the Trust Fund at its complete discretion.

**13.  SECRECY**

The Trustee shall not except under compulsion of law or otherwise subject to the prior written consent of the Protector divulge or disclose to any tax or fiscal authority any information relating to the Trust Fund, the assets thereof or Beneficiaries hereunder.

**14.  EXCLUDED PERSONS**



The following personas are excluded from being appointed as beneficiaries:

i.    The Protector
ii.   The Trustees
iii.  The Spouse of the Protector and the Spouse of the Trustees
iv.   Any persons from whom the trustees shall at any time during the Trust Period accept money investments or property as part of the Trust Fund.
v.    The Spouse of any persons referred to in (iv) above
vi.   Any person who is held to be a settlor of the trust
vii.  The spouse of any persons referred to in (vi) above.

**15.  THE PROTECTOR**

The Protector may at any time by instrument in writing irrevocably appoint any individual or company to be the next succeeding Protector, and if such individual or company consents in writing such individual or company forthwith becomes the next succeeding Protector.

The Protector shall be entitled to be reimbursed reasonable expenses.

**16.  THE TRUSTS**

The Trusts hereby created shall be irrevocable.

**17.  TRUSTEES**

The power to remove Trustees and appoint new or additional Trustees shall be vested in the Protector for the time being hereof. The Protector shall exercise such power by simple notice in writing addressed by registered mail to the current Trustees.

The Hillsmere Trust-2869

- 5 -

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0001033

# Appendix

# Exhibit SSS

5424078 2
-809

## ARTICLES OF INCORPORATION

OF

### HILLSMERE S.A.

#### PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of forming a corporation pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.    The name of the Corporation shall be:

#### HILLSMERE S.A.



B.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960. The name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.    The aggregate number of shares of stock that the Corporation is authorized to issue is Two (2) registered shares with a par value of One U.S. Dollar (US$1.00) per share.

E.    The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.



REGISTRAR OF CORPORATIONS
FILED
May 12, 2011
REPUBLIC OF THE MARSHALL ISLANDS

APP. 000905

Confidential pursuant to Securities Exchange Act s.24(d).                    SEC-FINMA-P-0000987

5424078 2
808

F.   The name and address of the incorporator is:

Name                            Post Office Address

Majuro Nominees Ltd.            P.O. Box 1405
                                Majuro
                                Marshall Islands

G.   The Board of Directors as well as the shareholders of
     the Corporation shall have the authority to adopt, amend
     or repeal the bylaws of the Corporation.

H.   Corporate existence shall begin upon filing these
     Articles of Incorporation with the Registrar of
     Corporations as of the filing date stated on these
     Articles.

     IN WITNESS WHEREOF, I have executed this instrument on
May 12, 2011.

                         Majuro Nominees Ltd.
                         Incorporator

                         by: _____



REGISTRAR OF CORPORATIONS
FILED
May 12, 2011
REPUBLIC OF THE MARSHALL ISLANDS

**APP. 000906**

Confidential pursuant to Securities Exchange Act s.24(d).          SEC-FINMA-P-0000988

# Appendix

# Exhibit TTT

APP. 000907

5424078 2
758

Intitulé/numéro de compte : __18999__

## CBH Compagnie Bancaire Helvétique SA

T

3. Informations relatives à la/aux personne(s) qui est/sont le/les premier(s) bénéficiaire(s), ou au(x) groupe(s) de personnes pouvant entrer en ligne de compte comme bénéficiaires (par ex. « membres de la famille du settlor »), lorsqu'il n'existe pas d'ayant droit économique déterminé fiduciaire(s)) :

Nom(s), prénom(s) : __TIKHONOVA, Olga__

Date(s) de naissance : __████ 1989__

Nationalité(s) : __Russian__

Adresse(s) de domicile, Etat(s) : __Ann Bychkovoy Street, App #10, Yekaterinburg, Russia__



Nom(s), prénom(s) : _____

Date(s) de naissance : _____

Nationalité(s) : _____

Adresse(s) de domicile, Etat(s) : _____

Nom(s), prénom(s) : _____

Date(s) de naissance : _____

Nationalité(s) : _____

Adresse(s) de domicile, Etat(s) : _____

4. Informations relatives au(x) protector(s) et/ou aux tiers au bénéfice d'un pouvoir de nomination ou de désignation, pour autant que ce pouvoir permette d'exiger des représentants (trustees, membres du conseil de la fondation, etc.) qu'ils disposent des valeurs ou qu'ils modifient l'attribution des valeurs ou la désignation des bénéficiaires :

Nom(s), prénom(s) : __EuroHelvetia TrustCo S.A.__

Date(s) de naissance : __09.02.1977__

Nationalité(s) : __Swiss__

Adresse(s) de domicile, Etat(s) : __Rte. de l'Aeroport 10, WTC 1, 1215, Geneva__

Le(s) soussigné(s) confirme(nt) qu'il(s) est/sont autorisé(s) à ouvrir un compte/dépôt auprès de la banque pour le trust/la fondation, etc.

Le/les soussigné(s) s'engage(nt) à communiquer spontanément les modifications à la banque.

Date
15.07.11

Signature(s)

Le fait de remplir intentionnellement ce formulaire de manière erronée est punissable (Art. 251 du Code pénal suisse, faux dans les titres ; peine privative de liberté jusqu'à 5 ans ou peine pécuniaire).

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0001038

5424078 2
757

Demande d'ouverture de compte.

---

## Profil Client

N° Compte réservé: 18999          Intitulé du Compte prévu : Hillsmere S.A.

☐  Titulaire

☐  Ayant Droit Economique

☐  Fondé de procuration et/ou titulaire d'une carte de crédit

(veuillez cocher la/les case(s) appropriée(s))

---

### ● Données générales (personne morale)

Raison sociale: Hillsmere S.A.

Juridiction d'incorporation: Marshall Islands               Date d'incorporation: 12.05.2011

Le titulaire est-il une "US Person" ? : ☐ Oui     ☐ Non

Adresse du siège: ▓▓▓▓

Organe de contrôle: ▓▓▓▓

Téléphone : + ▓▓▓▓          Site Web: ▓▓▓▓

Téléfax : + ▓▓▓▓          E-mail : ▓▓▓▓

Les locaux de l'entreprise ont-ils été visités? ☐ Oui     ☐ Non

Nom des principaux actionnaires et participation(s) (%)

The Hillsmere Trust 100%

Chiffre d'affaire du dernier exercice: ▓▓▓▓
(Joindre un rapport si la société a une activité commerciale)

Secteur d'activité: ▓▓▓▓

Nombre d'employés:

Origine des fonds:

Funds will be transferred through 18968 approx 20k initially to start off the account, which will be in the form of a loan. Which they will deal with between them personally.

---

### ● Données personnelles (si personne physique)

Nom : TIKHONOVA          Prénom : Olga

Adresse (fournir une preuve du domicile si le pays de la nationalité n'est pas idem au pays du domicile):
105, Ann Bychkovoy Street, apartment #10

Code postal:          Ville:Yekaterinburg          Pays:Russia          Nationalité :Russian

Date de Naissance : 17.10.1989          Passeport N° :▓▓▓7647

Téléphone : +079028753531          Mobile : +

Téléfax : +          E-mail :          Site Web de la société:▓▓▓▓

1

APP. 000909

Confidential pursuant to Securities Exchange Act s.24(d).          SEC-FINMA-P-0001039

# Appendix

# Exhibit UUU

APP. 000910

5424078 2
824

## Due diligence questionnaire

**Personal information**

Surname: ...T.I.K.H.O.N.O.V.A......... First name(s): ...O.L.G.A...................

Legal address: ...A.N.N.Y....By.ch.k.o.v.a.y.....s.t.r......1.0.-.1.0.5...............

...R.u.s.s.i.a......Y.e.k.a.t.e.r.i.n.b.u.r.g...........................

Telephone number: ...7.9.0.2.8.7.5.3.5.3.1... Fax number: ..........................................

Mobile number: ............................... E-mail: ........................................................

Nationality: ...R.u.s.s.i.a.N............. Passport number: ~~XXXXXX~~76.47.........

Date of birth: ~~XXXX~~.1.9.8.9....... Profession: ...Ballroom..Dancer...........

_____

Marital status: ...single...............

Name of spouse: ........N./A............. Date of birth: .....~~XXXX~~.19.89.........

Number of children: ......N/A........... Name(s) of children: ........N/A...........

_____

**Financial situation**

Personal net worth: $1.,.000.,.000..USD.....................................................

Estimated annual income: ...$.2.50.,.000..USD.......................................

Source of funds to be under administration: ...funds.....coming...from........

A. Farmer. to. start. in. the. form. of. a. loan. Assets. acquired.
through. work. as. a. professional. dancer.

Anticipated activity for funds under administration: ...................................

...Investments...and..Trading....in..North.American.Markets.

Do you have a criminal record ....N.O..... (If yes please supply details)

Are you being or have you ever been investigated by any regulatory authority (SEC, BCSC, FSA or similar).....N.O..................... (If yes please supply details)

Client signature: .............................. Date: ...08th April 2011...........

In the presence of ...........................

2




**APP. 000911**

Confidential pursuant to Securities Exchange Act s.24(d).

# Appendix

# Exhibit VVV

5424078 1
478

# Due diligence questionnaire

**Personal information**

Surname: _Yurovskaya_ .............   First name(s): _Alina_ ..........

Legal address: _Yekaterinburg., Bdshakera st. 22/4-92_
.............. _Russia._ .............................................

Telephone number: _79221717165_   Fax number: ..........................

Mobile number: _079221717165_   E-mail: _alina-re@mail.ru_

Nationality: _Russian_ ...........   Passport number: ▓▓▓▓▓_329S_

Date of birth: ▓▓▓▓_.87_ ...........   Profession: _VICE PRESIDENT OF INTERNATIONAL_
_SALES_

Marital status: _SINGLE_ ...........

Name of spouse: _N/A_ ............   Date of birth: ▓▓▓▓▓_1987_ .......

Number of children: _N/A_ ......   Name(s) of children: _N/A_ .........

.................................................................................

**Financial situation**

Personal net worth: _$ 1 million_ .......................................

Estimated annual income: _$ 250,000_ ....................................

Source of funds to be under administration: .................................

.................................................................................

Anticipated activity for funds under administration: _Investments & trading_
_in North American markets_

Do you have a criminal record: _No_ .......... (If yes please supply details)

Are you being or have you ever been investigated by any regulatory authority (SEC,
BCSC, FSA or similar).......... _No_ ............... (If yes please supply details)

Client signature: _[signature]_ ...........   Date: _08.04.11_ ............

In the presence of ..... _[signature]_

2

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-FINMA-P-0000594

# Appendix

# Exhibit WWW

**DUPLICATE COPY**

ANDREW FARMER                                        Account Ending 3-03005                                      p. 18/24

| Detail Continued |
|---|

** Foreign currency charges subject to a conversion fee equal to 2.7%
of the converted US dollar amount. See page 2 for details.

| | | | | Foreign Spend | Amount |
|---|---|---|---|---|---|
| 03/30/11 | ST.LUKE'S SL INTERNESUGARLAND | | TX | | $3,600.00 |
| | 8323552757 | | | | |
| | Description | Price | | | |
| | HOSPITAL | $3,600.00 | | | |
| 03/30/11 | CVS 3177 03177   HOUSTON | | TX | | $48.93 |
| | DRUG STORE/PHARMACY | | | | |
| 03/31/11 | RICE VILLAGE # 11 80HOUSTON | | TX | | $14.42 |
| | 7139427081 | | | | |
| 03/31/11 | MENS WEARHOUSE 10270HOUSTON | | TX | | $107.24 |
| | DRY CLEANER | | | | |
| 03/31/11 | LOEHMANN'S - #123 00HEDWIG VILLAG | | TX | | $23.37 |
| | WOMEN'S CLOTHING | | | | |
| | Description | | | | |
| | CLOTHING | | | | |

| 04/01/11 | AEROFLOT RUSSIAN AIRUSA | | | | | $677.30 |
|---|---|---|---|---|---|---|
| | AEROFLOT | | | | | |
| | From: | To: | | Carrier: | Class: | |
| | EKATERINBURG | MOSCOW SHEREMETYEV | | SU | L | |
| | | GENEVA | | SU | L | |
| | | MOSCOW SHEREMETYEV | | SU | V | |
| | | EKATERINBURG | | SU | V | |
| | Ticket Number: 55579699468252 | | Date of Departure: 04/01 | | | |
| | Passenger Name: YUROVSKAYA/ALINA | | | | | |
| | Document Type: PASSENGER TICKET | | | | | |

| 04/01/11 | AEROFLOT RUSSIAN AIRUSA | | | | | $677.30 |
|---|---|---|---|---|---|---|
| | AEROFLOT | | | | | |
| | From: | To: | | Carrier: | Class: | |
| | EKATERINBURG | MOSCOW SHEREMETYEV | | SU | L | |
| | | GENEVA | | SU | L | |
| | | MOSCOW SHEREMETYEV | | SU | V | |
| | | EKATERINBURG | | SU | V | |
| | Ticket Number: 55579699468241 | | Date of Departure: 04/01 | | | |
| | Passenger Name: TIKHONOVA/OLGA | | | | | |
| | Document Type: PASSENGER TICKET | | | | | |

| 04/01/11 | NORDSTROM 730 0730  HOUSTON | | TX | | $246.70 |
|---|---|---|---|---|---|
| | DEPARTMENT STORE | | | | |
| | Description | | | | |
| | SM LEATHR GOODS | | | | |
| 04/01/11 | EXPEDIA*136380601243800-397-3342 | | WA | | $2,967.92 |
| | 425-564-7290 | | | | |
| 04/01/11 | RUDY'S SPRING #208 0SPRING | | TX | | $37.82 |
| | 5122630929 | | | | |
| | Description | | | | |
| | RESTAURANT CHARGES | | | | |
| 04/01/11 | VICTORIA'S SECRET STHOUSTON | | TX | | $27.61 |
| | 7136228007 | | | | |
| 04/02/11 | Hilton Skyline GrillHouston | | TX | | $1,026.00 |
| | (713)577-6006 | | | | |
| 04/02/11 | ROYAL CARRIAGE LIMOUHOUSTON | | TX | | $250.00 |
| | TAXICAB & LIMOUSINE | | | | |
| 04/03/11 | M SALON M SALON   HOUSTON | | TX | | $100.00 |
| | BEAUTY/BARBER SHOP | | | | |

Continued on next page

SEC-AMEX-P-0000119

# Appendix

# Exhibit XXX

**To:**       David M. Loev[dloev@loevlaw.com]
**Cc:**       john@loevlaw.com[john@loevlaw.com]
**From:**     Andrew Farmer
**Sent:**     Tue 3/13/2012 2:23:15 PM
**Importance:**         Normal
**Subject:**  Re: Updated Chimera 10-Q/A

Approved to file.

Thanks,

Andrew Farmer
Iridium Capital Limited
(832) 364-6317
(832) 553-3080 Fax
(619) 247-2680 Cell

On 3/13/12 12:08 PM, "David M. Loev" <dloev@loevlaw.com> wrote:

>Andrew,
>
>See amended 10Q for review and approval for filing.  We added XBRL
>information to the exhibit table and put 10-Q/A Amendment No. 1 to cover
>page.
>
>Regards,
>
>David M. Loev
>The Loev Law Firm, PC
>6300 West Loop South
>Suite 280
>Bellaire, Texas 77401
>(713) 524-4110 – phone
>(713) 524-4122 – fax
>(713) 920-9372 – efax
>dloev@loevlaw.com
>http://www.loevlaw.com

SEC-LoevD-E-0001736

# Appendix

# Exhibit YYY

**To:**       Alyssa Vasquez[alyssa@loevlaw.com]
**Cc:**       David Loev[dloev@loevlaw.com]; Charles Grob[cgrob@chimeraenergyusa.com]
**From:**     Andrew Farmer
**Sent:**     Fri 7/27/2012 12:28:53 PM
**Importance:**       **Normal**
**Subject:**  Chimera Energy Corp
<u>CHMR - China Inland Oil Option - 7.26.12.docx</u>

Alyassa,

Please prep the attached agreement for edgar filing. I am finalizing the 8-k now.

Let me know ASAP if there is an issue with the Chinese characters.

Thanks,

Andrew Farmer

**Iridium Capital Limited**

(832) 364-6317

(832) 553-3080 Fax

(619) 247-2680 Cell

SEC-LoevD-E-0002210

## LICENSE AGREEMENT
## 许可证协议

Agreement made, effective as of July 26, 2012, by and between Chimera Energy Corp of the USA, here referred to as licensee, and China Inland Oil Exploration Company of Chencunzhen, Guangdong Province, China, here referred to as licensor.

该协议由美国 Chimera 能源公司（这里称为被许可方）与中国广东省陈村镇中国大陆

石油勘探公司（这里称为许可方）签署，生效日期为 2012 年 7 月 26 号。

In consideration of the mutual promises contained in this agreement, the parties agree as follows:
考虑到该协议中彼此间的承诺，双方达成以下协议：

### SECTION ONE.
### 第一部分

#### GRANT OF LICENSE; DESCRIPTION OF PROCEDURE
#### 颁发许可证；流程描述

Licensor grants to licensee a license, subject to all of the terms and conditions of this agreement, the right to institute the development and use of materials, ideas, directions and all associated Intellectual Property associated with: *The exclusive use, development rights, modifications and branding of the environmentally friendly oil & gas extraction procedure for shale to replace hydraulic fracturing that is known as Non Hydraulic Extraction.*
以协议中所有的条款和条件为依据，许可方授权被许可方许可证，被许可方有权制定材料的开发和使用，思路，方向以及所有相关的知识产权的使用，包括：*独家使用，发展权利，修改以及为了取代水力压裂而从页岩中提取油和天然气的绿色环保过程的商标标志，这种被称为非液压萃取。*

### SECTION TWO.
### 第二部分

#### LIMITATION TO DESCRIBED PURPOSE
#### 所描述目的的限制

"Non Hydraulic Fracturing" shall be used by licensee solely for development and marketing **for the purpose of profit** during the period beginning July 26, 2012, and continuing until this agreement is terminated as provided in this agreement.
自协议生效日，2012 年 7 月 26 日起直至该协议中提供的终止时间，许可方应仅在以盈利为目的的发展及市场营销方面使用 "非水力压裂"。

1

SEC-LoevD-E-0002211

## SECTION THREE.
## 第三部分

### PERIODIC PAYMENTS
### 分期付款

Licensee shall pay licensor for this license at the rate of $ 5,000.00 USD per month, payable in advance. The first payment shall be made on the date of the beginning of the period specified above. Subsequent payments shall be made in advance promptly on the last day of each month thereafter during the continuation of this agreement.

被许可人应每月向许可人支付$ 5,000.00 美元用于使用许可证，需提前付款。首付款

应在上述规定的期限开始之日起支付。随后的款项应及时在本协议延续期内每月的

最后一天提前支付。

## SECTION FOUR.
## 第四部分

### VARIABLE PAYMENTS
### 可变支付

In addition to making the payments provided for in Section Three of this agreement, licensee shall make payments based on the profits generated from Non Hydraulic Extraction. Such payments shall be at the rate of 20% of net profits generated from Non Hydraulic Extraction and any technology developed from the procedure for a period of ten years after the first revenues are generated from utilization of the Procedure. Such payments will be made on a quarterly schedule, due 30 days after the close of each quarter. Payments will be calculated under GAAP. All payments shall be supported by appropriate statements certified by licensee.

除了在本协议第三条规定的款项支付，被许可方须支付基于非液压萃取而产生利润的款项。这些款项应是从非液压萃取以及使用该流程产生的第一笔收入后 10 年内关于流程的任何技术的发展所产生的净利润的 20%。款项应以季度支付，每季度结束后的 30 天内到期。款项应以公认的会计准则计算。所有的款项应由被许可方适当的声明证实。

2

SEC-LoevD-E-0002212

## SECTION FIVE.
第五部分

## TERMINATION
协议终止

A. Either party may terminate this agreement at any time in the first 12 months, without regard to payment periods by giving written notice to the other, specifying the date of termination, such notice to be given not less than 30 days prior to the date specified in such notice for the date of termination.

任何一方在协议开始 12 个月内随时均可终止本协议，不考虑向对方发出书面通知的付款期限，该通知应详细说明终止本协议日期，并在指定终止日期前不超过 30 天发出。

B. Beginning on the 13th month, Licensor may not cancel this contract if Licensee is current on all terms and in good standing regarding the terms of this agreement. Licensee's right to terminate this agreement at any time without regard to payment periods by giving written notice to the other shall not be affected and is extended throughout the term of this agreement. such notice to be given not less than 30 days prior to the date specified in such notice for the date of termination

从第 13 个月开始，如果被许可方目前遵守所有条款并有良好的信誉，许可方不得取消本协议。不考虑向对方发出书面通知的付款期限，被许可方随时终止本协议的权利不会受到影响其延长整个协议期限。该通知应详细说明终止本协议日期，并在指定终止日期前不超过 30 天发出。

C. If licensee shall make an assignment for the benefit of creditors, or be placed in receivership or adjudicated a bankrupt, or take advantage of any bankruptcy or insolvency law, licensor may terminate this agreement by giving written notice to the licensee, specifying the date of termination, such notice to be given not less than 30 days prior to the date specified in such notice for the date of termination.

如果被许可方分配债权人的利益，或被接管，或被裁定破产，或利用任何破产或破产法，许可方应向被许可方发出书面通知终止本协议，该通知应详细说明终止本协议日期，并在指定终止日期前不超过 30 天发出。

3

SEC-LoevD-E-0002213

## SECTION SIX.
## 第六部分

### GOVERNING LAW
### 基本法

It is agreed that this agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Texas, USA.
经双方同意，本协议应受美国得克萨斯州的法律规定进行解释和执行，

## SECTION SEVEN.
## 第七部分

### ENTIRE AGREEMENT
### 全部协议

This agreement constitutes the entire agreement between the parties and any prior understanding or representation of any kind preceding the date of this agreement shall not be binding on either party except to the extent incorporated in this agreement.
本协议构成双方之间的全部协议，任何事先了解或本协议的日期前的任何表现形式，除纳入本协议的范围内，不得对任何一方当事人具有约束力。

## SECTION EIGHT.
## 第八部分

### MODIFICATION OF AGREEMENT
### 协议的修改

Any modification of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if evidenced in writing signed by each party or an authorized representative of each party.
本协议的任何修改或任一方承担的与本协议有关的额外义务，在双方或各方授权代表签署的书面证明的情况下方才具有约束力。

4

SEC-LoevD-E-0002214

## SECTION NINE.
第九部分

NOTICES
通知

Any notice provided for or concerning this agreement shall be in writing and shall be deemed sufficiently given when sent by certified or registered mail if sent to the respective address of each party as set forth at the beginning of this agreement.

任何为本协议做准备或涉及本协议的通知应以书面形式， 如发送到双方各自的地址，

须使用已认证或注册的邮件，如在本协议开始所述。

In witness, each party to this agreement has caused it to be executed on the date indicated below.

此证，本协议的双方在以下注明日期之日起执行。

/s/ Zeng Zong
Zeng Zong, Director                Date: July 26, 2012
China Inland Oil Exploration Company

/s/ Charles Grob
Charles Grob, President            Date: July 26, 2012
Chimera Energy Corp.

5

SEC-LoevD-E-0002215

# Information about CHMR - China Inland Oil Option - 7.26

C:\Users\VydashenkoN\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.IE5\...





**Save As**

**Read-Only Document**
This document has been opened in read-only mode. Changes cannot be made to the original document. To save changes, create a new copy of the document.



**Protect Document ▾**

**Permissions**
Anyone can open, copy, and change any part of this document.



**Check for Issues ▾**

**Prepare for Sharing**
Before sharing this file, be aware that it contains:
- Document properties
- Footers
- Content that people with disabilities find difficult to read



**Manage Versions ▾**

**Versions**
There are no previous versions of this file.

**Properties ▾**

| | |
|---|---|
| Size | 34.8KB |
| Pages | 5 |
| Words | 1868 |
| Total Editing Time | 5 Minutes |
| Title | Add a title |
| Tags | Add a tag |
| Comments | Add comments |

**Related Dates**

| | |
|---|---|
| Last Modified | 7/27/2012 12:26 PM |
| Created | 7/27/2012 12:26 PM |
| Last Printed | Never |

**Related People**

| | |
|---|---|
| Author | Add an author |
| Last Modified By | Andrew Farmer |

**Related Documents**
Open File Location

Show All Properties

# Appendix

# Exhibit ZZZ

Print                                                                        Page 1 of 3

| Subject: | Re: [FWD: Engagement Letter] |
| From: | Eddie Austin (eddieaustinjr@yahoo.com) |
| To: | thomas.massey@yahoo.com; |
| Date: | Tuesday, July 31, 2012 10:06 AM |

I just talked with Andrew. All is good, and Charles has the money to pay the retainer. The law firm needs to receive payment and the signed retainer letter by tomorrow so press can go out Thursday, though, so just follow up on that end. Let JB know and you can email him a copy of the retainer agreement.

Thanks, Tom

Sent from my iPad

On Jul 31, 2012, at 10:49 AM, Thomas Massey <thomas.massey@yahoo.com> wrote:

> Not yet
>
> Thomas Massey
> Cell
>
>
> On Jul 31, 2012, at 9:25 AM, Eddie Austin <eddieaustinjr@yahoo.com> wrote:
>
>> This looks good to me. Let's move forward. Have you discussed this with Andrew?
>>
>> Sent from my iPad
>>
>> On Jul 30, 2012, at 8:06 PM, Thomas Massey <thomas.massey@yahoo.com> wrote:
>>
>>> Eddie, just FYI any comments are appreciated.
>>>
>>> Thomas Massey
>>> Cell
>>>
>>>
>>> Begin forwarded message:
>>>
>>>> **From:** <cgrob@chimeraenergyusa.com>
>>>> **Date:** July 30, 2012 6:38:15 PM CDT
>>>> **To:** "Thomas Massey" <thomas.massey@yahoo.com>
>>>> **Subject: [FWD: Engagement Letter]**
>>>>
>>>> Tom,
>>>>
>>>> It look like it will be around 4-5K.

**Charles Grob**
**Chimera Energy Corporation**
**President and CEO**
**2800 Post Oak Boulevard Ste 4100**
**Houston, TX 77056**
**Phone:**
**Fax: (832) 390-2350**
**<image.png>**

-------- Original Message --------
Subject: Engagement Letter
From: "Loren Smith"
<loren.smith@hulseyiplaw.com>
Date: Mon, July 30, 2012 6:18 pm
To: <cgrob@chimeraenergyusa.com>
Cc: <bill.hulsey@hulseyiplaw.com>,
<sabrina.eaton@hulseyiplaw.com>

Charles, it was a pleasure to chat with you
this afternoon.  As we discussed, please find
an Engagement Letter attached for your
review and signature.  If you have any
questions or concerns, please let me know.
Otherwise, return a signed copy with the fee
deposit and we can get started.

We look forward to working with you.

Sincerely,

Loren T. Smith
Managing Attorney, HULSEY, P.C.
**Loren.Smith@HULSEY*IP*Law.com**
**www.HULSEY*IP*Law.com**
(O) ; (C) ; (F) 512-478-9192
919 Congress  Avenue, Suite 919
Austin, Texas 78701
<Description: Hulsey_Email_Logo.png>
Please do not send confidential, proprietary, or
otherwise sensitive information via e-mail. E-mail is
not a secure form of communication and may not be
protected by the attorney client privilege.
Communication via e-mail does not establish an
attorney-client relationship. Any information in any e-
mail message from me or my office is intended for
general informational purposes and is not intended to
be, and shall not be relied upon, as legal advice. No
information in an e-mail is a substitute for a personal

consultation with an attorney.

CONFIDENTIALITY NOTICE: This email is covered by
the Electronic Communications Privacy Act, 18 U.S.C.
2510-2521 and is legally privileged. This
communication may also contain material protected
and governed by the Health Insurance Portability and
Accountability Act of 1996 (HIPAA). This e-mail is only
for the personal and confidential use of the individuals
to which it is addressed and contains confidential
information. If you are not the intended recipient, you
are notified that you have received this document in
error, and that any reading, distributing, copying or
disclosure is unauthorized.
If you have received this communication in error,
please notify the sender immediately by the
telephone number above and destroy the message.
<image.png>

<Loren T Smith.vcf>

<CCF07302012_00000.pdf>

=

# Appendix

# Exhibit AAAA

**To:**      'Andrew Farmer'[andrew.farmer@iridiumcapitallimited.com]; 'Alyssa
Vasquez'[alyssa@loevlaw.com]
**From:**    Hannah Loev
**Sent:**    Fri 8/10/2012 11:53:33 AM
**Importance:**         Normal
**Subject:**  RE: Chimera Energy Corp.
submissionpdf.pdf

Andrew,

Attached is the 8k for review.  Please advise of any changes and provide filing approval
at your earliest convenience.

Thank you,

Hannah

Hannah M. Loev

President

Loev Corporate Filings, Inc.

5301 Holly St.

Bellaire, TX

832-607-1135 cell

713-667-5727 fax

**From:** Andrew Farmer [mailto:andrew.farmer@iridiumcapitallimited.com]
**Sent:** Friday, August 10, 2012 8:19 AM
**To:** Alyssa Vasquez; Hannah Loev
**Subject:** Chimera Energy Corp.

Please file the attached 8-k ASAP.

SEC-LoevD-E-0002225

Thanks,

Andrew Farmer

**Iridium Capital Limited**

(832) 364-6317

(832) 553-3080 Fax

(619) 247-2680 Cell

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2015.0.5856 / Virus Database: 4306/9322 – Release Date: 03/17/15

SEC-LoevD-E-0002226

# LOEV CORPORATE FILINGS, INC. Electronic EDGAR Proof

| | |
|---|---|
| **Job Number:** | 8K0900812 |
| **Filer:** | CHIMERA |
| **Form Type:** | 8-K |
| **Reporting Period / Event Date:** | 08/09/12 |
| **Customer Service Representative:** | LOEV |
| **Revision Number:** | 1 |

This proof may not fit on letter-sized (8.5 x 11 inch) paper. If copy is cut off, please print to a larger format, e.g., legal-sized (8.5 x 14 inch) paper or oversized (11 x 17 inch) paper.

Accuracy of proof is guaranteed ONLY if printed to a PostScript printer using the correct PostScript driver for that printer make and model.

(this header is not part of the document)

# EDGAR Submission Header Summary

| | |
|---|---|
| Submission Type | 8-K |
| Live File | on |
| Return Copy | on |
| Submission Contact | Hannah Loev |
| Submission Contact Phone Number | 8326071135 |
| Exchange | NONE |
| Confirming Copy | off |
| Filer CIK | 0001632796 |
| Filer CCC | XXXXXXXX |
| Period of Report | 08/09/12 |
| Item IDs | 8.01 |
| | 9.01 |
| Notify via Filing website Only | off |
| Emails | hmloev@asapedgar.com |

## Documents

| 8-K | chimera8k080912.htm |
|---|---|
| | Chimera Energy Corp. Form 8-K for August 9, 2012 |
| EX-99.1 | ex99-1.htm |
| | Press Release |

## Module and Segment References

SEC-LoevD-E-0002228

# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

## Form 8-K

### CURRENT REPORT

**Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934**

**Date of Report (Date of earliest event reported): August 9, 2012**

Commission File Number 333-177406

## Chimera Energy Corp.

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Nevada** | **45-2941876** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **2800 Post Oak Blvd Suite 4100** | |
| **Houston, Texas** | **77056** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code:  (832) 390-2334

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

SEC-LoevD-E-0002229

**ITEM 8.01:          OTHER EVENTS**

On August 9, 2012 Chimera Energy Corp. (the "Company" or "Chimera") issued a press release related to a Memorandum of Understanding executed between the Company and Petroleos Mexicanos, commonly known as PEMEX.

This press release is attached as Exhibit 99.1 hereto and is incorporated herein by reference.

**ITEM 9.01:          FINANCIAL STATEMENTS AND EXHIBITS**

**Exhibit Number    Description**

99.1                        Press Release issued by Chimera Energy Corp., dated August 9, 2012

SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the Company has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

Chimera Energy Corp.

By: /s/ Charles Grob
Charles Grob
Chairman and CEO

Date:  August 10, 2012

SEC-LoevD-E-0002230

EXHIBIT 99.1

**PEMEX Signs Deal with CHMR for New Non-Hydraulic Shale Oil Extraction System Designed to Safely Replace Hydraulic Fracturing**

**Houston, TX—August 9, 2012—**Chimera Energy Corp (OTCBB: CHMR) announced today that they have executed a Memorandum of Understanding with PEMEX, also known as Petroleos Mexicanos, regarding the utilization of CHMR's revolutionary exothermic Non-Hydraulic Extraction method throughout Latin America. The Non-Hydraulic Extraction method is a revolutionary Shale Oil extraction technology designed to safely and economically replace hydraulic fracturing (AKA fracking and fracing) without negative environmental impacts. The new process uses no water.

PEMEX is the largest company in both Mexico and all of Latin America. Some of the largest concentrations of Shale Oil in the world are located throughout Latin America. The MOU precedes a supplemental encompassing agreement.

Non-Hydraulic Extraction has recently emerged to be asserted as a cheaper and more effective extraction method that does not affect groundwater at all. Chimera Energy Corp is in the process of reengineering this new method for mass production, relicensing and sales. For a description of how Non-Hydraulic Extraction works, high-speed broadband users may visit www.zerowaterfracking.com

Or you may alternatively visit www.chimeraenergyusa.com/investors.html

Chimera Energy Corp is a Texas corporation listed on the OTCBB under the trading symbol CHMR. Chimera Energy Corp (CHMR) acquires, develops, licenses and sells new energy technology and products that are designed to profit from the current domestic shale oil boom. CHMR competes in an industry sector that includes Halliburton (NYSE: HAL), Schlumberger (NYSE: SLB), EnCana Corporation (NYSE: ECA) and Continental Resources, Inc. (NYSE: CLR).

More information about Chimera Energy Corp may be found at www.ChimeraEnergyUSA.com

Safe Harbor Statement under the Private Securities Litigation Reform Act of 1995: This news release contains forward-looking information within the meaning of Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended, including statements that include the words "believes," "expects," "anticipate" or similar expressions. Such forward-looking statements involve known and unknown risks, uncertainties and other factors that may cause the actual results, performance or achievements of the company to differ materially from those expressed or implied by such forward-looking statements. In addition, description of anyone's past success, either financial or strategic, is no guarantee of future success. This news release speaks as of the date first set forth above and the company assumes no responsibility to update the information included herein for events occurring after the date hereof.

Media Contact:
Charles Grob
Chimera Energy Corp
832-390-2334

SEC-LoevD-E-0002232

# Appendix

# Exhibit BBBB

SEC-LoevD-E-0003423

**To:**       David M. Loev[dloev@loevlaw.com]
**From:**     Andrew Farmer
**Sent:**     Tue 8/14/2012 1:47:33 PM
**Importance:**       Normal
**Subject:**  Re: CHMR and NVMN

Sounds like extortion to me. I'll call you later this afternoon to discuss.

Sent from my iPhone

On Aug 14, 2012, at 1:22 PM, "David M. Loev" <dloev@loevlaw.com> wrote:

Andrew,

See correspondence below regarding article that is or has been prepared.

David M. Loev

The Loev Law Firm, PC

6300 West Loop South

Suite 280

Bellaire, Texas 77401

(713) 524-4110 – phone

(713) 524-4122 – fax

(713) 920-9372 – efax

dloev@loevlaw.com

http://www.loevlaw.com

**From:** infitialis1 [mailto:infitialis1@gmail.com]
**Sent:** Tuesday, August 14, 2012 12:58 PM
**To:** dloev@loevlaw.com
**Subject:** CHMR and NVMN

SEC-LoevD-E-0003423

http://www.scribd.com/doc/102765668/CHMR

Do you have any comments as to why you are involved with these two scams?

In Part 2 I will be highlighting your firms involvement. If you provide me with additional information and appear to be in the public's interest I will consider writing neutral opinions on the Loev lawfirm.

Infitialis

---

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2015.0.5856 / Virus Database: 4306/9322 - Release Date: 03/17/15

Seeking Alpha

   

- Home |
- Portfolio |
- Market Currents |
- Investing Ideas |
- Dividends & Income |
- ETFs |
- Macro View |
- Alerts
- Sign in / Join Now

This article was sent to 65 people who get email alerts on CHMR.OB.
Which cover: new articles | breaking news | earnings results | dividend announcements
Get email alerts on CHMR.OB »
Seeking Alpha

| search by symbol, author, key |

Loading...
Symbols:
Authors:

# Pay Per Click Ads Help This Houston Promoter Run 2 Simultaneous Scams - Part 1: CHMR

August 15, 2012 | 37 comments by: Infitialis | about: CHMR.OB, includes: GOOG, NVMN.OB, YHOO

After learning about the world of OTCBB scams and issuing our first piece of research on Quest Water Global (QWTR) we thought we had experienced one of the nastiest manifestations of micro-cap fraud. Here we had a company that was clearly setup to sell shares to US investors at inflated prices by undisclosed persons residing offshore. Worst, the story being sold to naïve investors was one of a humanitarian mission that would help produce water from air to the impoverished in Angola.

Then we encountered Chimera Energy Corp. (CHMR.OB) and Nova Mining Corp. (NVMN.OB) two interrelated scams that combined have less than $130,000 in cash, no physical office space, and negative shareholder equity

EXHIBIT
A-5

APP. 000940

SEC-LoevD-E-0002751

that have been manipulated to a combined market valuation nearing $200,000,000 by an unnamed Houston based stock promoter.

Unfortunately the facilitator of these stock scams and many others like it is one of our country's most innovative and respected companies: **Google (GOOG)** - through their online advertising system AdWords. Without Google, scams like CHMR and NVMN would never find their way to the portfolios of naive investors. Google is the trusted bridge investors cross when searching for keywords that are relevant to their investment goals. Keywords such as: "Safe investments", "Online Trading", and "Fixed Investments". Only on the other side of this bridge are stock promoters who pay more than TD Ameritrade or E*TRADE for the right to place their ads on top of Google's search results. Inexperienced investors click these ads and eventually a few take the bait purchasing shares directly from promoters for $1, $2, and even $3 a share having no idea that the shares being sold to them were purchased for less than half a penny and that the company underlying these shares has no inherent value.

We sincerely believe that Google executives are completely in the dark and don't fully comprehend the destruction in wealth being facilitated by these ads. We remind Google to refer to its Prospectus from 2004 where it stated "DON'T BE EVIL"

In our view Google should **not allow non-registered firms to advertise any securities period**. Just as Google does not allow offshore gambling sites from advertising to U.S. persons it should regulate the entities bidding on financial related keywords. A copy of this report was forwarded to Google's Chief of Compliance. We recommend that readers who share this view do the same.

In **Part 1** of this report we will cover CHMR - a Company with one employee and tangible equity of just $4,549 (not even enough to buy a 2003 Ford Focus) that is valued at **$120,000,000** with nearly **$40,000,000** in free trading float shares being liquidated into unsophisticated retail investors. **Part 2** will cover NVMN and more details on the identity of the man from Houston orchestrating these frauds through offshore companies in the Marshall Islands.

## Chimera Energy (CHMR) Fundamentals

| | |
|---|---|
| Shares Outstanding | 66,000,000 |
| Current Share Price (8/9/2012) | $1.85 |
| Market Capitalization: | $122,100,00 |
| Cash as of March 30,2012 | $97,708 (likely much lower now) |
| Debts & Liabilities as of March 30, 2012 | $-111,929 (likely higher now) |
| Shareholder Equity as of March 30, 2012 | $4,549 |

EXHIBIT
A-5

SEC-LoevD-E-0002752

| Revenues For the 90 Days Ended March 30, 2012 | $2,880 |
|---|---|
| Undisclosed Shares in Float (Believed to be Promoter Shares) | 20,000,000 |
| Price paid for Undisclosed Free Trading Shares in Float | $.0038 |
| Full Time Employees | 1 - Charles Earl Grob, Jr. AKA Chuck Grob, Age: 31 |

## Corporate Offices

Chimera Energy doesn't have a physical corporate office. Instead they lease a virtual office from ServCorp for $200 a month electing to use their address forwarding and virtual phone number plan. We are puzzled as to why the perpetrators of this scam didn't elect to choose the $305 a month plan which included access to a conference room. Surely even promoters could make use of a physical conference room.



## The Business

The most effective exercise in demonstrating to readers that CHMR is a scam is to review its chronology from inception to now through the perspective of Charles E. Grob Jr. the 31 year old who is the only named employee in the company, as well as through the role of the unnamed Houston promoter that owns the 20,000,000 free trading shares purchased for $.0038.

## Charles Earl Grob Jr.

| August 5, 2011 | Incorporates a company in Nevada named Chimera Energy by issuing to himself 10,000,000 shares @ $.0001 per share for a total investment of just $10,000. |
|---|---|
| August 22, 2011 | Borrows $100,000 @ 15% interest from Kylemore, Corp. an offshore company incorporated in the Marshall Islands. |
| September 1, 2011 | Rents a Virtual Office in Houston for $200 a month |
| October 10, 2011 | Pays a total of $10,950 to become publicly traded ($1,500 transfer agent, $4,000 auditor, $5,000 legal) through form S-1 |

EXHIBIT
A-5

APP. 000942

| December 21, 2011 | Receives approval for his S1 from the SEC |
| January 6, 2012 | Sells 5,000,000 free trading shares relying on the S-1 filed with the SEC to "third parties" @ $.015 per share. |

Here the roles split...

| Charles Earl Grob Jr. | Unnamed Houston Promoter |
|---|---|
| **March 1, 2012** - As the sole CEO/COO/CFO and Director, awards himself a salary of $2,500 a month. | **April 2012** - Sets up a cloud server hosting account with Rackspace in San Antonio Texas. This account will be used to host the websites and promotional referral sites used in the scams CHMR and NVMN. |
| **June 26, 2012** - Effectuates a 4:1 Forward Split lowering his average cost to $.00025 and that of the 20,000,000 free trading float shares owned by the unnamed Houston promoter to $.0038. | **May 2012** - Hires an Indian web design company to build the websites: chimeraenergyusa.com, nova-mining.com, zerowaterfracking.com, foxmarketreport.com, |
| **July 26, 2012** - Licenses a technology from a Chinese company nobody has ever heard of for $5,000 a month in a 4 page contract with no mention of any patent numbers or description of the technology. | **June 2012** - Produces a 2:29 minute long promotional video full of sound bites and generalities relating hydraulic fracturing. Aside from conjecture relating to the conceptualization of the licensed technology no tangible evidence is provided to as to the history, effectiveness or existence of this potentially world-changing service. |
| **July 30, 2012** - Puts out a sensational press release touting a technology licensed **less than 90 hours prior** as a "breakthrough" that will replace an industry standard drilling technique employed by multi-billion dollar energy companies for nearly a decade. | **July 2012** - Sets up and funds a Google AdWords account as well as accounts with other online PPC (pay per click) companies. Sets up and funds an account with the Wall Street Journal online network for display ads that will run on: WSJ.com, Barrons.com, and MarketWatch.com. Initiates the distribution of the ads coinciding with the first press release issued by Charles Earl Gorb Jr. on July 30, 2012. |
| **From August 1, 2012 - August 10, 2012** puts out 6 press releases in 8 trading days discussing everything from how the recent drought makes his technology even more attractive to how he plans on attending a conference anybody with $475 can attend while making sure to cram as many multi-national stock symbols into the press releases like (HAL) (SLB) (ECA) and (CLR) so that naïve investors browsing | **July 30-Present** - A blitzkrieg of display and text ads is ultimately successful in duping retail investors into purchasing CHMR shares directly from the promoter. During this period the promoter liquidates some of the 20,000,000 shares that were purchased for $.0038 at a minimum price of $1.00 and as high as $2.00. From July 30th until August 10th over 5,288,000 shares of CHMR trade hands at an average price of $1.55 for $8,218,000 |

EXHIBIT
A-5

APP. 000943

SEC-LoevD-E-0002754

tag will not be used

| those company's financial news feeds might accidentally see these releases and be duped into investing their hard-earned savings. | worth of dollar volume. |
|---|---|

Unfortunately the perpetrators of this scam have thus far rung the register to the **tune of over $8,000,000.** That money has come from the brokerage accounts of hard-working U.S. investors that were most probably new to the world of investing or were gullible enough to believe that CHMR was a legitimate enterprise. As we explained in the opening section of the report it is not entirely their fault as the path which led them to CHMR was one they instinctively trust.

**Wall Street Journal Advertisement for Chimera Energy:**



Even the most astute investors could fall for such an ad believing that the Wall Street Journal with its impeccable reputation would at minimum scrub their advertising clients before allowing an ad on their website. There is no doubt in our minds that Rupert Murdoch would have put an end to this immediately had he known his most prized possession is being used as a tool to dupe investors. Investors that are outraged should email their complaints to: wsj.ltrs@wsj.com

**The Google Adwords Promotion**

The WSJ network display ads were only a small component of the CHMR promotion. The real heavy lifting was done through the Google Adwords platform. Here the unnamed Houston promoter was able to leverage Google's search engine to target keywords that would deliver the most relevant investors to his doorstep. Using SEO profiler we were able to identify 7 different text ads used by the promoter:



These ads were displayed whenever a variety of keywords were typed by unsuspecting googlers. While it is nearly impossible to know exactly what keywords were used with SEO profiler we found at least 7:

EXHIBIT
A-5

**APP. 000944**

The website chimeraenergyusa.com advertises for 7 keywords:

| | | | | | | |
|---|---|---|---|---|---|---|
| • | | | | | | |
| 4. | | | | | | |
| b. | | | | | | |
| u. | | | | | | |
| 4. | | | | | | |

The keyword selection should make any reader feel sick to their stomach. Picture a retiree searching for "fixed interest savings" in this low yield environment only to be matched with an advertisement for Chimera Energy. The retiree then proceeds to invest his/her savings by purchasing shares of CHMR at $1.55 only to find the shares worthless several months later. As we mentioned in the opener **this is simply wrong and Google has to put an end to it.** They can no longer sit by while investors are being delivered to promoters like sheep's to the slaughterhouse. Quality control must be employed before allowing anyone to target investment related traffic. We recommend a simple rule requiring a firm to be registered with the SEC as an investment advisory in order to recommend a security for purchase.



While the majority of the PPC campaign was carried out via Google Adwords other websites like Yahoo (YHOO) and Ask.com were also used by the promoters. These companies need to beef up their quality control as well and refuse this type of business. In this screenshot we see text ads that were displayed on other leading websites. These ads are still being displayed as of 8/13/2012.

### The Smoking Gun

The smoking gun was discovered when we traced the IP Address of the server used to host the website for Chimera Energy. Basically all web servers (which are nothing but computers running software to serve web pages) are assigned unique IP addresses on the Internet. If a web server is hosting a website, the IP address of that site will be the same as that of the server. And if multiple domains are hosted on that web server they will all have the same IP address which will again be the same as that of the web server.

Using CMD, we pinged the chimeraenergyusa.com website and found that the IP Address of the web server was: **184.106.176.97**

EXHIBIT
A-5

APP. 000945

Next we used Bing to do an IP Search. The results are the websites being hosted on the same web server as the IP address being entered:



A Coincidence? We think not. There are only 5 websites being hosted on this web server which indicate that it's an exclusive server as opposed to a shared server with many independent sites. But this one server hosts the sites of two publicly traded OTCBB companies: NVMN and CHMR, which are both run out of virtual offices in Texas, started trading at or around the same time, and have had the same type of display and keyword ads being plastered all over the internet.

As far as we are concerned the nail in the coffin in terms of connecting the promoters to the companies is the fact that foxmarketreport.com and zerowaterfracking.com are both hosted on the same servers as nova-mining.com and chimeraenergyusa.com. Fox Market Report is a fake investment report website meant to appear as though it's related to the Fox News Network. ZeroWaterFracking is a site used to refer investors to Chimera Energy's main site. These sites act as conduits and refer even more traffic to each respective company leading to more conversions (investors being duped into buying shares). The promoters use these sites to monopolize the available space on the Google Adwords system as one site can only take one spot. Two sites bidding the highest price will take the top two spots. Two simultaneous scams with two referral sites will take up 4 spots meaning that every conversion results in a sale of worthless shares at artificial prices.

## Conclusion

We urge investors to stay away from both CHMR and NVMN as they both have **no tangible value** and are simply publicly traded tools being employed by unscrupulous promoters to sell shares to the unsuspecting investor. In the first part of this report we covered CHMR. In part 2 we will cover NVMN as well as unveil more data relating to the man behind these two scams. In full disclosure we are short shares of CHMR and NVMN but stress that the amount of shares is insignificant as a percentage of our assets. We write these exhaustive reports in an effort to educate investors and prevent them from falling into these traps. With this report we also hope to see policy changes implemented at Google, News Corp, Yahoo, and AOL, companies we greatly admire that simply do not understand the extent they are being used as pawns in these schemes.

*"Men, it has been well said, think in herds; it will be seen that they go mad in herds, while they only recover their senses slowly, and one by one. - Charles Mackay, 1841"*

**Disclosure:** We are short shares of CHMR and NVMN

This article was sent to 65 people who get email alerts on CHMR.OB.
Get email alerts on CHMR.OB »

EXHIBIT
A-5

9/27/2012 8:43 AM

SEC-LoevD-E-0002757

More articles by Infitialis »

- ZERO's Current Scheme Is Nearly Identical To The Program That Led To An SEC Halt And Fraud Charges In 2001 Tue, Sep 25
- A $400 Million Company Run By A CEO With Undisclosed Criminal Convictions Fri, Sep 21
- Mellanox Bubble To Burst With Intel Foray Possibly Threatening Existence Tue, Sep 4
- Chimera Energy Part II: Pemex Denies Contract As Fabrications And Lies Continue Deceiving Investors Mon, Aug 27

- Share this article

Short URL: seekingalpha.com/article
15
    Share · 3    Like  51    · 1    Tweet · 9

## Comments (37)

Register or Login to rate comments »

User 282002 Comment (1)

I am glad you put this out today. I believe I saw this symbol on the CNBC website and also on yahoo finance. I was researching CHMR to see what it was about and if it would be a good investment. I am thankful I did not loose my money and feel sorry for the ones who already have. I feel our government has allowed this to go on knowing that people who cannot really afford to loose their money are the one's who are getting hurt by scams like this. We are loosing investors to legitimate companies by letting them get taken by the deceitful people All while our government seems to do nothing to stop them. Goes to show if you invest in a company do your due diligence before turning loose your hard earned money.
15 Aug, 10:08 AMReplyLike0



alpha_zeta Comments (86)

Awaiting Part 2
15 Aug, 10:11 AMReplyLike0

OneMist8k Comment (1)

Wow. I clicked through an ad for Chimera that appeared in Forbes magazine. It looked good and my research led to this seekingAlpha article. THANK YOU - THANK YOU - THANK YOU.
15 Aug, 10:37 AMReplyLike0



Tom Tuo Comments (8)

Chimera is clearly a fraud. You are doing the world a service by posting this well researched article. You are right, Google needs to take responsibility and do some basic vetting here. Legitimate companies don't

EXHIBIT
A-5

APP. 000947

9/27/2012 8:43 AM

SEC-LoevD-E-0002758

promote themselves in this fashion, it shouldn't be hard for this to raise red flags at Google.
15 Aug, 12:23 PMReplyLike2

**Nye-EveOne** Comment (1)

Although I had suspicions about NVMN I foolishly purchased 5000 shares at $3.25. I hope the parties responsible for these scams get to sample prison food.
15 Aug, 12:37 PMReplyLike0



**jdm12313** Comments (3)

Your work is very commendable and appreciated. Like others I saw the ad on CNBC as well and I am shocked they would ok the use of their site to this type of advertising.
15 Aug, 01:33 PMReplyLike1

**elys** Comments (3)

I read the Yahoo article, then called the company..."Mr. Grob stepped out for a while."

Now, will the SEC take this person to court? Will our money be refunded, as this is out-and-out fraud?

The SEC ought to hammer this into Grob's head and pocketbook!
15 Aug, 02:15 PMReplyLike0

**Bald Won** Comments (2)

I have a question for the contributor of this article. You say you are currently short shares of these two stocks. When you make a killing on your short in the coming weeks (and you will), aren't you profiting from the "bilking" of the investors you say you are trying to protect?

Just asking.
15 Aug, 02:21 PMReplyLike0

**activestocktrader10** Comments (9)

Bald Won,

I will be honest to say that as a shorter of many of this stocks, there are a tiny amount of shares to be borrowed... I mean tiny. So per person you may be able to short several thousand shares. I think this person whoever it is, is doing this more to protect others because 1000 to 3000 shares is not alone worth it to take all this time and do this type of research. This research must take hours upon hours! Another point to be made, is that the borrows on these stocks have certain restriction on days as well so its not like shorting a company such as GOOGLE where you can hold it for more than a week easily... This person deserves to make the money that he will most likely make because just in these comments we witnessed at

EXHIBIT
A-5

9/27/2012 8:43 AM
APP. 000948
SEC-LoevD-E-0002759

least 4 people who were thinking about buying and then after seeing this article changed their mind. That saved their hard earned money from being lost. Last point, all of these pumps and dumps go to 0 its just a matter of time. So putting this article simply helps both protect the retail investor and gives a chance for the SEC to see the truth about the scams! People are always knocking down shorts and it is really ashame because there are two sides to the market and without shorting we would not have knowledge about scams. Take David Einhorn he always gets bad press for the shorting but yet the people that listen end up saving their money. Anyways, Bald Won I think you get my point and sorry for being so passionate :) but to the author... I appreciate what you are doing and I hope you continue doing your great DD!

15 Aug, 03:18 PMReplyLike0

glenntenn Comment (1)

I bought nearly 20,000 shares of Nova Mining due to the fraudulent postings about the Lithium market. Bought between $1.20 and $1.70 and closed out at between .77 and .84 today. Lesson learned

15 Aug, 05:52 PMReplyLike0

thepetrosfamily@yahoo.com Comment (1)

Great investigative work. Thank yo for warning investors about this fraudulent "investment".
I admire your thorough research. Just crossing my fingers that more people read this before they buy any CHMR or NVMN.
Thank you!!

15 Aug, 09:45 PMReplyLike1

INVESTigator1 Comment (1)

Great service to your readers. Hope this can get distributed far and wide. I was watching NOVA and the press releases looked too good to be true - My thoughts-- "pump and dump". I have been had by these in my earlier trading days and this could save many from learning the hard way. . . thanks much.

15 Aug, 09:57 PMReplyLike0

activestocktrader10 Comments (9)

Everyone look at this link as I created a page filled with many of the snapshots of the ads that try to convince the retail investor to buy the worthless shares of CHMR. http://bit.ly/NHOu7x

Thanks,

activestocktrader10
16 Aug, 12:27 PMReplyLike1

elys Comments (3)

EXHIBIT
A-5

Well done on your web page! I found another big place the CHMR ad was run...gsn.com...a gaming place
for probably the young, and their money.
Well done!
19 Aug, 09:32 AMReplyLike0



**asclepius8 Comments (164)**

Anyone who looked into Chimera for 20 minutes and could not see plenty of red flags should not be
playing with real money. Your radar is broken.
The SEC is a disgrace. How could they allow them to go public in the first place? Case in point: the bar for
a successful S1 filing approval is very low.
16 Aug, 01:39 PMReplyLike0

**Mysur Comment (1)**

If you look at the volume of transactions on Aug 15th the day the article was posted its approximately
1.1M which is approximately 10 times the normal amount. This implies that converse to what one of the
previous readers has assumed the short sale is not in a few thousands but many times over.

Its common knowledge that Lithium is in short supply, demand is high and prices are raising. The article
ignores the contracts that Nova has signed for supply and mining of Lithium. Its true that their cash on
hand is approximately only $26000, but the lithium deposits have been evaluated to be woth about 1.3
billion at today's Lithium price. This may be something to consider before dumping the stock.
16 Aug, 02:36 PMReplyLike0



**activestocktrader10 Comments (9)**

In response to your terrible insertion, I find it interesting you and bald won have both a history of one
comment which happens to be on the ONLY article exposing the truth behind CHMR and NVMN.

In regards to the activity you should go to this page http://bit.ly/PtCJzM and learn that when the promoters
and insiders who hyped the stock dump their shares the stock crashes. In this scenario the article allowed
people who saw it to get out of the shares they had, protect the money they would of lost (60% more) had
they still kept their shares, keep other investors from buying it, and minimize the profit which the people
behind the scheme will make.

Lastly, before pumping the stock you should consider that anybody can evaluate something for money. But
as of date, I have never seen a good company as your portraying NVMN to be have a 1.3B deposit and yet
happen to have the same ip address of 3 other sites, two of which are promoting the stock, the other for
another company which HAPPENED to have the same activity as NVMN around the same time.
17 Aug, 10:47 AMReplyLike0

**boston8b Comments (124)**

You gotta be kidding. Or long the stock and hope to hype it for a few more pennies before you agonizingly

EXHIBIT
A-5

9/27/2012 8:43 AM

APP. 000950

SEC-LoevD-E-0002761

get out. Don't wait-- get out now if you are long.
18 Aug, 09:03 AMReplyLike0

•

Redstock Comment (1)

WHERE IS PART TWO? WHO IS NOT DOING THE JOB OF OVERSEEING AND GIVING THE
POWER TO PUT TO PRINT ON THE INTERNET, MAGAZINES,NEWS, AND ANY OTHER WAY OF
ADVERTIZING TO DECEIVE THE INVESTOR. AND I WONDER WHY PEOPLE DON'T INVEST !!
IT IS LIKE GIVING MONEY TO THE DEVIL.
16 Aug, 03:53 PMReplyLike0

•

Bald Won Comments (2)

activestocktrader10,

I'm hurt. I never really thought of myself as a "one-hit wonder". All that aside... everybody should now
realize trading in these two stocks is an exercise in "bigger fool". If you are short, stay short (and
congratulations). If you are long, RUN for the exits. There is no future here and do not wait for someone
else to perform the due diligence. As a wise songwriter once pined.... "Nothing from nothing leaves
nothing". Good luck, all.
17 Aug, 04:59 PMReplyLike0

Guest
Add Your Comment:

CHECK SPELLING
Publish



Infitialis

Articles
(5)

• Comments (1)
• Profile

268 Followers
4 Following
Follow
Send Message

EXHIBIT
A-5

**APP. 000951**

SEC-LoevD-E-0002762

CHMR.OB vs. ETF alternatives

| ETFs | Today | 3 Mths | 1 Yr | YTD |
|------|-------|--------|------|-----|
| CHMR.OB | 0% | 0% | 0% | 0% |
| EES | -0.4% | 9.2% | 24.7% | 14.2% |
| RWJ | -0.4% | 12.7% | 29.0% | 16.1% |
| PRFZ | -0.5% | 9.7% | 23.6% | 15.5% |
| UWM | -0.8% | 18.1% | 45.7% | 31.7% |
| SLY | -0.9% | 9.1% | 26.1% | 14.2% |
| XLI | -1.1% | 5.5% | 18.5% | 10.4% |
| IPN | -1.1% | 9.0% | 8.1% | 9.6% |

ETF Alternatives

sponsored by

About this article

This article was sent to:

- 65 people who get CHMR.OB real-time alerts
- 174,150 people who get Investing Ideas daily

EXHIBIT
A-5

**APP. 000952**

9/27/2012 8:43 AM

SEC-LoevD-E-0002763

This article is tagged:

Investing Ideas, Short Ideas, Industrial Goods, Diversified Machinery, United States

- Problem with this article? Please tell us
- Disagree with this article? Submit your own

Articles that link to this one

1. Chimera Energy Part II: Pemex Denies Contract As Fabrications And Lies Continue Deceiving Investors by Infitialis

Investing Ideas more »

1. Exxon Mobil: Bakken Acquisition Analysis by Richard Zeits
2. Vical: Bulls Vs. Bears by Theodore Cohen
3. General Motors: How To Bash GM - A Primer by Alpine Analytics
4. Reckitt's Decision Opens The Door For Titan Pharma And BioDelivery Sciences by Jason Napodano
5. Why Haven't Amazon Shares Collapsed? Because Jeff Bezos Is The Next Elon Musk, Not The Next Steve Jobs by Helix Investment Management

Dividends & Income more »

1. Are We Driving Bond Bulls Over A Fiscal Cliff? by John Overstreet
2. How Savvy Seniors Beat Hedge Funds by Steven Bavaria
3. Wealth Creators: Why Risk Buying Anything Else? Part One by Paul Price
4. My Mad Method: At What Price Should I Buy? by J.D. Welch
5. Wealth Creators: Why Risk Buying Anything Else? Part Two by Paul Price

ETFs & Portfolio Strategy more »

1. 3 Questions For Alternative Investments by Elliott Orsillo, CFA
2. How To Build A Black Swan Hyperinflation Portfolio by CommodityHQ
3. The Contrarian Case For Small Caps by Lou Basenese
4. The Hedgehog's Error: Time To Buy European Stocks? by Morningstar
5. Seeking Stability In An Unstable World by Greg Crowell

Macro View more »

1. Where Has The QE Rally Gone? by Eric Parnell
2. Community Banking In Period Of Rapid Consolidation by John Slater
3. Underlying Disaster In Europe Accelerating: Spain's Finances Collapsing by James A. Kostohryz
4. Good News, For Now by The Inflation Trader
5. Wall Street Breakfast: Must-Know News by Wall Street Breakfast

TOP AUTHORS: The Opinion Leaders
TOP USERS: StockTalkers | Instabloggers
RSS Feeds | Contact Us | About Us | Premium Program
Terms of Use | Privacy | Xignite quote data | Copyright © 2012

Like   2.2k

Follow @SeekingAlpha

EXHIBIT
A-5

APP. 000953

SEC-LoevD-E-0002764

`

# Appendix

# Exhibit CCCC

MASTER CREDIT AGREEMENT

-BETWEEN-

INFINITE FUNDING INC, AS LENDER,

-AND-

CHIMERA ENERGY CORP., AS BORROWER

This MASTER CREDIT AGREEMENT ("Agreement") is entered into between INFINITE FUNDING INC as Lender ("Lender") and CHIMERA ENERGY CORP. as Borrower ("Borrower") as of August 15, 2012. The above entities may be collectively referred to as the "Parties", and if referring to only one of the above entities, a "Party."

RECITALS

WHEREAS, Borrower desires to borrow certain monies from time to time pursuant to this Agreement in order to fund its business activities;

WHEREAS, Lender is willing to lend monies to Borrower pursuant to this Agreement;

NOW, THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:

1.      DEFINITIONS AND CONSTRUCTION

     1.1      Definitions.  As used in this Agreement, the following terms shall have the following definitions:

"Advance" means a disbursement of monies pursuant to this Agreement.

"Affiliate" means, with respect to any Person, any Person that owns or controls directly or indirectly such Person, any Person that controls or is controlled by or is under common control with such Person, and each of such Person's senior executive officers, directors, and partners.

"Borrowing Certificate" means a request for an Advance substantially in the form set forth as Exhibit A hereto.

"Business Day" means any day that is not a Saturday, Sunday, federal holiday or Texas state holiday.

"Debt" means all Indebtedness incurred pursuant to the Loan Documents.

-1-

IF-000001

"Evidence of Indebtedness" means a compilation of all Advances disbursed to Borrower pursuant to this Agreement during the Borrower's last fiscal quarter, substantially in the form set forth as Exhibit B hereto.

"GAAP" means generally accepted accounting principles as in effect from time to time.

"Indebtedness" means any amount outstanding under this Agreement.

"Lending Facility" means the facility under which Borrower may request Lender to fund Advances to Borrower, as specified in Section 2.1 hereof.

"Loan Documents" means, collectively, this Agreement, any Borrowing Certificate, Evidence of Indebtedness, and any other agreement entered into between Borrower and Lender in connection with this Agreement, all as amended or extended from time to time.

"Material Adverse Effect" means a material adverse effect on (i) the business operations or condition of Borrower and its Subsidiaries taken as a whole, (ii) the ability of Borrower to repay the Debt or otherwise perform its obligations under the Loan Documents, or (iii) the validity or enforceability of the Loan Documents,.

"Maturity Date" means the date of maturity of the Advances disbursed pursuant to this Agreement, which shall be one (1) year from the date of the Evidence of Indebtedness evidencing such Advance(s).

"Permitted Indebtedness" means:

(a)     any Indebtedness arising under this Agreement or any other Loan Document;

(b)     indebtedness pursuant to the Borrower's bylaws or in indemnification agreements, to indemnify officers, directors and employees of the Borrower;

(c)     other indebtedness for borrowed money not in excess of $1,500,000 in any fiscal year;

(d)     general trade debt or accounts payable to non-Affiliate creditors incurred in the ordinary course of business, not in excess of $1,000,000 in any fiscal year;

-2-

IF-000002

(e)     any other indebtedness for borrowed money permitted by Lender.

"Person" means any individual, sole proprietorship, limited liability company, partnership, joint venture, trust, unincorporated organization, association, corporation, institution, public benefit corporation, firm, joint stock company, estate, entity or governmental agency.

"Responsible Officer" means each of the Chief Executive Officer and Chief Financial Officer of Borrower.

"Shell Company" means, with respect to the Borrower, that the Borrower has no or nominal operations; and (i) either no or nominal assets; (ii) assets consisting solely of cash and cash equivalents; or (iii) assets consisting of any amount of cash and cash equivalents and nominal other assets.

"Subsidiary" means any corporation or partnership in which (i) any general partnership interest or (ii) more than 50% of the stock of which by the terms thereof ordinary voting power to elect the Board of Directors, managers or trustees of the entity shall, at the time as of which any determination is being made, be owned by Borrower, either directly or through an Affiliate.

"Termination Date" means the date of termination of this Agreement in accordance with Section 9.1.

1.2     Accounting Terms. All accounting terms not specifically defined herein shall be construed in accordance with GAAP and all calculations made hereunder shall be made in accordance with GAAP. When used herein, the terms "financial statements" shall include the notes and schedules thereto.

2.     MANNER OF BORROWING AND TERMS OF ADVANCES

2.1     Amount of Lending Facility. Subject to the terms and conditions of this Agreement, Lender agrees to make Advances to Borrower in an amount not to exceed $500,000 United States Dollars. This Lending Facility is not a revolving line of credit and monies borrowed hereunder cannot be borrowed, repaid, and reborrowed.

2.2     Manner of Borrowing. Until the Termination Date, Borrower may request Advances under the Lending Facility as follows:

(a)     From time to time, Borrower may submit via personal delivery, electronic mail, or other commercially reasonable means, a Borrowing Certificate in substantially the form of Exhibit A hereto to Lender no later than 2:00 p.m. Central time, on such Business Day that falls 2 Business Days prior to the date that the Advance is to be made.

-3-

IF-000003

(b)      Once the Borrowing Certificate is received and Lender is satisfied as to the completeness of the same, Lender shall disburse the Advance to Borrower in accordance with the Borrowing Certificate.

(c)      On the last day of each fiscal quarter of Borrower, Lender may issue an Evidence of Indebtedness in the name of Borrower setting forth the Advances made to Borrower during such fiscal quarter (or in the case of the first Evidence of Indebtedness issued hereunder, all Advances made since the date of this Agreement).

2.3      Interest Rates, Payments, and Calculations.

(a)      Interest Rate.  Except as specified to the contrary in any Loan Document, the Debt shall bear interest, on the amount outstanding, at a rate equal to twelve percent (12%) per year simple interest.

(b)      Default Rate.  All Debt shall bear interest, from and after the occurrence of an Event of Default, at a rate equal to eighteen percent (18%) per year simple interest.

(c)      Term of Debt.  Each Borrowing Certificate and the interest accrued thereon shall be due one (1) year after the date of the Evidence of Indebtedness.

(d)      Computation.  All interest chargeable under the Loan Documents shall be computed on the basis of a three hundred sixty five (365) day year for the actual number of days elapsed.

2.4      Payments.   Borrower shall make payments directly to Lender in accordance with the terms of each Borrowing Certificate. Upon request from the Borrower, Lender shall also provide records showing the date and amount of all payments received and the amount of the Debt.

2.5      Term.   This Agreement shall become effective upon execution by all Parties and shall continue in full force and effect until the Termination Date.

2.6      Use of Proceeds.  Borrower will use the proceeds of Advances for working capital in the execution of Borrower's business model.

3.      CONDITIONS OF ADVANCES

3.1      Conditions Precedent to Initial Advance.  The obligation of Lender to make the initial Advance is subject to the condition precedent that Lender shall have received, in form and substance satisfactory to Lender, the following:

-4-

IF-000004

(a)     this Agreement and a Borrowing Certificate, each duly executed by Borrower; and

(b)     such other documents, and completion of such other matters, as Lender may deem reasonably necessary or appropriate.

3.2     Conditions Precedent to all Advances.  The obligation of Lender to make each Advance, including the initial Advance, is further subject to the following conditions:

(a)     receipt by Lender of a Borrowing Certificate as provided in Section 2.1;

(b)     each representation and warranty contained in Section 5 shall be true and accurate in all material respects on and as of the date of such Borrowing Certificate and on the effective date of each Advance as though made at and as of each such date, and no Event of Default shall have occurred and be continuing, or would result from such Advance.

The making of each Advance shall be deemed to be a representation and warranty by Borrower on the date of such Advance as to the accuracy of the facts referred to in subsection (c) of this Section 3.2.

4.     REPRESENTATIONS AND WARRANTIES

Borrower represents, warrants and covenants as follows:

4.1     Due Organization and Qualification.  Borrower and each Subsidiary is a corporation duly existing and in good standing under the laws of its state of incorporation and qualified and licensed to do business in, and is in good standing in, any state in which the conduct of its business or its ownership of property requires that it be so qualified.

4.2     Due Authorization; No Conflict.  The execution, delivery, and performance of the Loan Documents are within Borrower's powers, have been duly authorized, and are not in conflict with nor constitute a breach of any provision contained in Borrower's certificate of incorporation or bylaws, nor will they constitute an event of default under any material agreement to which Borrower is a party or by which Borrower is bound. Borrower is not in default under any agreement to which it is a party or by which it is bound, which default could have a Material Adverse Effect.

4.3     Name; Location of Principal Executive Office.  Borrower's correct legal name is as set forth on the signature page hereof.  The principal executive office of Borrower is located at the address indicated in Section 10 hereof.

-5-

IF-000005

4.4     Litigation.  Except as previously disclosed by borrower in its filings with the Securities and Exchange Commission ("SEC"), there are no actions or proceedings pending by or against Borrower or any Subsidiary before any court or administrative agency in which an adverse decision is reasonably likely to have a Material Adverse Effect. Borrower does not have knowledge of any such pending or threatened actions or proceedings.

4.5     No Material Adverse Change in Financial Statements.  All financial statements related to Borrower that have been delivered by Borrower to Lender fairly present in all material respects Borrower's financial condition as of the date thereof and Borrower's results of operations for the period then ended. There has not been a material adverse change in the financial condition of Borrower since the date of the most recent of such financial statements submitted to Lender.

4.6     Government Consents.  Borrower and each Subsidiary have obtained all consents, approvals and authorizations of, made all declarations or filings with, and given all notices to, all governmental authorities that are necessary for the continued operation of Borrower's business as currently conducted; except in each case where the failure of any of the foregoing to be true and correct could not reasonably be expected to have a Material Adverse Effect.

4.7     Full Disclosure.  No representation, warranty or other statement made by Borrower in any certificate or written statement furnished to Lender contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained in such certificates or statements not misleading.

5.      AFFIRMATIVE COVENANTS

Borrower covenants and agrees that, until payment in full of the Debt, Borrower shall do all of the following:

5.1     Good Standing.  Borrower shall maintain its and each of its Subsidiaries' corporate existence and good standing in its jurisdiction of incorporation and maintain qualification in each jurisdiction in which the failure to so qualify could have a Material Adverse Effect, provided that Borrower and each of its Subsidiaries shall at all times be permitted to merge with a Subsidiary (as long as Borrower remains the surviving entity) and acquire substantially all the assets of a Subsidiary, and the Borrower shall at all times be permitted to dissolve any inactive or dormant Subsidiaries.

5.2     Government Compliance.  Borrower shall comply, and shall cause each Subsidiary to comply, with all statutes, laws, ordinances and government rules and regulations to which it is subject, noncompliance with which could have a Material Adverse Effect. Borrower shall maintain, and shall cause each of its Subsidiaries to maintain, to the extent consistent with prudent management of Borrower's business, in force all licenses, approvals and agreements, the loss of which could have a Material Adverse Effect.

-6-

APP. 000960

5.3     Financial Statements and Reports. Borrower shall maintain a standard system of accounting in accordance with GAAP and (a) if Borrower has a class of securities registered with the SEC pursuant to the Securities Exchange Act of 1934 ("Exchange Act"), Borrower shall file with the SEC such periodic reports as are required by the Exchange Act, or (b) if Borrower does not have a class of securities registered with the SEC pursuant to the Exchange Act, Borrower shall post to the OTC Disclosure & News Service such filings as may be required by OTC Markets Group, Inc. (or any successor entity) for companies reporting under the OTC Pink current information tier (or a successor or substitute tier which provides information comparable to such tier, as determined by the Lender).

5.4     Taxes. Borrower shall make, and shall cause each Subsidiary to make, due and timely payment or deposit of all material federal, state, and local taxes, assessments, or contributions required of it by law, and will execute and deliver to Lender, on demand, appropriate certificates attesting to the payment or deposit thereof; and Borrower will make, and will cause each Subsidiary to make, timely payment or deposit of all material tax payments and withholding taxes required of it by applicable laws, including, but not limited to, the Federal Insurance Contributions Act, Federal Unemployment Tax Act (and any state counterparts), and local, state, and federal income taxes, and will, upon request, furnish Lender with proof satisfactory to Lender indicating that Borrower or a Subsidiary has made such payments or deposits; provided that Borrower or a Subsidiary need not make any payment if the amount or validity of such payment is contested in good faith by appropriate proceedings and is reserved against (to the extent required by GAAP) by Borrower.

5.5     Further Assurances. At any time and from time to time, Borrower shall execute and deliver such further instruments and take such further action as may reasonably be requested by Lender to effectuate the purposes of this Agreement.

6.      NEGATIVE COVENANTS

Borrower covenants and agrees that, until payment in full of the Debt, Borrower will not do any of the following, or enter into any agreement to do any of the following:

6.1     Dispositions. Convey, sell, lease, transfer or otherwise dispose of (collectively, a "Transfer"), or permit any of its Subsidiaries to Transfer, all or any part of its business or property, other than (i) Transfers of inventory in the ordinary course of business, (ii) Transfers of assets in the ordinary course of business which have become worn out or obsolete or which are promptly being replaced, and (iii) other Transfers of assets outside the ordinary course of business in an aggregate amount not to exceed One Hundred Fifty Thousand Dollars ($150,000) in any fiscal year.

6.2     Shell Status. Become a Shell Company.

-7-

APP. 000961

IF-000007

6.3    Debt.  Create, incur, assume or be or remain liable with respect to any indebtedness, or permit any Subsidiary so to do, other than Permitted Indebtedness.

6.4    Distributions.  Pay any dividends or make any other distribution or payment on account of or in redemption, retirement or purchase of any capital stock, or set apart any funds for the payment of dividends (other than dividends payable in shares of Borrower's stock) on any class of shares of Borrower's stock, or apply any of its funds, property or assets for, the purchase, redemption, or other retirement of, or make any other distribution, by reduction of capital or otherwise, in respect of any class of shares of Borrower's stock, or with respect to any other funds or assets, without the prior written consent of Lender.

7.    EVENTS OF DEFAULT

Any one or more of the following events shall constitute an Event of Default by Borrower under this Agreement:

7.1    Payment Default.  If Borrower fails to pay when due and payable, or when declared due and payable, any portion of the Debt (whether of principal or interest);

7.2    Material Adverse Effect.  If there occurs an event that has a Material Adverse Effect;

7.3    Attachment.  If all or any portion of Borrower's assets is attached, seized, subjected to a writ or distress warrant, or is levied upon, or comes into the possession of any trustee, receiver or person acting in a similar capacity and such attachment, seizure, writ or distress warrant or levy has not been removed, discharged or rescinded within ten (10) days, or if Borrower is enjoined, restrained, or in any way prevented by court order from continuing to conduct all or any part of its business affairs, or if a judgment or other claim becomes a lien or encumbrance upon any portion of Borrower's assets, or if a notice of lien, levy, or assessment is filed of record with respect to any of Borrower's assets by the United States Government, or any department, agency, or instrumentality thereof, or by any state, county, municipal, or governmental agency, and the same is not paid within ten (10) days after Borrower receives notice thereof;

7.4    Judgments.  If a judgment or judgments for the payment of money in an amount, individually or in the aggregate, the uninsured portion of which is at least Three Hundred Thousand Dollars ($300,000) shall be rendered against Borrower and shall remain unsatisfied and unstayed for a period of ten (10) days; or

7.5    Misrepresentations.  If any material misrepresentation or misstatement exists now or hereafter in any warranty or representation set forth herein or in any certificate delivered to Lender by any Responsible Officer pursuant to this Agreement or to induce Lender to enter into this Agreement or any other Loan Document.

-8-

IF-000008

8.      LENDER'S RIGHTS AND REMEDIES

        8.1     Acceleration of Debt.  Upon the occurrence and continuation of an Event of Default, Lender may, at its election, upon notice (except for an Event of Default specified under section 7.3, as to which no notice shall be required), declare the Debt, whether evidenced by this Agreement, by any of the other Loan Documents, or otherwise, immediately due and payable.

        8.2     Remedies Cumulative.  Lender's rights and remedies under this Agreement, the Loan Documents, and all other agreements shall be cumulative. Lender shall have all other rights and remedies not inconsistent herewith as provided by law or in equity. No exercise by Lender of one right or remedy shall be deemed an election, and no waiver by Lender of any Event of Default on Borrower's part shall be deemed a continuing waiver. No delay by Lender shall constitute a waiver, election, or acquiescence by it. No waiver by Lender shall be effective unless in writing signed by Lender.

9.      TERMINATION

        9.1     Termination by Lender or Borrower. Either Lender or Borrower may terminate this Agreement at any time upon delivery of notice of the same to the other party in accordance with Section 10.

        9.2     Effect of Termination. Upon delivery of notice of termination in accordance with Section 10, this Agreement shall terminate immediately. Notwithstanding any termination of this Agreement, all of the terms and provisions of this Agreement shall continue in full force and effect until all Debt has been paid and performed in full, and no termination shall impair any right or remedy of Lender, nor shall any such termination relieve Borrower of any obligation to any Lender until the Debt has been paid in full.

10.     NOTICES

        Unless otherwise provided in this Agreement, all notices or demands by any Party relating to this Agreement or any other agreement entered into in connection herewith shall be in writing and (except for financial statements and other informational documents which may be sent by first-class mail, postage prepaid) shall be personally delivered or sent by a recognized, overnight delivery service or by certified mail, postage prepaid, return receipt requested, as the case may be, at its addresses set forth below. Notice may also be given by electronic mail or other similar means at the electronic mail address set forth below for each Party provided that proof of delivery of such notice is obtained or such notice is actually received.

        If to Borrower:          CHIMERA ENERGY CORP.
                                 2800 Post Oak Blvd 41st Floor
                                 Houston Texas 77056

-9-

IF-000009

If to Lender:                     INFINITE FUNDING INC
                                        5847 San Felipe Street Suite 1700
                                        Houston Texas 77057

Any Party may change the address at which it is to receive notices hereunder by providing notice in writing to the other Parties in the foregoing manner.

## 11. CHOICE OF LAW AND VENUE.

This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of Texas, without regard to principles of conflicts of law.

## 12. GENERAL PROVISIONS

12.1  Successors and Assigns.  This Agreement shall bind and inure to the benefit of the respective successors and permitted assigns of each of the parties; provided, however, that neither this Agreement nor any rights hereunder may be assigned by Borrower without Lender's prior written consent, which consent may be granted or withheld in Lender's sole discretion.

12.2  Time of Essence.  Time is of the essence for the performance of all obligations set forth in this Agreement.

12.3  Severability of Provisions; Headings.  Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision. Headings are set forth in this Agreement for convenience only.

12.4  Amendments in Writing.  This Agreement cannot be changed or terminated orally. All prior agreements, understandings, representations, warranties, and negotiations between the parties hereto with respect to the subject matter of this Agreement, if any, are merged into this Agreement.

12.5  Counterparts.  This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement.

**SIGNATURE PAGE FOLLOWS.**

-10-

IF-000010

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

LENDER:

INFINITE FUNDING INC

By: _____

Name: Andrew Farmer

Title:  Chairman


BORROWER:

CHIMERA ENERGY CORP.

By: _____

Name: Charles Grob

Title:   CEO & Sole Director

-11-

IF-000011

EXHIBIT A

BORROWING CERTIFICATE

The undersigned hereby certifies as follows:

I, Charles Grob, am the duly appointed and acting CEO & Sole Director of CHIMERA ENERGY CORP.

This certificate is delivered pursuant to Section 2.1 of that certain Master Credit Agreement dated as of August 15, 2012 (the "Master Credit Agreement") among INFINITE FUNDING INC, as Lender and CHIMERA ENERGY CORP. as Borrower. The terms used in this Borrowing Certificate which are defined in the Master Credit Agreement have the same meaning herein as ascribed to them therein.

Borrower hereby requests an Advance in the amount of $25,000. Borrower requests that the Advance be deposited as follows:

| | |
|---|---|
| Account Name: | **CHIMERA ENERGY CORP.** |
| Bank Name: | **Whitney Bank** |
| Routing Number: | **065000171** |
| Account Number: | **750613130** |

As of the date of this Borrowing Certificate, all representations and warranties of Borrower stated in the Master Credit Agreement are true, accurate and complete in all material respects.

IN WITNESS WHEREOF, this Borrowing Certificate is executed by the undersigned as of this 27th day of September 2012.

CHIMERA ENERGY CORP.

By: _____

Name: Charles Grob

Title: CEO & Sole Director

-12-

IF-000012

# Appendix

# Exhibit DDDD

| Subject: | Fwd: Pemex– Chimera Energy Corp |
|---|---|
| From: | Thomas Massey (thomas.massey@yahoo.com) |
| To: | apfarmer@yahoo.com; |
| Date: | Monday, August 20, 2012 11:40 AM |

Thomas Massey
409-658-1970 Cell

Begin forwarded message:

**From:** Baldemar Rios <baldemar.rios@gmail.com>
**Date:** August 20, 2012 10:21:09 AM CDT
**To:** Thomas Massey <thomas.massey@yahoo.com>
**Subject: Pemex- Chimera Energy Corp**

My Friend,

Here is the letter, I am waiting for the signature only.

I will call you,

Thanks,

BR

http://us-mg4.mail.yahoo.com/neo/launch?.rand=460pka2fnu2pp                    4/6/2013

| | |
|---|---|
| Subject: | Pemex– Chimera Energy Corp |
| From: | Baldemar Rios (baldemar.rios@gmail.com) |
| To: | thomas.massey@yahoo.com; |
| Date: | Monday, August 20, 2012 10:21 AM |

My Friend,

Here is the letter, I am waiting for the signature only.

I will call you,

Thanks,

BR

FW-03772                                    APP. 000969                                    TM000246

# Appendix

# Exhibit EEEE

| | |
|---|---|
| Subject: | Fwd: Recording of Head of PEMEX IR Confirming No Contract Exists with CHMR |
| From: | Andrew Farmer (andrew.farmer@iridiumcapitallimited.com) |
| To: | thomas.massey@yahoo.com; |
| Date: | Friday, August 24, 2012 1:00 PM |

Sent from my iPhone

Begin forwarded message:

> **From:** "David M. Loev" <dloev@loevlaw.com>
> **Date:** August 24, 2012 12:01:56 PM CDT
> **To:** "Tyson Rohde" <tysonrohde@hotmail.com>, "Andrew Farmer"
> <andrew.farmer@iridiumcapitallimited.com>
> **Subject: FW: Recording of Head of PEMEX IR Confirming No Contract Exists with CHMR**

David M. Loev

The Loev Law Firm, PC

6300 West Loop South

Suite 280

Bellaire, Texas 77401

(713) 524-4110 - phone

(713) 524-4122 - fax

(713) 920-9372 - efax

dloev@loevlaw.com

http://www.loevlaw.com

**From:** infitialis1 [mailto:infitialis1@gmail.com]
**Sent:** Friday, August 24, 2012 11:43 AM
**To:** Infit Ialis

http://us-mg4.mail.yahoo.com/neo/launch?.rand=460pka2fnu2pp                    4/6/2013

**Subject:** Recording of Head of PEMEX IR Confirming No Contract Exists with CHMR

Recording of Rolando Galindo head of IR for Pemex denying existence of Chimera Energy (CHMR) Contract:

http://youtu.be/bTQdk0kX4rc

Thus far we have reached out to regulators, google, yahoo, and aol. Only WSJ removed the ads. We also reached out to Businesswire as they continue to allow this scam to issue fluff press releases on a daily basis.

Hopefully someone puts an end to this soon as we have been getting tons of emails from investors that have been harmed.

Follow Infitialis on Twitter:

https://twitter.com/Infitialis

FW-03772                                    APP. 000972                                TM000290

# Appendix

# Exhibit FFFF

APP. 000973

| Subject: | [FWD: Fw: MOU_signed] |
|---|---|
| From: | cgrob@chimeraenergyusa.com (cgrob@chimeraenergyusa.com) |
| To: | andrew.farmer@iridiumcapitallimited.com; |
| Cc: | thomas.massey@yahoo.com; |
| Date: | Friday, August 24, 2012 1:43 PM |

**Charles Grob**
**Chimera Energy Corporation**
**President and CEO**
**2800 Post Oak Boulevard Ste 4100**
**Houston, TX 77056**
**Phone: (832) 390-2334**
**Fax: (832) 390-2350**



-------- Original Message --------
Subject: Fw: MOU_signed
From: Thomas Massey <thomas.massey@yahoo.com>
Date: Tue, August 07, 2012 9:09 pm
To: Grob Charles <cgrob@chimeraenergyusa.com>

**Thomas Massey**
**409-658-1970 cell**
----- Forwarded Message -----
**From:** Baldemar Rios <baldemar.rios@gmail.com>
**To:** Thomas Massey <thomas.massey@yahoo.com>
**Sent:** Tuesday, August 7, 2012 8:24 PM
**Subject:** MOU_signed

My friend,

Here is,

Thanks,

BR

http://us-mg4.mail.yahoo.com/neo/launch?.rand=460pka2fnu2pp                    4/6/2013

APP. 000973-A

## MEMORANDUM OF UNDERSTANDING AGREEMENT
### BETWEEN CHIMERA ENERGY USA AND PEMEX.

This MEMORANDUM OF UNDERSTANDING (MOU) is made and entered into as of this ___ day of
_____, 2012, by and between the following parties:

CHIMERA ENERGY USA ("CEUSA"), a company based in Texas and represented herein by its duly
authorized President, **CHARLES GROB**. "CEUSA" includes any designed affiliate subsidiary.

PEMEX ("PEMEX") a company based in Mexico, represented herein by it duly authorized
representative, __JOSE QUIROGA __.

<u>PREAMBLE:</u>

Recognizing the mutual benefits to be gained through co-operative efforts and described activities the
above described parties do hereby enter into this Memorandum of Understanding and agree to the
following:

<u>PURPOSE:</u>
The purpose of this memorandum is to facilitate and promote cooperation between PEMEX and CEUSA
in a subsequent Agreement that will outline PEMEX's interest in utilizing CEUSAs revolutionary
exothermic non-hydraulic extraction method throughout Latin America.

**<u>FURTHER AGREEMENTS</u>**
This document is a Memorandum of Understanding and is not to create legal or binding obligations. The
specific details are set forth in an agreement supplemental to this Memorandum. The supplemental
agreement will set out, and detail, the terms, and the responsibilities of each party in respect to the use of
the exothermic non-hydraulic extraction method. This MOU may not be amended or modified otherwise
than by written agreement executed by the parties hereto or their respective successors and legal
representatives. This MOU will expire 180 days from the date set forth above if no definitive Agreement
is executed.

**<u>INITIAL OBLIGATION AGREEMENT</u>**

The parties agree to the following, which shall be included in the Agreement:

   PEMEX OBLIGATIONS:

   - PEMEX will provide a location for testing.


   CEUSA OBLIGATIONS:

   - CEUSA will provide equipment required for exothermic non-hydrolic extraction.
   - CEUSA will provide a third party analysis.
   - CEUSA will provide documentation of testing results.



Page 1 of 2

**CONSIDERATION:**

The parties acknowledge and agree that PEMEX shall engage CEUSA, as set out in a separate Compensation Agreement.

I, Agree _____ Date _8.07.12_____

CHARLES GROB

I, Agree _____ Date___August, 6th of 2012_____

JOSE QUIROGA

Subgerente Chicontepec, PEP Region Norte

FW-03772                         APP. 000975                         TM000287

# Appendix

# Exhibit GGGG

**To:**     David M. Loev[dloev@loevlaw.com]
**Cc:**     'Alyssa Vasquez'[alyssa@loevlaw.com]
**From:**   Andrew Farmer
**Sent:**   Tue 8/28/2012 7:10:14 PM
**Importance:**    **Normal**
**Subject:**  Re: Letter
CHMR - Shareholder Letter - 8.28.12.docx

Here you go.



Thanks,



Andrew Farmer

**Iridium Capital Limited**

(832) 364-6317

(832) 553-3080 Fax

(619) 247-2680 Cell


From: "David M. Loev" <dloev@loevlaw.com>
Date: Tuesday, August 28, 2012 6:06 PM
To: Andrew Farmer <andrew.farmer@iridiumcapitallimited.com>
Subject: RE: Letter


I believe she wants to leave in about ten minutes, let's try to get it done.



David M. Loev

The Loev Law Firm, PC

6300 West Loop South

Suite 280

SEC-LoevD-E-0003429

Bellaire, Texas 77401

(713) 524-4110 - phone

(713) 524-4122 - fax

(713) 920-9372 - efax

dloev@loevlaw.com

http://www.loevlaw.com

**From:** Andrew Farmer [mailto:andrew.farmer@iridiumcapitallimited.com]
**Sent:** Tuesday, August 28, 2012 6:04 PM
**To:** David M. Loev
**Subject:** Re: Letter

Tell Alyssa we'll buy her lunch and flowers if she stays another little bit. I'll also gladly pay double the normal filing fee.

Sent from my iPhone

On Aug 28, 2012, at 5:59 PM, "David M. Loev" <dloev@loevlaw.com> wrote:

Close?  If it will not be soon, let me know so I don't keep my assistant here. We can always edgarize and file early tomorrow morning.

David M. Loev

The Loev Law Firm, PC

6300 West Loop South

Suite 280

Bellaire, Texas 77401

(713) 524-4110 - phone

(713) 524-4122 - fax

SEC-LoevD-E-0003430

(713) 920-9372 – efax

dloev@loevlaw.com

http://www.loevlaw.com

**From:** Andrew Farmer [mailto:andrew.farmer@iridiumcapitallimited.com]
**Sent:** Tuesday, August 28, 2012 5:43 PM
**To:** David M. Loev
**Subject:** Letter

My Mac just crashed.  I've got a few paragraphs to rebuild.  Can you give me another 15 minutes?

Thanks,

Andrew Farmer

**Iridium Capital Limited**

(832) 364-6317

(832) 553-3080 Fax

(619) 247-2680 Cell

─────────

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2015.0.5856 / Virus Database: 4306/9322 - Release Date: 03/17/15

SEC-LoevD-E-0003431