**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No.:  4:14-CV-02345** |
| | § | |
| **ANDREW I. FARMER,** | § | |
| **CHARLES E. GROB, JR.,** | § | |
| **CAROLYN AUSTIN,** | § | |
| **BALDEMAR P. RIOS, and** | § | |
| **CHIMERA ENERGY CORP.** | § | |
| | § | |
| **Defendants.** | § | |
| _____ | § | |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S**
**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**ANDREW I. FARMER'S RENEWED MOTION TO VACATE SUMMARY**
**JUDGMENT ORDER, OR ALTERNATIVELY, TO STAY PROCEEDINGS**


Dated: January 18, 2017

Matthew J. Gulde
Attorney-in-Charge
Illinois Bar No. 6272325
S.D. Texas Bar No. 1821299
Nikolay V. Vydashenko
New York Bar No. 4628566
United States Securities and
Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:  (817) 978-1410 (mg)
Facsimile:  (817) 978-4927
guldem@sec.gov

*Attorneys for Plaintiff*
*Securities and Exchange Commission*

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ...........................................................................ii-iii

PRELIMINARY STATEMENT ......................................................................1

BACKGROUND ...............................................................................................4

    I.      Summary of Procedural History ...........................................................4

    II.    Massey's Contacts with the Commission ..............................................6

ARGUMENT ....................................................................................................6

    I.      Farmer Cannot Satisfy the Requirements for Vacating the Oct. 7 Order ...............6

          A.     The Legal Standard Applicable to the Motion to Vacate ...........................6

          B.     Grob's Testimony at the Hearing Does Not Change the Outcome, and Farmer Failed to Elicit Additional Testimony from Grob .........................8

          C.     Farmer Has Not Adduced any other Newly Discovered Evidence.............9

              1.  The Emails In the Appendix Are Not Newly Discovered Evidence ......9

              2.  The Massey Statements Are Not Newly Discovered Evidence...........11

          D.     The Evidence on which Farmer Relies Would Not Lead to a Different Result ..............................................................13

              1.  The Grob Emails Are Cumulative and Not Material ...........................13

              2.  Farmer's Intended Use of the Massey Materials Is Prejudicial ............15

              3.  The Massey Statements Would Not Change the Outcome and Are Not Admissible ...........................................15

    II.    Actual Newly Discovered Evidence Supports the Findings of the Oct. 7 Order...18

    III.   A Stay of this Action Is Not Warranted.............................................21

CONCLUSION......... .........................................................................23

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order           – Page i
SEC v. Farmer, et al.

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alcala v. Texas Webb County.*,
  625 F. Supp. 2d 391 (S.D. Tex. 2009) ........................................................22

*Atkinson v. Prudential Prop. Co.*,
  43 F.3d 367 (8th Cir. 1994) .......................................................................9

*Goldstein v. MCI WorldCom*,
  340 F.3d 238 (5th Cir. 2003) ................................................................7, 16

*Halliburton Energy Services, Inc. v. NL Industries*,
  618 F. Supp. 2d 614 (S.D. Tex. 2009) ...................................................9, 10

*Hesling v. CSX Transport, Inc.*,
  396 F.3d 632 (5th Cir. 2005) ...............................................................7, 11

*Hunsinger v. Sko Brenner American, Inc.*,
  2014 WL 1462443 (N.D. Tex. Apr. 15, 2014) ...........................................17

*In re High Fructose Corn Syrup Antitrust Litigation*,
  156 F. Supp. 2d 1017 (N.D. Ill. 2001) ......................................................17

*Kellogg Brown & Root International, Inc. v. Altanmia Commercial Marketing Co. W.L.L.*,
  2009 WL 514054 (S.D. Tex. Mar. 2, 2009).................................................9

*Longden v. Sunderman*,
  979 F.2d 1095 (5th Cir.1992) ....................................................................6

*MGM Well Services, Inc. v. Mega Lift Systems, LLC*,
  2007 WL 861098 (S.D. Tex. Mar. 19, 2007).............................................12

*Mumford v. Bowen*,
  814 F.2d 328 (7th Cir. 1986) ...................................................................12

*Nasti v. Ciba Specialty Chemicals Corp.*,
  2006 WL 6554167 (S.D. Tex. April 3, 2006).............................................10

*Painter v. Suire*,
  650 Fed. Appx. 219 (5th Cir. 2016)..........................................................17

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                    – Page ii
SEC v. Farmer, et al.

*Pena v. Mattox*,
   1995 WL 257870 (N.D. Ill. May 1, 1995) ...................................................................11

*SEC v. First Finance Group. of Texas, Inc.*,
   659 F.2d 660 (5th Cir. 1981) ......................................................................................22

*Simon v. United States*,
   891 F.2d 1154 (5th Cir.1990) .....................................................................................11

*Thermacor Process, L.P. v. BASF Corp.*,
   567 F.3d 736 (5th Cir. 2009) ...................................................................7, 13, 14, 18

*U.S. v. Trujillo*,
   136 F.3d 1388 (10th Cir. 1998) ..................................................................................17

*Washington v. Patlis*,
   916 F.2d 1036 (5th Cir.1990) .....................................................................................11

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                    – Page iii
SEC v. Farmer, et al.

Plaintiff Securities and Exchange Commission (the "Commission") submits this Memorandum of Law in Opposition to Defendant Andrew I. Farmer's Renewed Motion to Vacate the Order on Summary Judgment, or Alternatively, To Stay Proceedings.  For the reasons provided below and in the Commission's Memorandum of Law in Opposition to Defendant Andrew I. Farmer's Motion to Vacate (Dkt. No. 116), the Renewed Motion should be denied.

## PRELIMINARY STATEMENT

On October 7, 2015, the Court issued a Memorandum and Order granting the Commission's motion for summary judgment on all claims and denying Defendant Farmer's motion for summary judgment (the "Oct. 7 Order").  (Dkt. No. 70.)  It now has become apparent that in challenging the Oct. 7 Order, Farmer has adopted a strategy that is intended not to convince the Court of the merits of Farmer's position, but to delay this case indefinitely.

When Farmer first sought to vacate the Oct. 7 Order, he pleaded with the Court to allow him to depose Defendant Grob, a person Farmer termed a "pivotal" witness who would offer "game-chang[ing]" testimony.  Yet, when it came time to depose Grob, Farmer failed either to object to Grob's obviously unfounded assertion of the privilege against self-incrimination (which this Court deemed waived just weeks earlier) or to move to compel Grob's testimony in the four months since then.  This pattern of inaction has repeated itself several times over.

Farmer next urged the Court to require the U.S. Attorney's Office for the Southern District of Texas ("USAO"), which is prosecuting Farmer criminally, to turn over all of Grob's emails that the USAO obtained as a result of a search warrant executed on Chimera's server. The USAO did so, and Farmer has since September 2016 been in possession of emails he said would exculpate him.  This Renewed Motion was supposed to be his opportunity finally to bring these emails to the Court's attention.  Farmer now presents 35 pages of emails, all of which the

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                    – Page 1
SEC v. Farmer, et al.

Commission produced to Farmer in discovery *over a year ago* (save for one email chain, parts of which the Commission also had produced previously).

Having struck out on Grob's testimony and emails, Farmer now contends that the exculpatory evidence is to be found in recordings and FBI reports of statements that Thomas Massey made to the FBI.  Except Farmer cannot disclose the contents of the Massey statements because of confidentiality restrictions imposed upon him in criminal discovery.  This too is a red herring.  Farmer is not serious about using these statements.  Despite telling this Court that he is "in the process" of challenging the confidentiality designation of records of Massey's statements in the criminal case, as of the filing of this brief, Farmer has not moved the criminal court for such relief.  Moreover, Farmer surely understands what Massey can testify to.  After all, Farmer paid Massey hundreds of thousands of dollars during Massey's work on the Chimera scheme.  But, Farmer has never even attempted to obtain any evidence from Massey during discovery, either through deposition or document subpoenas or a declaration.

Setting the dilatory tactics aside, the Renewed Motion (like the original motion) fails on the merits.  Farmer relies on three categories of what he claims to be "newly discovered" evidence:  (i) Grob's testimony at the hearing on remedies;[1] (ii) Grob's emails obtained by the USAO; and (iii) records of Massey's statements.  Farmer fails to demonstrate that this evidence satisfies either of the two key requirements of Rule 60(b)(2), which governs whether an order should be vacated based on newly discovered evidence.

The first fundamental requirement of Rule 60(b)(2) is that Farmer must have exercised "reasonable diligence" in obtaining the new evidence.  This requirement bars any reliance on the

---

[1] Grob's testimony was addressed in the Commission's opposition to Farmer's original motion to vacate, which we incorporate herein.

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                    – Page 2
SEC v. Farmer, et al.

Grob emails Farmer cites, because they were in Farmer's possession at the time the summary judgment motions were litigated. These emails are not new to this case; they only may appear new to Farmer for failure to exercise reasonable diligence in locating and arguing their import at the appropriate time. The diligence requirement also bars any reliance on the Massey statements, which, as described above, Farmer did not exercise *any* diligence to obtain.

The second fundamental requirement of Rule 60(b)(2) is that the newly discovered evidence must have "clearly" produced a different result. Farmer's evidence, even if considered despite his lack of reasonable diligence, falls far short of this standard. Farmer contends that Grob's emails demonstrate that Farmer did not play a role in drafting or approving Chimera's press releases. But, this is something the Court already had recognized in the Oct. 7 Order, and the Commission has not contended otherwise. And notably, Farmer does not contend in the Renewed Motion that any "new" evidence relates to Farmer's role in the sham IPO, which was a key basis for Farmer's liability. Simply put, the recycled emails that Farmer proffers add nothing new to the Court's understanding of Farmer's role, and thus would not have changed the outcome, much less "clearly" have changed it. As to Massey's statements, their use would be profoundly prejudicial to the Commission. It would allow Farmer to pick and choose the most favorable evidence among the mountain of criminal discovery he is now receiving, to which the Commission is not privy. Moreover, the evidence of Massey statements would not change the outcome because it is plainly inadmissible hearsay to which no exceptions apply.

Finally, the only evidence truly new to this case – the Grob emails that previously have not been produced – incriminate Farmer. As described in detail below, even a small sampling of these emails is deeply revealing of how Farmer executed the Chimera scheme.

<center>*     *     *     *</center>

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                    – Page 3
SEC v. Farmer, et al.

This Court has afforded Farmer great latitude.  He wanted to depose Grob, but failed to compel Grob's testimony.  He wanted to obtain all of Grob's emails, but failed to cite any of the thousands of new ones he received.  And now he wants to use Massey's statements to the FBI, but he never bothered to depose Massey.  As Farmer continues to review materials being produced in the criminal case, he undoubtedly will "discover" and seek to use in this proceeding more such "new" evidence, presenting an ever moving target.  The Commission respectfully submits that this must come to an end.  Farmer has had ample opportunity to demonstrate a basis for vacating the Oct. 7 Order, but has failed to do so.

## BACKGROUND

### I.    Summary of Procedural History

The Commission commenced this enforcement action on August 14, 2014.  (Dkt. No. 1.) Discovery concluded on July 17, 2015.  By that time, Farmer was the only remaining litigating defendant.[2]  On October 7, 2015, the Court issued an Order granting the Commission's summary judgment motion on all claims and denying Defendant Farmer's summary judgment motion. (Dkt. No. 70.)

On May 13, 2016, the Court held a hearing on the Commission's motion for entry of final judgment as to Defendants Farmer, Grob, and Rios.  (Dkt. No. 85.)  At the hearing, the Court issued rulings as to monetary and injunctive relief applicable against these Defendants, and also heard testimony from Grob.  This was Grob's first substantive testimony in this case, as he had asserted the Fifth Amendment privilege against self-incrimination in response to all questions posed to him at his deposition.  At the hearing, Grob revealed for the first time the existence of

---

[2]  The Court entered final judgment by default against Chimera (Dkt. No. 71), an agreed final judgment against Defendant Austin (Dkt. No. 74), and agreed partial judgments against Defendants Grob and Rios as to their liability only, reserving the issue of remedies for later determination (Dkt. Nos. 60-61).

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                    – Page 4
SEC v. Farmer, et al.

an email – not produced to the Commission during its investigation or this litigation – in which Farmer instructed Grob on how to solicit and pay off straw purchasers for Chimera's IPO.

On June 6, 2016, Farmer filed a motion to vacate the Oct. 7 Order, and also sought permission to depose Grob.  (Dkt. No. 115.)  On July 27, 2016, the Court reopened discovery "for the limited purpose of taking Grob's deposition."  (Dkt. No. 118.)  The Court reserved ruling on the motion to vacate.  (*Id.*)  At his August 15, 2016 deposition, Grob asserted the privilege against self-incrimination in response to all questions posed to him, despite having waived it earlier.

On August 8, 2016, prior to Grob's deposition, the USAO produced to the Commission (and the Commission produced to Farmer) every email in Grob's Chimera email account that Grob had sent to or received from Farmer, including the email related to the sham IPO transactions.  The USAO previously had obtained these emails through a search warrant on Chimera's email service provider.  Notably, Grob, Chimera, and Farmer never produced this relevant email to the Commission during the investigation or litigation.

At a status conference on September 13, 2016, Farmer argued that he is entitled to *all* emails in Grob's account, not just those addressed to or sent by Farmer.  On September 21, 2016, the Commission received these remaining emails from the USAO and produced them to Farmer. In the meantime, on September 15, 2016, the USAO indicted Farmer and Thomas Massey.  *See United States of America v. Farmer, et al.*, No. 16 CR 0408 (S.D. Tex.).

The Court held another status conference on October 5, 2016.  At that time, Farmer expressed his intent to file a motion to stay this case pending the completion of the criminal proceeding, and to supplement the motion to vacate with documents then recently obtained from

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                              – Page 5
SEC v. Farmer, et al.

the USAO (*i.e.*, the entirety of Grob's Chimera email account).  The Court directed Farmer to file any motion to stay or vacate at his "earliest convenience."

## II.      Massey's Contacts with the Commission

In the Renewed Motion, as well as in his December 22, 2016 letter to the Court, Farmer overstates the nature of Massey's contacts with the Commission and inaccurately portrays them as improper.  Massey has not formally cooperated with the Commission.  In December 2016, Farmer's counsel inquired of the Commission's staff about Massey's contacts with the Commission.  As the Commission staff then told Farmer's counsel, in August 2016, Massey made a small number of unsolicited phone calls to the staff.  Massey provided some information in the course of these calls before terminating all contact with the Commission.

Notwithstanding Farmer's insinuations, there was nothing untoward about Massey's phone calls.  The Commission did not have any obligation to disclose these calls to Farmer.  Indeed, Farmer and his counsel have been free to contact Massey at any time without the presence or knowledge of the Commission.  Moreover, the contacts did not render inaccurate the Commission's statement in the Statement of Undisputed Facts that Massey asserted the privilege against self-incrimination during the Commission's investigation.

### ARGUMENT

## I.      Farmer Cannot Satisfy the Requirements for Vacating the Oct. 7 Order

### A.      The Legal Standard Applicable to the Motion to Vacate

It appears that Farmer renews his motion to vacate the Oct. 7 Order under Rule 60(b)(2) and, ostensibly, Rule 60(b)(6).  In the Fifth Circuit, relief under 60(b) is "extraordinary . . . and the requirements of the rule must be strictly met."  *Longden v. Sunderman*, 979 F.2d 1095, 1102 (5th Cir.1992).  A motion to vacate is not a proper vehicle to "re-litigate matters that have been

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                    – Page 6
SEC v. Farmer, et al.

resolved to the movant's dissatisfaction" or to give the movant a "second bite at the apple." *MGM Well Servs., Inc. v. Mega Lift Systems, LLC*, No. H-0501634, 2007 WL 861098, at *2 (S.D. Tex. Mar. 19, 2007) (Atlas, J.) (internal quotations omitted).

Rule 60(b)(2) permits the Court to vacate a judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(e)." Fed. R. Civ. P. 60(b). To prevail, Farmer bears the burden of demonstrating that (i) he exercised reasonable diligence in obtaining the newly discovered evidence, and (ii) the evidence is "material and controlling and *clearly* would have produced a different result." *Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 744 (5th Cir. 2009) (emphasis added). The newly discovered evidence must "be both admissible and credible," *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003), rather than "merely cumulative or impeaching." *Thermacor*, 567 F.3d at 744.

Relief under Rule 60(b)(6), which permits vacating for "any other reason," should be granted only in "extraordinary circumstances." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005) (internal quotations omitted). Relief under Rule 60(b)(6) is mutually exclusive from relief available under the other subsections of Rule 60(b). *Id.* at 643. As such, the "reason for relief set forth under Rule 60(b)(6) cannot be the reason for relief sought under another subsection of 60(b)." *Id.* Because Farmer has not identified any "extraordinary circumstances" separate from the grounds asserted under Rule 60(b)(2), he cannot prevail under Rule 60(b)(6).

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                                 – Page 7
SEC v. Farmer, et al.

**B.** **Grob's Testimony at the Hearing Does Not Change the Outcome, and Farmer Failed To Elicit Additional Testimony from Grob**

In his original motion to vacate, Farmer claimed that Grob's testimony at the May 13, 2016 hearing contained evidence sufficient to vacate the Oct. 7 Order.[3]  Yet, perhaps recognizing that Grob's testimony at the hearing was insufficient, Farmer also strenuously urged the Court to allow Farmer to depose Grob.  Farmer claimed that the parties heard only "a snippet of Grob's story" at the hearing (Mtn. to Vacate at 17), and that "justice requires that the newly discovered facts be properly explored through this obviously pivotal witness."  (Reply in Support of Mtn. to Vacate (Dkt. No. 117) at 5.)

Farmer got his wish.  But, when it came time to elicit the full story from Grob – the "pivotal" witness whose testimony was "frankly, a game-changer" (Reply in Support of Mtn to Vacate n.1 at 5) – Farmer permitted Grob to assert the privilege against self-incrimination *without as much as an objection.*[4]  (*See* Grob Dep. Tr. at Ex. D.)  Farmer not only failed to object then, but later failed to move to compel Grob's testimony, even though Farmer was overwhelmingly likely to prevail, given the Court's ruling at the hearing that Grob had waived the privilege.  Farmer's failure to pursue Grob's testimony only can be explained by his realization that the full story from Grob would prove incriminating rather than exonerating.  Regardless of Farmer's motivation, his failure to seek Grob's testimony is fatal to any attempt to establish "reasonable diligence" in the context of Rule 60(b)(2).

---

[3]  For the reasons stated in the Commission's opposition to the motion to vacate (Dkt. No. 116), Grob's testimony does not alter the result of the Oct. 7 Order.

[4]  In addition to failing to object to Grob's obviously invalid privilege assertion, Farmer's counsel posed several leading questions to Grob's counsel that were intended to help Grob lay the foundation for the privilege assertion. (*See*, *e.g.*, Grob Dep. Tr. 21:18 – 22:4.)

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                   – Page 8
SEC v. Farmer, et al.

### C.    Farmer Has Not Adduced any other Newly Discovered Evidence

The Renewed Motion addresses two categories of purportedly newly discovered evidence: the Grob emails in the Appendix to the Renewed Motion (Dkt. No. 125-1) (the "Appendix"), and records of statements Thomas Massey made to the FBI. Neither the emails nor records of Massey's statements constitute newly discovered evidence under Rule 60(b)(2).

### 1.    The Emails in the Appendix Are Not Newly Discovered Evidence

It is well established that when a party is in possession of evidence before the order it is seeking to vacate has been litigated, such evidence is not "newly discovered." *See, e.g., Kellogg Brown & Root Int'l, Inc. v. Altannia Commercial Mktg. Co. W.L.L.*, No. H-07-2684, 2009 WL 514054, at *8 (S.D. Tex. Mar. 2, 2009) (Rosenthal, J.) (deposition transcript available to parties at time of litigation is not newly discovered under Rule 60(b)(2)).[5] This common sense rule bars any relief based on the Grob emails in the Appendix, because (with two immaterial exceptions noted below) they are duplicates of emails that the Commission timely produced to Farmer in discovery. (Vydashenko Decl. ¶¶ 3-5 and Ex. A.) Notably, Farmer neither discloses to the Court that he has had these documents all along, nor explains why he should be allowed to rely on them now.

The Appendix consists of seven email chains that appear to reflect Massey emailing Chimera press releases to Grob and Grob approving their distribution. The Commission produced in discovery all of the emails and attachments that comprise the second through

---

[5] *See also Atkinson v. Prudential Prop. Co.*, 43 F.3d 367, 371 n. 3 (8th Cir. 1994) ("Where a party had possession of the evidence the entire time, the party's later 'discovery' of the evidence is generally not sufficient to support a motion under Rule 60(b)(2)."); *MGM Well Servs., Inc.*, 2007 WL 861098, at *3 (evidence available to party two weeks before its response to summary judgment motion is not newly discovered under Rule 60(b)(2)); *Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 646 (S.D. Tex. 2009) (Rosenthal, J.) (documents in movant's possession at time of litigation not newly discovered under Rule 60(b)(2)).

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                       – Page 9
SEC v. Farmer, et al.

seventh email chain (Appendix 007-035), except the metadata of the attachments.  (*Compare* Appendix 007-035 *with* Ex. A.)  The Commission originally obtained these documents from Massey, but Massey's production did not include metadata.  (Vydashenko Decl. ¶ 4.)  The Commission also produced previously parts of the first email chain (Appendix 001-006), specifically a draft of the key email in this chain and the press release discussed and attached in the chain.  (*Compare* Appendix 002-003 *with* Ex. B.)  And, at summary judgment, the Commission presented as evidence further emails among Farmer's associates discussing the decision to publish the press release at issue.  (MSJ Appx. (Dkt. No. 55) 000927-00929.) Accordingly, because Farmer has been in possession of the documents in the Appendix for well over a year, they are not newly discovered evidence.  *See Halliburton*, 618 F. Supp. 2d at 646.

The only conceivably new aspect of the emails on which Farmer relies is the metadata of the press releases attached to the emails.  But, as discussed in Section I.D.1 *infra*, the metadata contains no new evidence but is only cumulative of what the Commission already had alleged and the Court had recognized – that John Brotherton drafted most of the press releases, transmitted them to Grob via Massey, and Grob authorized their distribution.

Regardless, Farmer should not be permitted to argue the import of the Grob emails because he could have, but failed to raise these arguments at the summary judgment stage.  *See Nasti v. Ciba Specialty Chemicals Corp.*, No. H-04-04590, 2006 WL 6554167, at *1 (S.D. Tex. April 3, 2006) (Ellison, J.) (holding that motion for reconsideration under Rule 59(e), "'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" (citing *Ross v. Marshall* 426 F.3d 745, 763 (5th Cir. 2005)).[6]

---

[6] Courts consistently have held that where movants seek reconsideration of prior orders – whether under Rule 59(e) or 60(b) – arguments not raised in litigating the prior order are deemed waived.  *See, e.g., Pena v. Mattox*, No. 94 C 3845, 1995 WL 257870, at *1 (N.D. Ill. May 1, 1995) (holding that movant under Rule 60(b)(2) waived arguments

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                                    – Page 10
SEC v. Farmer, et al.

2.      The Massey Statements Are Not Newly Discovered Evidence

Farmer bears the burden of demonstrating that he had exercised "reasonable diligence" in attempting to obtain the information from Massey he now claims is "new," and that he could not have obtained such statements during civil discovery.  *See* Fed. R. Civ. P. 60(b); *Hesling*, 396 F.3d at 639.  Farmer cannot satisfy this burden because he did not exercise reasonable diligence in obtaining this evidence, and he should not be permitted to use his own lack of diligence to augment the record.

The Fifth Circuit's decision in *Washington v. Patlis*, 916 F.2d 1036 (5th Cir. 1990), controls in these circumstances.  There, plaintiff appealed the district court's denial of her Rule 60(b) motion for a new trial.  *Id.* at 1038.  Plaintiff asserted that the "newly discovered evidence" was the availability and willingness to testify of a witness who was unavailable at trial.  *Id.*  The Circuit Court held that plaintiff failed to exercise reasonable diligence in obtaining testimony from the witness, because after finding out the witness's residence, plaintiff did nothing more than write one letter to her and attempt to locate her phone number.  *Id.* at 1039.

Here, Farmer has not demonstrated that he exercised *any* diligence, much less reasonable diligence, to obtain evidence from Massey.[7]  While Massey appears on the Commission's initial disclosures (and was incorporated by reference into Farmer's initial disclosures), Farmer did not subpoena Massey for a deposition, and he does not claim that he attempted to contact Massey to obtain a declaration.  Farmer's wholesale failure to attempt to obtain evidence from Massey compels the same conclusion here as the Circuit Court reached in *Washington*:  Farmer believed

---

that he did not raise during litigation of original order); *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990) (defendant waived affirmative defense because it was raised for the first time on motion to alter judgment under Rule 59(e)).

[7]  Indeed, Farmer did not engage in any offensive discovery in this case at all, other than propounding on the Commission a few perfunctory interrogatories.

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                    – Page 11
SEC v. Farmer, et al.

he could adequately present his case without Massey's testimony, and therefore cannot "now complain of injustice."  *Id.*; *see also Mumford v. Bowen*, 814 F.2d 328, 330 (7th Cir. 1987) (statements by witnesses aired on television were not newly discovered under Rule 60(b)(2) where plaintiff "offered no explanation of why it was impossible" for plaintiff to obtain same information).

A separate holding in the *Washington* case also applies with equal force here.  The Circuit Court held that the witness's testimony was not newly discovered for the additional reason that plaintiff had knowledge of the witness's identity and what her testimony would be before trial.  *Id.* at 1036.  Farmer, like the plaintiff in *Washington*, also knew Massey's identity and likely testimony.  Farmer had a business relationship with Massey (Stmt. of Undisputed Facts (Dkt. No. 54) ¶ 107) and had paid Massey hundreds of thousands of dollars during the time period that Massey worked on the Chimera scheme.  (Compl. ¶ 12.)  Farmer thus understood that Massey possessed relevant information and what Massey's likely testimony would be.  For this reason, Massey's statements are not newly discovered evidence.  *Washington*, 916 F.2d at 1036.

Farmer makes much of the fact that two years earlier, Massey asserted the privilege against self-incrimination in the Commission's investigation.  This does not excuse Farmer's utter lack of diligence, however.  Two witnesses in this case – Farmer himself, and Grob – asserted the self-incrimination privilege during the investigation (and in Grob's case, also during discovery), and went on to testify substantively.  Thus, as Farmer well knew because he testified at his own deposition, Massey's assertion of the privilege earlier was not dispositive of whether Massey later would testify or offer a declaration.

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                    – Page 12
SEC v. Farmer, et al.

**D.      The Evidence on which Farmer Relies Would Not Lead to a Different Result**

Even if the long-available evidence and waived arguments on which Farmer relies were to be considered, Farmer has failed to demonstrate that this "clearly would have produced a different result." *Thermacor*, 567 F.3d at 744.

1.      The Grob Emails Are Cumulative and Not Material

Farmer contends that the Grob emails and metadata support the conclusion that Farmer "played no role in drafting or editing the content" of the press releases.[8] (Renewed Mtn. at 8.) The Commission addressed this contention in its response to the original motion to vacate, which it incorporates here.  (Dkt. No. 116, at 20-23.)  As briefly demonstrated below, these emails and metadata are cumulative and consistent with the Commission's position through this litigation. Therefore, this evidence fails to satisfy Rule 60(b)(2).  *See Thermacor*, 567 F.3d at 744 (requiring newly discovered evidence to be "material" rather than "merely cumulative").

The metadata reflects that an individual named "John" created certain of Chimera's press release files (*e.g.*, Appendix 006, 012, 018), and the emails show that Massey emailed the press releases to Grob, and that Grob approved their distribution (*e.g.*, *id.* 001-005; 007-011).  This is consistent with what the Commission alleged in the Complaint (*e.g.* Compl. ¶¶ 11-12, 54, 56, 59[9]) and with many similar documents the Commission produced in discovery (*e.g.*, Ex. C).  The allegations and documents demonstrate that John Brotherton drafted most of Chimera's press releases (during the time that Grob was CEO) and helped distribute them, that Grob authorized

---

[8] The Commission assumes that Farmer intended to refer to press releases, and not "emails" as stated in the Renewed Motion at 8.

[9] John Brotherton is identified in the Complaint as Individual A, and Massey as Individual B.

such distribution, and that Massey acted as an intermediary between Grob and Brotherton for this purpose.  (*Id.*)  As such, the emails and metadata add no new information.

More importantly, the Oct. 7 Order recognized that "Grob or other Chimera agents," excluding Farmer, "ultimately authorized, filed or published" the press releases.  (Oct. 7 Order at 20.)  This is essentially the same fact that Farmer asserts is established by the emails in the Appendix.  Fully cognizant of this fact, however, the Court still concluded that Farmer *used* press releases, Forms 8-K, Chimera's statement to FINRA, and Chimera's Registration Statement to obtain money or property in violation of Section 17(a)(2) of the Securities Act of 1933.  (*Id.*)  Because the Court was aware of Farmer's role with the press releases, and nevertheless found him liable, the emails on which Farmer relies establishing that role would not have changed the outcome.  *See Thermacor*, 567 F.3d at 744 (requiring newly discovered evidence to be "material" rather than "merely cumulative").

In addition, the evidence in the Grob emails regarding Farmer's lack of involvement with the press releases is not material for the independent reason that Farmer's liability under Section 17(a)(2) does not rest on the use of press releases alone.  In other words, even if Farmer had no involvement with the press releases and did not know of their falsity, he still violated Section 17(a)(2) for his use of false statements contained in several other documents.  These documents include Forms 8-K, the FINRA letter, and the Registration Statement, all of which the Court found Farmer used, with the requisite scienter, to obtain money.  (*See* Oct. 7 Order at 20.)  Farmer does not point to any evidence, and makes no arguments, that could lead to different outcome as to his liability for using these other documents to obtain money.[10]

---

[10]   As discussed in the Opposition to the Motion to Vacate (Dkt. No. 116), Farmer has not produced any newly discovered evidence that would have "clearly" led to a different result on the other bases of Farmer's liability,

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                          – Page 14
SEC v. Farmer, et al.

2.      Farmer's Intended Use of the Massey Materials Is Prejudicial

Farmer now is in possession of a vast trove of discovery in the criminal case, including the Massey statements.  (Renewed Mtn. at 4.)  The Commission does not have possession of any of this material.  To allow Farmer to cherry-pick the most favorable evidence he uncovers in the criminal case, obtained outside of the discovery window in this case, without the Commission having equal access to the same materials, would give Farmer an unfair advantage.  This also would prejudice the Commission because it would be denied the opportunity to access and present rebuttal evidence or additional incriminating evidence, which undoubtedly exists.

However, if Farmer were permitted to use the Massey statements in a way that would not prejudice the Commission, it would result in the re-opening of discovery in this litigation, which has been closed for over a year and a half, and merging it with the discovery in the criminal case. There is no basis – and Farmer does not cite any authority – for reopening civil discovery and merging it with criminal discovery in these circumstances.

Because allowing Farmer to use the Massey statements would prejudice the Commission, and it is not appropriate to merge discovery in this case and the criminal case, Farmer should not be permitted to rely on the Massey statements.

3.      The Massey Statements Would Not
Change the Outcome and Are Not Admissible

In addition to being prejudicial, evidence of Massey's statements suffers from at least two other fatal defects.  First, what Farmer reveals about how he plans to use the Massey statements demonstrates that this evidence would not lead to a different result.  Farmer asserts that he will use the statements to show "Farmer's lack of involvement in PEMEX, a presumed substantial

including violations of Section 5 and Section 17(a)(3) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5(a), (b), and (c) thereunder.

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                          – Page 15
SEC v. Farmer, et al.

basis for the [Oct. 7] Order." (Renewed Mtn. at 2.) But there is no need to "presume" anything about the bases for the Oct. 7 Order – that order speaks for itself. And, nowhere in that order does the Court find (or presume) that Farmer was involved with Pemex. This makes sense, as the Commission has neither alleged nor undertaken to prove that Farmer participated directly in Chimera's interactions with Pemex. Farmer is liable regardless of his possible lack of involvement with Pemex. Thus, any new evidence of this lack of involvement would not change the result.

Second, evidence of the Massey statements in the form in which Farmer intends to present it is not admissible, because this evidence is hearsay. The Fifth Circuit requires that evidence submitted in support of a Rule 60(b)(2) motion be "admissible." *See Goldstein*, 340 F.3d at 257. This rule therefore precludes consideration of the Massey statements.

According to Farmer, Massey's statements were memorialized on Forms FD-302[11] and also recorded (presumably in an audio or audio-visual format). (Renewed Mtn. at 7.) The statements on Forms FD-302 contain several layers of inadmissible hearsay. First, the Form FD-302 is itself hearsay, because it presumably contains an agent's out-of-court assertion of what Massey said, and that agent's assertion would be offered for its truth (otherwise it would be of no value to Farmer). *See U.S. v. Trujillo*, 136 F.3d 1388, 1395 (10th Cir. 1998) (affirming district court's ruling that FD-302 reports summarizing statements of two witnesses were inadmissible hearsay); *In re High Fructose Corn Syrup Antitrust Litig.*, 156 F. Supp. 2d 1017, 1027 (N.D. Ill. 2001) (holding, in ruling on motion for summary judgment, that "FBI 302 reports are clearly

---

[11] The Renewed Motion focuses on Massey's statements, but it also vaguely references "FBI 302s regarding interviews of non-parties and parties to this litigation" (Renewed Mtn. at 7), and "FBI 302s related to . . . Defendant Baldemar Rios." (*Id.* at 2.) For the reasons explained below, the statements in any FD-302 are inadmissible hearsay at this stage. However, Farmer's cryptic references to ever more witnesses (including Rios, who testified in this case and whom Farmer had an opportunity to cross-examine) and an ever expanding volume of evidence is illustrative of his "moving target" approach to re-litigating the Oct. 7 Order.

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                    – Page 16
SEC v. Farmer, et al.

hearsay under Rule 801 of the Federal Rules of Evidence since they are out-of-court assertions"), *rev'd on other grounds*, 295 F.3d 651 (7th Cir. 2002).  Next, these statements the FD-302s presumably attribute to Massey also are hearsay.  The statements are Massey's own out-of-court assertions.  And, Farmer makes clear he would offer these assertions for their truth because he claims they "contradict[] certain allegations in the SEC's complaint and certain conclusions in the [Oct. 7] Order."  (Renewed Mtn. at 2.)  Finally, to the extent Massey's statements reference a statement of another person, and Farmer seeks to offer the statement of the other person for its truth, that would create a third layer of hearsay.

The audio or audio-visual recording of Massey's statements is hearsay because it is an out-of-court statement of Massey that, as described above, would be offered to prove the truth of the matter asserted by Massey.  *See Painter v. Suire*, 650 Fed. Appx. 219, 225 (5th Cir. 2016) (affirming district court's ruling that video recording of statements was inadmissible hearsay); *Hunsinger v. Sko Brenner Am., Inc.*, No. 3:13-CV-0988-D, 2014 WL 1462443, at *8 (N.D. Tex. Apr. 15, 2014) (holding, in ruling on motion for summary judgment, that recordings of telephone calls were inadmissible hearsay).

Farmer does not – because he cannot – explain how he would overcome these hearsay problems.  Instead, he claims that Massey statements "would be admissible for the purpose of impeachment in the criminal trial and also consist of party admissions."  (Renewed Mtn. at 8.) This is a tacit concession that the statements are inadmissible for purposes of this motion. Massey has not made any statements in this case that are subject to impeachment, and he is not a party to this action.  In any event, the law in the Fifth Circuit is that evidence that is "merely . . . impeaching" is insufficient to vacate an order under Rule 60(b)(2).  *Thermacor*, 567 F.3d at 744.

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                                    – Page 17
SEC v. Farmer, et al.

## II.  Actual Newly Discovered Evidence Supports the Findings of the Oct. 7 Order

Presented with thousands of new Grob emails obtained by the USAO, Farmer has not managed to offer any truly new emails in support of this motion, much less any emails that would change the outcome of the Oct. 7 Order.  There is a reason for that:  the new Grob emails are deeply incriminating, as demonstrated below.  This also may explain why neither Farmer nor Grob produced these clearly responsive emails in the investigation or litigation.

As an initial matter, unlike Farmer's attempt to cherry-pick other evidence produced in criminal discovery, it is fair for the Court to consider the new Grob emails.  These emails should have been, but were not, produced during the investigation, or, at latest, during discovery; they appear to be a complete set of emails that Grob sent and received *during his time as Chimera's CEO*; and at this time all parties have equal access to the emails.  Moreover, these emails belong in this case because had Farmer, Grob, and Chimera met their discovery obligations, the Commission would have had these emails years earlier.  None of this can be said for records of statements Massey made to another agency two years after this litigation commenced.

Several dozen of these never before produced emails are incriminating, but for the sake of brevity, the Commission will focus on just three examples here.

First, the new Grob emails reveal that, consistent with Grob's testimony at the May 13, 2016 hearing, Farmer did send an email to Grob that outlined the procedure for setting up straw purchases of IPO shares.  (Ex. E at 1-2.)  The email, which is a veritable playbook for a sham IPO, confirms Farmer's participation in the IPO and the attendant sham transactions.  This conduct was a key basis for the findings that Farmer violated the Securities Act and the Exchange Act.

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                    – Page 18
SEC v. Farmer, et al.

In the email, Farmer explained to Grob two options that Farmer "was using for my people," *i.e.*, the straw purchasers Farmer was soliciting.  Both Farmer and Grob followed this playbook for Chimera's IPO.  The first option Farmer laid out involved an IPO investment by a shareholder using their own money.  Then, once Chimera's Form 211 was approved, Farmer would "arrange for another shareholder to purchase [the investor's] shares for 150% of the purchase price."[12]  (*Id.*)  This is precisely the transaction Farmer arranged for several IPO investors.  For example, David Parisi, who was Farmer's accountant, acquired 50,000 shares of Chimera stock for $750 ($0.015 per share).  (Stmt. of Undisputed Facts ¶¶ 27, 32.)  Months later, Farmer, through his entities, purchased Parisi's stock for $1,125 ($0.0225 per share), *i.e.*, 150 percent above the initial purchase price.  (*Id.* ¶ 66; MSJ Appx. 000681-684.)

Farmer described the second option as:  "I give you the cash (no risk to you) to invest in the company," and once Chimera's Form 211 was approved, Farmer would arrange for another person to repurchase the stock at a premium.  (Ex. E at 1-2.)  Farmer explained that the investor is "paid 5% of the purchase price upfront for participating and another 5% when the shares are transferred to the new shareholder."  (*Id.*)  Farmer specified that when the repurchase occurs, the funds from the re-purchaser should "clear" the initial investor's bank, and only then does the investor reimburse the repurchase price to Farmer, less 5%.  (*Id.*)  Farmer and Grob executed transactions that were materially similar to this arrangment.  For example, Farmer transferred $6,300 to Brittany Garcia.  Four days later, Garcia and her husband each purchased 200,000 Chimera shares for a total of $6,000.  (Stmt. of Undisputed Facts ¶ 28.)  Consistent with Farmer's "pitch," the Garcias earned a nominal sum of $300 "upfront."  Likewise, Grob gave

---

[12] Compare Farmer's admitted involvement in the IPO, as reflected in this email, with his statement to Pennaluna & Co. broker Mark Dillon, who submitted Chimera's Form 211 application to FINRA, that Farmer was not "involved in the deal in any way."  (Stmt. of Undisputed Facts ¶ 43 and App. 000629.)

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                    – Page 19
SEC v. Farmer, et al.

cash "upfront" to his friend, Daniel Sorelle, to enable Sorelle, who had no money of his own at the time, to invest in the IPO.  (*Id.* ¶¶ 37-38.)  And, as Grob testified during the May 16, 2016 hearing, Farmer provided Grob an envelope of cash (via Tyson Rohde) for the purpose of "loaning" the cash to IPO investors.[13]  (Hearing Tr. (Dkt. 112) at 21:7-9; 71:1-16.)  In this way, Farmer provided both the methods and the means by which he and Grob arranged the sham IPO transactions.

Second, two new emails reveal that Farmer dictated to Grob how Grob should interact with Chimera's outside auditor, LBB, and its audit partner, Carlos Lopez.  In an email to Rohde and Farmer dated October 6, 2011, Grob apologized for "handling the receivables situation in my [prior] email with Carlos poorly."  (Ex. E at 3.)  Grob acknowledged that he should have "consulted one of you about the dynamics of the auditor/client relationship before giving answers on unfamiliar subjects."  (*Id.*)  Apparently chastened by this experience, Grob wrote Farmer six days later, explaining that Grob had just received a call from Lopez inquiring about the loan to Chimera from Kylemore Corp. (Ex. E at 4), which, unbeknownst to Lopez, was Farmer's alter ego.  Grob stated in the email that he did not want to answer questions before checking with Farmer, and therefore told Lopez that he was "in the middle of something."  (*Id.*)  Farmer responded the same day, instructing Grob to "copy the text" that Farmer had included in his response email, and to send that text to Lopez.  (*Id.*)  Farmer's text falsely stated that "Kylemore is not a related party of Chimera, or any insider or affiliate of Chimera."  (*Id.*)

---

[13] While Grob disputed in his testimony at the May 13, 2016 hearing that he solicited SoRelle to invest in the IPO, he admitted that he "loaned" money to IPO investors Nicole Fertitta, Matthew Fleming, and Ashton Stresau, and the money for these "loans" came from the envelope of cash that Farmer provided to Grob via Rohde.  (Hearing Tr. (Dkt. 112) at 25:2 – 26:24; 70:23 – 71:20.)

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                      – Page 20
SEC v. Farmer, et al.

Third, another new email reveals that, as the Court found in the Oct. 7 Order, Farmer drafted Chimera's Forms 8-K. In an email dated October 10, 2012, Farmer emailed Grob a Form 8-K and an attachment thereto that contained multiple false statements.[14] (Ex. E at 5-11.) What is more, Farmer instructed Grob to (i) email the Form 8-K to Chimera's outside counsel (David Loev); (ii) include in the email to Loev text with instructions that Farmer once again drafted; and (iii) *not to copy Farmer on the email* to Loev. (*Id.* at 5.) The only plausible purpose of Farmer's directives was to conceal from Loev Farmer's involvement in the Chimera scheme, including that Farmer was the author of the Form 8-K.

These three examples barely scratch the surface. The new Grob emails show in vivid detail how Farmer executed various aspects of the Chimera scheme. It is no wonder Farmer could not come up with even one truly new email to cite in support of his motion to vacate.

## III.   A Stay of this Action Is Not Warranted

Farmer asserts that in the alternative to granting the motion to vacate, the Court should stay this case pending completion of the criminal case, which Farmer claims would allow him to avoid "being required to fight on two fronts simultaneously." (Renewed Mtn. at 3.) This is not a proper basis for a stay. In the Fifth Circuit, there is well-developed case law that addresses the relevant factors for determining when a stay of civil proceedings is appropriate in favor of

---

[14] This email is undoubtedly responsive to the December 5, 2012 subpoena the Commission served on Farmer during its investigation. (Ex. F.) When asked at his deposition why he did not produce certain emails during the investigation or litigation, Farmer testified that it was because he had "a long standing e-mail deletion policy. Every e-mail I receive after 90 days, unless it's part of an investigation or I've been notified otherwise, gets deleted." (Farmer Dep. Tr. (Ex. G) at 281:16-25.) Farmer also claimed he did not delete any emails after becoming aware of the Commission's investigation. (Ex. G at 282:1-5.) Both of these claims are directly contradicted by the October 10, 2012 email cited above (Ex. E at 4), and dozens like it, because even allowing Farmer two weeks from the December 5, 2012 subpoena to understand and satisfy his document retention obligations, Farmer should have produced any emails dated less than 90 days from December 19, 2012, *i.e.*, all emails after September 20, 2012. Plainly, the October 10, 2012 email (and others from this time period) should have been produced, even crediting Farmer's testimony about his deletion policy. The unproduced October 10 email also is responsive to the Commission's document requests in this action. (*See* Ex. H.)

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                    – Page 21
SEC v. Farmer, et al.

parallel criminal proceedings.  *See Alcala v. Texas Webb County.*, 625 F. Supp. 2d 391, 399 (S.D. Tex. 2009) (collecting cases in Fifth Circuit applying six-factor test in determining whether to stay civil proceedings in favor of criminal proceedings).[15]  Farmer makes no effort to satisfy his burden of demonstrating that a stay is warranted, and his generic claim that he should not be forced to defend two cases at once is woefully inadequate.  *See SEC v. First Fin. Group. of Texas, Inc.*, 659 F.2d 660, 667 (5th Cir. 1981) (affirming district court's denial of stay of SEC civil case in favor of DOJ criminal case, and holding that the "simultaneous prosecution of civil and criminal actions is generally unobjectionable because the federal government is entitled to vindicate the different interests promoted by different regulatory provisions even though it attempts to vindicate several interests simultaneously in different forums.").

Moreover, a stay is unwarranted because of the procedural posture of this case.  The Commission respectfully submits that the most efficient course of action is for the Court to rule on the merits of the motion to vacate.  If the Court denies the motion, the only remaining task is to enter final judgment against Farmer, which does not require any further development of the record.  The Court already held a hearing and issued rulings on the injunctive relief, bars, disgorgement, and civil penalties applicable to Farmer.  (Dkt. No. 112.)  If the Court grants the motion to vacate, a stay also is unnecessary, as the parties and the Court can tailor a pretrial schedule that takes into account the timing of the criminal trial.

---

[15] The six factors are:  "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest." Alcala, 625 F. Supp. 2d at 399.

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                  – Page 22
SEC v. Farmer, et al.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should deny the Motion to Vacate and the Motion to Stay.

Dated: January 18, 2017                       Respectfully submitted,

<div align="right" style="width:55%">

*s/ Matthew J. Gulde*
Matthew J. Gulde
Attorney-in-Charge
Illinois Bar No. 6272325
S.D. Texas Bar No. 1821299
Nikolay Vydashenko
New York Bar No. 4628566
United States Securities and
Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:  (817) 978-1410 (mg)
Facsimile:  (817) 978-4927
guldem@sec.gov

Attorneys for Plaintiff Securities and
Exchange Commission

</div>

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order          – Page 23
SEC v. Farmer, et al.

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all counsel who have registered with the Court. Additionally, I have caused a true copy thereof to be delivered by the United States Postal Service, Certified Mail, Return Receipt Requested, or as indicated, and addressed to:

Chimera Energy Corp.
c/o Nevada Secretary of State
Meyers Annex Office, Attn: Alfie Frieser
202 N. Carson Street
Carson City, Nevada 89701
*Defendant*

J. Kevin Edmundson
Edmundson PLLC
21209 Highway 71 West, Suite 3
Spicewood, Texas 78669
via email: kevin@edmundsonpllc.com
*Attorney for Defendant Andrew I. Farmer*


*s/ Matthew J. Gulde*
Matthew J. Gulde

Plaintiff's Memorandum of Law in Opposition to Defendant Andrew Farmer's Renewed
Motion to Vacate Summary Judgment Order                                                – Page 24
SEC v. Farmer, et al.